

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

**MAR 2 7 2000**

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| RIO GRANDE ORTHOPAEDIC INSTITUTE, AND RIO GRANDE ORTHOPAEDIC INSTITUTE AMBULATORY SURGERY CENTER LTD. | § § § § § | |
| | § | CIVIL ACTION NO. 00-37 |
| VS. | § § | |
| LEGION INSURANCE COMPANY, CLAIMS ADMINISTRATION SERVICES, INC., AND JOHN LITTLE, DBA INSURANCE ASSOCIATES OF THE VALLEY | § § § § § | |

## PLAINTIFFS' MOTION FOR REMAND

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Rio Grande Orthopaedic Institute and Rio Grande Orthopaedic Institute ASC, Ltd, Plaintiffs in the above styled and numbered cause and file this, their Motion to Remand this Cause back to the 197th Judicial District Court of Cameron County, Texas from which it was removed by Defendant Legion Insurance Company, and in support thereof would show the Court as follows:

### A. Remand is Timely

1. Defendant Legion Insurance Company removed this case from Texas State District Court on February 28, 2000. Under the provisions of 28 USC §1332 and §1441 Plaintiffs have 30 days to file a Motion to Remand. This Motion is therefore timely filed under the statutory provisions governing Remand.

## B. Basis of Removal

2.  Legion Insurance Company's sole grounds for removal of this case rest on the allegation of diversity of citizenship.  There is no Federal Question or other grounds that would otherwise allow for removal of this cause **(Def's Notice of Removal Paragraph 6).**

3.  Legion further concedes that diversity exists only if a resident Defendant, John Little, is ignored for purposes of diversity.  They therefore concede that on the face of the Plaintiffs' petition there is no diversity of citizenship that would allow for the proper removal of this case **(Def's Motion Notice of Removal Paragraphs 6 & 7).**

4.  As demonstrated herein below, this case must be remanded back to State Court for the following reasons:

 a.  There is no diversity.  Defendant Legion's allegations of "Fraudulent Transfer" do not meet the rudimentary requirements under the law to demonstrate an improper joinder of a Texas resident for purposes of defeating diversity;

 b.  Defendant Legion has totally misrepresented and misconstrued the Plaintiffs' claims against John Little in order to somehow fashion an argument for "Fraudulent Joinder"; and,

 c.  Under 28 USC § 1332 (c) & § 1441, Defendant Legion is itself a resident of Texas for purposes of diversity jurisdiction.

## C. Fraudulent Transfer Standard

5.  The term "fraudulent" is a misnomer.  As a matter of law the Plaintiffs' intent is irrelevant to the issue of whether a non-diverse defendant is properly joined in a lawsuit.  In order to show "Fraudulent Joinder" the removing defendant must show (a) that there is an outright fraud in the Plaintiffs' recitation of jurisdictional facts; (b) there is no possibility that the Plaintiff will be able to

establish a cause of action against the non-diverse defendant in state court; (c) the diverse defendant

is joined with the non-diverse defendant as to whom there is no joint, several or alternative liability

and the claim against the diverse defendant has no real connection to the claim against the non-diverse

defendant. Madison vs. Vintage Petroleum, Inc., 114 F.3rd 514, 516 (5th Circ. 1997).  A defendant

seeking to show that a non-diverse party is a sham party, or that a fraudulent joinder has occurred,

bears a heavy burden of making such a showing by clear and convincing evidence, Pampillonia vs.

RJR Nabisco, Inc., 138 F.3d 459, 461 (2d Circ 1998). The Courts have held that if there is even a

possibility that a cause of action exists (Emphasis Added) against any in state defendant, the federal

court must find that the in-state defendants have been properly joined, there is incomplete diversity,

and the case must be remanded to the state court.  Put another way, there must be no possibility for

a valid state cause of action being set out against the in-state defendant before the court may hold that

there is fraudulent joinder. Green vs. Amerada Hess Corp., 707 F.2d 201, 205 (5th Circ. 1983); Pesch

vs. First City Bank of Dallas, 637 F. Supp. 1530, 1537,38 (N.D. Tex., 1986). In the case of any

disputed fact issues or questions of state law, the Court must initially resolve such disputes in favor

of the Plaintiff, Green., at 206.

6.  The defendant must demonstrate that the non-diverse party is a sham and/or fraudulently joined

by facts established with its Notice rightly leading to that conclusion, and cannot support such an

assertion with the simple deductions of the pleader, Wilson vs. Republic Iron and Steel Co., 257 U.S.

92, 66 L.Ed. 144, 42 S.Ct. 35 (1921).  As will be pointed out herein below, the conclusions of the

pleader is all that the Defendant offers, and those deductions are themselves flawed, and factually

inaccurate based on the pleadings themselves.  More importantly, a diverse defendant cannot assert

a fraudulent joinder claim based on a defense that the non-diverse defendant had, but did not raise.

Sergos Commercial Airlines vs. American President Lines Ltd., 934 F.Supp. 243, 245 (S.D. Tex, 1996).

### D. Applying Law to the Facts of Defendant Legion's Removal

7. Nowhere in the Defendant's Notice of Removal does it allege that there was any fraud, outright or otherwise, in the pleading of the jurisdictional facts by the Plaintiffs. Thus, Defendant Legion not only cannot support removal on that ground, but does not even attempt to do so.

8. Nowhere in the Defendant's Notice of Removal does it even allege that the facts which give rise to the lawsuit and the claims asserted against the non-diverse defendant, agent John Little, have no connection to the diverse defendant, Legion. In fact, a simple reading of the Plaintiffs' petition will demonstrate that the entire suit is based on one continuous, totally interconnected flow of facts . The factual basis of this suit runs from the time the insurance polices in question were sold by Little through the end of the policy period in August of 1999, to a period beyond the end of the policy when claims were still being improperly paid. The improper payments were in direct contravention of the representations made by all three defendants at various times relevant to this suit. Furthermore, Defendant Legion makes no assertion that there is a lack of joint, several or alternative liability as between Legion and John Little. Therefore, Defendant Legion admits that neither (a) nor (c) as set out in Madison, at 516, apply.

9. Defendant's sole basis of establishing Fraudulent Joinder is that Plaintiffs cannot prevail against Defendant John Little **(Defendant's Notice of Removal, Paragraphs 6-14)**. First, Defendant Legion has misstated the test. For purposes of resolving the diversity question, it is not, "can you win" but "can the Plaintiff establish a cause of action against the non-diverse defendant in a state court." Madison, at 516. Plaintiffs have clearly established a causes of action against Little in State

Court, these causes of action will not only impose liability on Little, but will impose liability on the other Defendants, including Legion.

**Plaintiffs' Count I Claim For Misrepresentation Against Little**:

10. Defendant Legion's assertion to support its removal on the grounds that Plaintiffs cannot prevail is based upon a partial recitation of the Plaintiffs' petition combined with Texas case law that does not apply. Defendant Legion specifically asserts that the claim cannot prevail because Plaintiffs' failed "to specify any particular provision of the policy that was misrepresented." **(Defendant's Notice of Removal, paragraph 11).** Defendant has either inadvertently or intentionally failed to set out the full extent of Plaintiffs' pleading. Plaintiffs' cause of action against Little as set out in Count I, incorporates paragraph 8-22 of its Statement of Facts. Plaintiff not only set out the specific provisions of the policy that were misrepresented, in paragraphs 9, 18, and 19, but went one step further by settting out the specific way in which those provisions were violated in paragraphs 20, 21 and 22. Plaintiffs then tied those specific provisions to the misrepresentations made by Little and the other two defendants in Paragraph 25 of their Original Petition. The identification of the specific provisions of the policy are set out herein below and can be matched by the Court with the specific provisions of the Plaintiffs' petition attached to the Notice of Removal, and the copy of one of the insurance policies that forms the basis of this suit, attached hereto as Exhibit 1:

"The representations made by Legion, CAS and Little were that the policy would pay for surgical services provided to covered persons of the insured school districts to the extent that the fees charged by the medical provider were:
   a. The usual fee charged by the provider for the service or supply given;
   b. The average fee charged for the service or supply in the locality in which the service or supply is received (emphasis added); and
   c. Is reasonable in relation to the services or supply given and the severity of the condition."
**(Plaintiffs' Original Petition, Paragraph 9)**

"Only after Plaintiffs began putting pressure directly on Legion in November of 1999 did CAS begin to start addressing claims. At that point Legion and/or CAS began to adjust Plaintiffs' claims in a manner that was in direct violation of its own policy provisions. There are no PPO discounts or network agreements in place between Plaintiffs and Defendants Legion/CAS. The adjustment and payment of claims is controlled by the language of the policies themselves. These are not Medicare claims, nor are they subject to fee schedules set for Medicare or Medicaid. CAS/Legion's sole discretion in adjusting claims is contained in the policy. On page 4 of the policy under SCOPE OF COVERAGE the policy states that Legion will provide the benefits described in the policy to all covered persons who suffer a covered loss which:

      (1) is set forth in the description of benefits Provisions; and

      (2) results directly and independently of all other causes, from bodily injury which is suffered in an accident; and:

      (3) occurs while the person is a Covered Person under the Policy; and

      (4) is within the scope of the description of hazards provisions." **(Plaintiffs' Original Petition, Paragraph 18)**

"The Legion policy specifically states on Page 11 that the benefits due under the policy for a loss, other than a loss for which the policy provides installments, will be paid immediately upon receipt of due written proof of such loss. As set forth herein above, Legion/CAS did not do this. However, when Legion/CAS began to pay claims again after stopping, they again violated the terms of the policy, the same representations therein, and the representations made by their agent John Little. Once it is determined that the loss is covered, and the person is covered, Legion/CAS's discretion is governed by its own policy, and requires it to pay "Usual and Customary" fees. Usual and Customary is defined as:

      (1) The usual fee charged by the provider for the service or supply given;

      (2) The average fee charged for the service or supply in the locality in which the service or supply is received (emphasis added); and

      (3) Is reasonable in relation to the services or supply given and the severity of the condition."
" **(Plaintiffs' Original Petition, Paragraph 19)**

11. Plaintiffs would question just how specific Defendant Legion expects them to be. When one reads the petition it is patently clear exactly what provisions were violated, how they were violated and how those violations are connected to the representations made by Defendant John Little in the course of selling these polices, and others like them, to the School Districts in the Rio Grande Valley.

12. The notion that John Little cannot be found liable by a Texas State Court for misrepresenting the terms of coverage of an accident liability insurance policy is wrong. Plaintiffs set out each and every element of negligent and intentional misrepresentation. See Trenhom vs. Ratcliff, 646 S.W. 2d 927,

930 (Tex 1983) and <u>Cook Consultants, Inc. vs. Larson,</u> 700 S.W. 2d 231, 234-35, (Tex. App.--

Dallas, 1985). In their answers, none of the Defendants, including Little, filed any special exceptions,

affirmative defenses or other pleadings that would call into question that Plaintiffs had failed to plead

each and every element of the causes of action it has alleged against in state Defendant, John Little.

There is nothing that exempts John Little from personal liability for his own misrepresentations. Not

only is Little liable himself, but his actions also make Legion liable, as will be set out further herein

below.

### <u>Plaintiffs' Count II Misrepresentation Claim Against John Little</u>:

13. Defendant Legion's assertion that Plaintiffs cannot recover on their claim against John Little

regarding the Jennifer Lopez claim is also groundless. First of all, Texas law is clear that an insurance

agent, by virtue of his own misrepresentations, can prevent an insurance company from enforcing the

provisions of its policy, <u>Mid-Century Insurance Company vs. H & H Meat Products,</u> 822 S.W. 2d

747 (Tex. Civ. App.--Corpus Christi, 1992), <u>Fisher vs. Indiana Lumberman's Muutal Insurance,</u> 456

F.2d 1396 (5th Circ., 1972).

14. More importantly, as set forth in paragraph 12 above, Little is clearly liable for his own

misrepresentations, and if for any reason it is established at trial that his conduct does not make

Legion liable, Plaintiffs can clearly recover against Little, either from his personal assets, or his errors

and omissions carrier, for the value of the services they provided  that were not paid for because of

his misrepresentations.  The key is "misrepresentation."  Both Plaintiffs and the school district

approached Little on the Castillo claim and requested that he verify coverage or get approval for

coverage <u>because of the time limit factor (Emphasis Added)</u>.  The misrepresentation is that he agreed

to do so, did so, and then represented that Jennifer Castillo's coverage had been verified <u>despite the</u>

<u>language of the policy that precluded coverage after 90 days from the incident (Emphasis Added)</u>

Again, the clear language of the allegation is set forth in Plaintiffs' Petition and herein below:

"With regard to one claim, that of Jennifer Castillo, Legion and/or CAS out right denied in December 1999 alleging the expense/service was rendered 105 days from the date of injury and was not within the 90 day period for incurring the service. This claim was specifically taken to Legion's local agent, John Little by a representative of the insured school district and Little specifically told that representative to have Dr. Snyder treat the patent and that his services would be covered." **(Paragraph 10, Plaintiffs' Original Petition)**.

"On May 26, 1999 Plaintiffs performed surgery on Jennifer Castillo, a patient/insured of Legion Insurance company. When Ms. Castillo came to the Plaintiff it was apparent that she had incurred her injury over 90 days prior. Plaintiffs and Ms. Castillo were concerned that the Legion policy under which she was covered would not pay for the contemplated surgical procedure. Plaintiffs contacted an athletic trainer who knew Ms. Castillo and understood both her condition and the circumstances of the delay in her seeking medical services. That trainer contacted Defendant John Little, explained the circumstances and requested that Mr. Little seek and obtain approval from Legion and/or CAS for the procedure so that Plaintiffs and Ms. Castillo could be assured the procedure would be covered under the Legion policy, despite the delay in seeking service. Little was and is the duly authorized agent and local representative of Defendant Legion and its claims payer, CAS. He held himself out as such and represented to Plaintiffs on numerous occasions that he was authorized to speak and act on Legion's behalf. He also assured Plaintiffs that as Legion's local representative that Plaintiffs could rely upon Little's statements for purposes of resolving coverage issues and other matters pertaining to the policies of insurance he sold and Legion issued. At all times relevant to this cause of action, Legion and CAS held Little out to be their authorized agent and never provided any indication of any limitations on Little's authority to act on Legion and/or CAS's behalf. Little informed the trainer that Ms. Castillo's procedure would be covered under the policy and to proceed. Plaintiffs relied upon Little's representations and performed the procedure on Ms. Castillo. Thereafter, when Plaintiffs submitted the Castillo claim, Legion, by and through CAS rejected the claim, not because the procedure was not covered, or because the procedure was unnecessary, but because the services occurred beyond the 90 day time limit prescribed in the Legion policy. The representations made by Legion and/or CAS by and through their authorized local agent, John Little were made to induce Plaintiffs to perform the surgical procedure on Ms. Castillo. Plaintiffs relied, to their detriment, on these representations which proved to be false. The misrepresentations were either made intentionally or with negligent disregard for their truth. As a result of this misrepresentation Plaintiffs have been damaged in the amount of at least $10,195.00 for which they seek relief. To the extent Plaintiffs demonstrate that the misrepresentation was made intentionally, Plaintiff seeks the award of punitive/exemplary damages to be determined by the trier of fact in accord with the limits prescribed by Texas law for punitive damages." **(Plaintiffs' Original Petition, paragraph 26).**

The misrepresentation was not that he misrepresented the terms within the policy, but rather he

misrepresented that Legion had agreed to waive the specific terms, something insurance companies do as a matter of course. Legion's attempt to misconstrue the allegation does not pass muster under a reading of the clear language and assertion in the petition. Even if Legion could demonstrate that Little was not its agent, it would not exonerate Little from being personally liable for his own misrepresentation.

## Plaintiffs' Breach of Contract Claim Against Little

15. All three Defendants in this case elected to initially answer the lawsuit in state court. While this answer does not appear to rise to the level of waiver of removal under the Federal Law and cases, it does establish the parameters of the Defendants' defenses. Rule 94 of the Texas Rules of Civil Procedure requires that a Defendant raise an affirmative defense, or that defense is waived.

16. As stated herein above, a diverse defendant can not rely upon a defense of a non-diverse defendant that the non-diverse defendant did not plead. Legion has alleged that Little is not liable on the theory of breach of contract because he is a "disclosed agent." That defense is not Legion's, it is Little's. Little, Legion and CAS had a full and fair opportunity to raise any and all defenses, counterclaims, demands for more specificity and any other legal pleading, without waiving removal. As evidenced by the attachments to Legions's notice of removal, no defendant, including Little, raised any affirmative defense, or filed any type of pleading other than a general denial. Legion filed a specific denial alleging a violation of the Texas Constitution with regard to the damages pled, but it is irrelevant to this dispute. "Avoidance" of contractual liability is specifically mentioned in the rules as an affirmative defense. Thus, Little having failed to raise the defense, Legion cannot rely upon it to establish diversity, even if it were somehow valid, which Plaintiffs deny that it is, because Little did not raise the defense. See Sergos Commercial Airlines vs. American President Lines Ltd., 934 F.

CUtePDF - www.tesoo.com

Supp. 243, 245 (S.D. Tex, 1996).

17.  Little negotiated the sale of the insurance coverage.  He accepted premium on behalf of the insurance company and received a commission, that was paid for from that premium.  Legion says Little was not its agent, but then admits that Plaintiffs' arguments of agency between Legion and Little are true.  It then relies upon the unsupported statement, not backed up by its, or Little's pleadings, that "at best Little was a disclosed agent" and therefore not liable.  This statement is the precise type of unsupported conclusion and deduction of the pleader that the well established case laws says is wholly inadequate to establish Fraudulent Joinder.

## E. Conclusion as to Fraudulent Joinder

18.  The test is "can the Plaintiff s establish a cause of action against a non-diverse defendant in a state court."  Plaintiffs clearly not only can, but have done so.  The convoluted arguments Legion makes with regard to the misrepresentation claims only serve to reinforce that the Plaintiffs have a clear cause of action against a non-diverse defendant, John Little, whose conduct is so intertwined with that of the other defendants that not only is it a valid state cause of action against Little, but it also forms the basis for a valid state cause of action against Legion and CAS.  The issue Legion raises with regard to the breach of contract cannot procedurally be raised because there is no underlying pled defense by Little, and without that defense Legion cannot raise the matter.

19.  Legion's argument is so weak, and its proof to support such a heavy burden so inadequate, that when coupled with its failure to completely set out the Plaintiffs pleadings, its conduct not only justifies the award of attorney's fees, but the imposition of costs and sanctions as more fully set forth below.  Legion sold a policy in the Rio Grande Valley to local school districts, using a local insurance agent, John Little,  who not only spoke on its behalf, but was for the most part the only person that

any of the insureds or medical providers like the Plaintiffs ever saw or spoke to. He made statements and representations personally, that clearly expose him to liability and may also expose his principals. Now Legion wishes to argue that such a person has been improperly joined and should be ignored as a defendant, based on virtually no evidence whatsoever, other than the unsupported conclusions of its counsel in a motion that no other Defendant has even joined. After taking $135,000 in premium from at least one school district, a portion of which went directly to Mr. Little, Legion now wishes to argue that Plaintiffs cannot recover against Mr. Little for misrepresentations that induced the school districts to buy the insurance, and induced the Plaintiffs to perform the surgical services on student athletes whose families could not hope to pay for such services themselves. That may be how the law works in Pennsylvania, but not in Texas.

### F. Legion is A Texas Citizen for Purposes of Diversity

20. The Removal Statute, 28 USC §1332 (c) specifically provides:

> "A corporation shall be deemed a citizen of any State in which it has been incorporated and of the State where it has its principle place of business: Provided further, That in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen."

21. Attached hereto as Exhibit A to Timothy Weitz's Affidavit **[Exhibit 1]**, is a true and correct copy of one of the three policies of insurance issued by Legion that forms the basis of this suit. It was issued by Legion to Pharr-San Juan-Alamo Independent School District. In the top left-hand corner of the policy it clearly identifies Legion by name and address. The address matches that in the Plaintiffs' Original Petition. Under the address, the policy clearly identifies Legion as a stock insurance company. In the top right- hand corner, it identifies the policy as an "Accident Only Policy." This policy is not a medical policy or any type of life or health policy. It is a liability policy

as described in 28 USC §1332 (c). Similar to an auto liability policy, which pays for medical expenses and property damage from a car accident, this policy pays for medical expenses incurred when a student is involved in a sports related accident **(Pages 2 and 5 of Exhibit 1).** The courts have defined liability insurance as that form of insurance whereby the insured, in this case the school district, is indemnified against liability for injuries to others, in this case student athletes, Ford Motor Co. Vs. Insurance Company of North America, 669 F. 2d 421 (CA 6 Mich).

22. The Plaintiffs are clearly not the named insureds, but are third party medical providers. The lawsuit does not name the insured, in this case the school district. Under the clear language of the statute, Legion is therefore deemed to be a citizen of the State of the insured. Pharr, San Juan and Alamo School districts are all Texas Citizens.

23. In a variety of different insurance settings, the case law is clear that insurance companies, situated like Legion, are citizens of the state of their insureds for diversity purposes, where the insured is not a named party. In Torres vs. Hartford Ins. Co. 588 F.2d 848 (CA 1 Puerto Rico, 1978) the court held an insurer is deemed to be a citizen of the same state as the Plaintiff if either named insured or tortfeasor omnibus insured is a citizen of that state for purposes of 28 USC 1332. The same result was reached in Allstate Vehicles vs. Allstate Insurance company, 620 F. Supp. 444 (SD NY, 1985, [3rd party was an assignee]). The same result has been held in Texas where a worker sues his employer's workers compensation carrier for benefits without first suing his employer and without even joining his employer as a party-defendant. Hernandez vs. Travelers Insurance Company 489 F. 2d 721 (5th Circ 1974).

24. This case is clearly one of direct action. The courts have defined direct action as situations where an injured party is permitted to sue the insured's insurance company directly, and without joinder of

the insured, and without first obtaining a judgment against the insured, <u>Irvin vs. Allstate Insurance Company.</u> 436 F. Supp. 575 (WD Okla, 1975). This cause is also clearly the type of action that Congress intend to exempt from removal, where an injured or damaged third party can bring an action directly against an insured's insurance company without the cost, expense and necessity of first obtaining a judgment against the insured. <u>Government Employers Ins. Co. Vs. Le Bleu</u> 272 F. Supp. 421 (ED La, 1972); <u>Lank vs. Federal Ins. Co.</u>, 309 F. Supp. 349 (DC Del, 1970).

25. As set forth in Plaintiffs' Original Petition, the misrepresentations made by Legion were made both directly to Plaintiffs and were also made through the insured school districts, who assured Plaintiffs that their services would be paid by the policy of insurance if Plaintiffs treated the students from that school. Because it seems clear that the insureds themselves were deceived and misrepresented to, Plaintiffs elected not to sue them. However, the torts of misrepresentation against Legion, are the same claim that Plaintiffs could have alleged against the school districts themselves. As such, 1332 (c) defeats removal jurisdiction because the claim by the Plaintiffs (third party) which it could have alleged against the insured (school districts) is in part the same one asserted against Legion, and falls within the primary liability coverage for which insurance was issued by Legion, specifically the payment of medical expenses for treating the injured students. <u>John Cooper Produce, Inc. vs. Paxton nat. Ins. Co.</u> 774 F.2d 433, (CA 11 Ala, 1985) ). Had the school district not been insured, it would have been responsible for the medical bills incurred by students in the course of athletic activities sanctioned by the school.

26. The instances where the Courts refuse to invoke 1332 (c) are where, (1) the insured, and not a third party brings the action, <u>Searles vs. Cincinnati Insurance Company</u> 998 F.2d 728. 93, (CA 9 Cal, 1993); <u>Basel vs. Allstate Co.</u> 757 F. Supp. 39, (ND Cal, 1991), (2) the suit is not a direct action

lawsuit, <u>Cunningham vs. State Farm Mutual Auto.</u> 297 F. Supp. 1138 (ED Tenn, 1969), (3) the insurance is not deemed to be liability coverage, <u>Ennis vs. Queens Insurance Company</u> 364 F. Supp. 964, (WD Tenn, 1973 [fire insurance not liability insurance]) . None of these instances apply in this case, and as such, 1332 (c) makes Legion a Texas resident and destroys diversity between it and the Plaintiffs, regardless of any other assertions by Legion.

## G. Failure to Obtain Proper Consent

27. Although Legion asserts in its pleading that Defendants Claims Administration Services, Inc. and John Little have consented to removal, Legion has failed to obtain proper consent to suppor the assertion. Proper consent by other defendants requires that defendants either sign the notice of removal or file a separate form agreeing to the notice of removal. Such consent must be in writing and must give official notice of consent. Neither CAS nor Little have signed the notice of removal or filed a written official notice of consent. No exceptions apply in this instance and Legion's assertion of consent is insufficient. Consequently, Legion's removal is procedurally defective and the case should be remanded. <u>Roe v. O'Donohue.</u> 38 F.3rd 298, 301(7th Circ. 1994); <u>Getty Oil corp. V. Insurance Co..</u> 841 F.2d 1254, 1262 (5th Circ. 1988). Under the applicable law the deadline for defendants Little and CAS to file written notices of consent has past. Where they did not join the removal notice, both Defendants had 30 days from the date <u>they were served.</u> To file their notice of consent..<u>Choghervand v. Carefirst</u>, 909 F. Supp. 304. 308-09 (D. Md. 1995). We know the period has run, because not only were all defendants served, but they filed answers and those answers are attached to Legion's Notice of Removal and indicate the answers were filed well over thirty days ago. Therefore, in addition to its substantive defects, Legions removal is also procedurally flawed.

## H. The Award of Attorney's Fees and Sanctions is Appropriate

28. Given the lack of substance to the Defendant Legion's allegations of removal, Plaintiff contends that the sole purpose of removing this case was to harass the Plaintiffs and delay the suit. It has done both. Plaintiffs have expended attorney's fees as set forth in Timothy Weitz's Affidavit, attached hereto as Exhibit 1, in order to remand this suit. Mr. Weitz attempted to contact Legions' counsel, Greg Pierce on several occasions. After leaving telephone messages for Legion's counsel, Greg Pierce, on March 3 and March 8, 2000, Mr. Weitz was eventually able to confer with him by telephone on March 23, 2000. Through the previous messages and the March 23, 2000 telephone conversation, Mr. Weitz conveyed Plaintiffs' belief that, based on the case law, Legion's removal was completely unfounded. Mr Weitz requested that Legion's counsel revisit the position taken by Legion and consider a remand agreement. It was explained that if a remand was not possible, Plaintiffs would file the Motion for Remand and would seek attorney's fees and sanctions. Legion's counsel indicated that if Plaintiffs' counsel did not receive a phone call by March 24, 2000, then counsel should assume that Legion was unwilling to agree to a remand. No such call was received. Discovery has been delayed as Plaintiffs must now wait for the outcome of this motion before proceed. The court has the power to both award attorney's fees and to sanction an improper removal, Unanue Casual v. Unanue Casual, 898 F.2d 839, 841-42 (1st Circ 1990). Plaintiffs request that the Court award them both attorney's fees and sanctions.

WHEREFORE PREMISES CONSIDERED, Plaintiffs pray that the Court remand this cause to the State District Court in Cameron County, that it ward the Plaintiffs its attorney's fees for the improper removal of this cause and that it further award Plaintiffs sanctions for the harassment and

CutePDF - www.tavisa.com

delay caused by the removal, and grant Plaintiffs any and all other relief at law or in equity to which it is otherwise entitled.

Respectfully submitted,

Timothy E. Weitz
SBN 21117500
Jeff B. McDonald
SBN 13548560
McDonald, Mackay & Weitz, L.L.P.
1411 West Avenue, Suite 200
Austin, Texas 78701
(512) 322-9202 Main Number
(512) 323-5071  Fax Number

Mark A. Weitz
SBN 21116500
Law Office of Mark A. Weitz
P.O. Box 9673
Austin, Texas 78766-9673
(512) 322-9202  Direct Line
(512) 323-5071  Fax Number

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on this the 24th day of March, 2000, a true and correct copy of this Motion to Remand has been served on the following parties and in the following manner:

Greg Pierce
Julie Springer
One American Center
600 Congress Avenue, 15th Floor
Austin, Texas 78701-2589

Charles M. Jefferson
One Riverwalk Place, Suite 1000
700 North St. Mary's Street
San Antonio, Texas 78205

Elizabeth G. Neally
Roerig, Oliveira & Fisher, L.L.P.
855 West Price Road, Suite 9
Brownsville, Texas 78520

(Via Certified Mail)

Timothy E. Weitz.

## CERTIFICATE OF CONFERENCE

I hereby certify that on the 23rd Day of March 2000, I conferenced with Greg Pierce, attorney for Legion Insurance Company in an effort to resolve this Motion for Remand. I was instructed to wait until Noon on March 24, 2000 and that if I had not been contacted by him, Legion would not agree to Remand the case. I waited until Noon on March 24, 2000 and did not receive a call.

Timothy E. Weitz

**Plaintiffs' Motion for Remand**                                                            17