21

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
RECEIVED Filed

SEP 2 8 2000

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| RIO GRANDE ORTHOPAEDIC | § | |
| INSTITUTE, AND RIO GRANDE | § | |
| ORTHOPAEDIC INSTITUTE | § | |
| AMBULATORY SURGERY CENTER | § | CIVIL ACTION NO. B-00-037 |
| LTD. | § | |
| | § | |
| VS. | § | |
| | § | |
| LEGION INSURANCE COMPANY, | § | |
| CLAIMS ADMINISTRATION SERVICES | § | |
| INC., INSURANCE ASSOCIATES OF | § | |
| THE VALLEY, JOHN LITTLE, | § | |
| INDIVIDUALLY AND D/B/A INSURANCE | § | |
| ASSOCIATES OF THE VALLEY, AND | § | |
| ARNULSO OLIVERAS, INDIVIDUALLY | § | |
| AND D/B/A INSURANCE ASSOCIATES | § | |
| OF THE VALLEY | § | |

## PLAINTIFFS' FIRST AMENDED
## ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Rio Grande Orthopaedic Institute, and Rio Grande Orthopaedic Institute

Ambulatory Surgery Center, LTD., and file this their First Amended Original Petition, complaining

of Legion Insurance Company, Claims Administration Services, Inc., Insurance Associates of the

Valley, John Little, Individually and D/B/A Insurance Associates of the Valley, and Arnulso Oliveras,

Individually and D/B/A Insurance Associates of the Valley, and for causes of action would show the

court as follows:

### Parties and In Personam Jurisdiction

1.  Plaintiff, Rio Grande Orthopaedic Institute (RGOI), is a domestic professional association,

Plaintiffs' First Amended Original Petition                                                          1

ChkPDF - www.fxxlio.com

formed and operating under the laws of the state of Texas, and engaged in business as a surgical clinic at 400 East Dove Avenue, McAllen, Texas 78504. Rio Grande Orthopaedic Institute Ambulatory Surgery Center, LTD. (ASC), is a limited liability corporation, formed and operating under the laws of the State of Texas as a free standing, out-patient surgery center, located at 5401 C Street, McAllen, Texas 78504.

2.    Defendant, Legion Insurance Company (Legion), is an alien insurance company doing business in the State of Texas, with its principle place of business at 1 Logan Square, Suite 1400, Philadelphia, Pennsylvania 19103.    Defendant Legion has filed an answer in this matter. It is therefore before the court for all purposes and need not be served with citation. Legion is engaged in the business of selling insurance in the State of Texas through local representatives. As an authorized alien insurance company, Legion has purposely availed itself of the laws and privileges of doing business in the state of Texas, and pursuant thereto, enters into contracts with Texas residents, and receives premiums for providing insurance coverage. In this case, Legion sold and received premiums for accident policies No. AH2-133461 and No. AH2-133485 through Defendants Claims Administration Services, Inc., and John Little, to various school districts in Starr, Hidalgo, and Cameron Counties, Texas. The policies that form the basis of this suit purport to cover student athletes for the period of August 1, 1998, through July 31, 1999, who were injured in the course of school sponsored athletic activities. Those injured athletes in turn sought surgical services from RGOI and/or ASC, by showing proof of insurance coverage indicating they were covered under an insurance policy issued by Legion. Having entered into contracts in the State of Texas, received premiums in the State of Texas, and breached its contracts in the State of Texas, Legion has sufficient related and unrelated minimum contacts to make it subject to the jurisdiction of the Courts of the

State of Texas. This court therefore has in personam jurisdiction over Defendant Legion.

3.      Defendant, Claims Administration Services, Inc. (CAS), is a foreign corporation licensed to conduct business in the State of Texas, with its principle place of business at P.O. Box 3968, Boca Raton, Florida 33427-3968.     Defendant CAS has filed an answer in this matter.  It is therefore before the court for all purposes and need not be served with citation.  CAS holds a license issued by the Texas Department of Insurance to operate as a Third Party Administrator.  It has therefore purposely availed itself of the laws and privileges of doing business in the State of Texas.  It has entered into contracts with Texas residents, and/or entered into contracts with non-residents that require insurance to provide services to Texas residents.  In this case, CAS acted as the independent claims paying entity for Legion in the course of paying claims under Legion policies No. AH2-133461 and No. AH2-133485.  It dealt directly with the Plaintiffs and with insureds of Legion, all of which worked and lived in Cameron, Starr, and Hidalgo Counties, Texas.  In exchange for the claims paying services it provides, CAS receives a fee, paid for in part from the premiums derived from Texas residents.  As such, CAS has sufficient related and unrelated minimum contacts to make it subject to the jurisdiction of Texas courts, and this Court therefore has in personam jurisdiction over Defendant, CAS.

4.      Insurance Associates of the Valley (Insurance Associates), is a business entity of unknown character, formed and operating under the laws of the State of Texas, doing business in Harlingen, Cameron County, Texas, with his offices at 521 South 77 Sunshine Strip, Harlingen, Texas. Defendant Insurance Associates can be served by delivery of citation with a true and correct copy of this petition by serving any officer, including Arnulso Oliveras, at the office address listed above. This court therefore has in personam jurisdiction over Defendant Insurance Associates of the Valley.

5.   Defendant, John Little, both individually and d.b.a. Insurance Associates of the Valley (Little), is an individual natural person, residing and doing business in Harlingen, Cameron County, Texas, with his offices at 521 South 77 Sunshine Strip, Harlingen, Texas 78550.  Defendant Little has filed an answer in this matter.  He is therefore before the court for all purposes and need not be served with citation.  This court therefore has in personam jurisdiction over Defendant Little.

6.   In the alternative, Defendant John Little is an employee of Insurance Associates of the Valley.  At all times relevant to this lawsuit, Defendant John Little was acting within the scope of his authority as he performed the acts and/or omissions giving rise to liability on his part, and which expose Insurance Associates of the Valley, and/or its owner, Arnulso Oliveras, to vicarious liability for the conduct of its/his employees.

7.   Defendant Arnulso Oliveras (Oliveras) is an individual natural person, residing and doing business in Harlingen, Cameron County, Texas, with his offices at 521 South 77 Sunshine Strip, Harlingen, Texas.  Based on information and belief, Defendant Oliveras is believed to be doing business as, Insurance Associates of the Valley, and can be served by delivery of citation with a true and correct copy of this petition at his office address listed above.  This court therefore has in personam jurisdiction over Defendant Oliveras.

## Discovery

8.   Plaintiff intends to conduct discovery pursuant to Texas Rule of Civil Procedure 190.3.

## Venue

9.   Cameron County is the county of residence of John Little, Insurance Associates, and Oliveras, and is one of the counties where the insurance policies that are the subject mater of this suit were sold and in force.  Cameron County is the county where the cause of action arose at least in

part, and is the county in Texas where both Defendants Legion and CAS did business for purposes of the policies in question. Therefore, pursuant to Texas Civil Practice and Remedies Code § 15.002, venue is proper in Cameron County, Texas.

<u>Subject Matter Jurisdiction</u>

10. The amount in controversy involves unpaid surgical claims that total in excess of $200,000.00, and that arise out of a contractual obligation on the part of Defendant Legion to pay the medical provider claims of insured persons under the contracts. This Court therefore has subject matter jurisdiction of this case.

<u>Statement of Facts</u>

11. In July of 1998, Legion Insurance Company Policy Numbers AH2-133461 and AH2-133485, were sold by Defendants Little and CAS to various school districts throughout the Rio Grande Valley. Defendant Little acted either as the agent of record, or the agent of Defendants CAS and Legion. In the alternative, Defendant Little acted as an employee of Insurance Associates and or Oliveras, and one or both was either the agent of record and/or the agent of Defendants CAS and Legion. All of Defendant Little's actions as an employee were within the scope of his apparent or actual authority. The policy, although carrying a different number for each school district, was an "Accident Only Policy." The policy provided coverage for sports related injuries to any "Covered Person" while he or she was covered as a student or member of the insured school district.

12. The representations made by Legion, CAS, Little, Insurance Associates and/or Oliveras, were that the policy would pay for surgical services provided to covered persons of the insured school districts, to the extent that the fees charged by the medical provider were:

a.   The usual fee charged by the provider for the service or supply given;

b. The average fee charged for the service or supply <u>in the locality in which the service or supply is received</u> (emphasis added); and

c. Is reasonable in relation to the services or supply given and the severity of the condition. These representations were not only made in writing when the policy was submitted to the various school boards as part of the bid by American National, CAS, Little, Insurance Associates and/or Oliveras, but were thereafter made to the insured school districts with the knowledge that the school districts by and through their employees and students, would pass these representations on to medical providers such as Plaintiffs, who would be providing surgical and other medical services to students and employees covered under the policy. These representations were in fact conveyed to the Plaintiffs, by word of mouth from students and school officials, by way of copies of the insurance policies themselves, and by representations made by Defendant Little, either as the agent of record, or as an employee of Defendants Insurance Associates and/or Oliveras, indirectly and/or directly to the Plaintiffs whenever questions arose over the course of the policy period on issues of coverage.

13. The various accident polices went into effect in August 1998, and Plaintiffs began seeing patients almost immediately. RGOI and ASC specialize in advanced orthoscopic knee and shoulder surgeries. The clinic and free standing surgical facility represent one of, if not the most, technically advanced surgical facilities in the Rio Grande Valley, which enables it to perform difficult and technically advanced surgical procedures on an out-patient basis, that frequently are done on an in-patient basis at a hospital. The savings from such procedures include reduced costs from overnight hospital stays and costly rehabilitative care.

14. When a patient comes into RGOI and/or ASC, he or she provides proof on insurance, usually in the form of a claim form. These forms and other proof were routinely furnished to the insured high

schools and/or school districts by Defendants American National, CAS, Little, Insurance Associates, and/or Oliveras, which in turn presented them to RGOI and ASC. The sole purpose of these forms was to provide proof of insurance to induce Plaintiffs and other similarly situated medical providers to provide medical services to insured patients. The forms themselves are a representation that the provider will be paid by the patient's insurance for the services provided under the terms of the policy.

15.   For almost 10 months, from August 1998 until June 1999, Legion and CAS paid claims  in a timely manner, and in amounts that generally matched the billed charges, or came within 80-85% of the billed charges. However, some claims dating back as far as November of 1998 remained not only unpaid, but unaddressed in the sense that CAS and/or Legion did not state whether the claim had been rejected, denied, or approved.

16.   In August 1999, the Legion polices expired, and from information and belief, it is Plaintiffs' understanding that Legion no longer wrote the accident polices for school districts in the Rio Grande Valley. Under the policy provisions, insured persons under the policy could still receive services that the Legion polices paid for, if the injury was incurred and treated during the policy period, and the additional service after the expiration of the policy nevertheless related to that injury. However, for the most part, Legion's exposure under the polices in effect from August 1998 to August 1999 has all but ended.

17.   By August 1999, Legion and/or CAS's claims paying practices had become so deficient that Plaintiffs began filing complaints with the Texas Department of Insurance, and even went so far as to agree to the submission of five clams to a claims auditing service suggested by Legion and/or CAS. The claims auditor, A&G Health Plans, negotiated a $1,000.00 discount per claim for the following

five claims:

| Patient | Date of Service | Charge | Discount |
|---------|-----------------|--------|----------|
| Jennifer Castillo | 5/26/99 | $10,195 | $1,000 |
| Roberto Gonzalez | 11/03/98 | $5,225 | $1,000 |
| Susie Marroquin | 1/16/99 | $7,695 | $1,000 |
| Sarah Jiminez | 5/15/99 | $12,670 | $1,000 |
| Silbestie Gutierrez | 5/5/99 | $17,045 | $1,000 |

These five claims were negotiated and finalized on August 6, 1999. Still, Legion and/or CAS refused to pay the claims. With regard to one claim, that of Jennifer Castillo, Legion and/or CAS out right denied the claim in December 1999, alleging the expense/service was rendered 105 days from the date of injury, and was not within the 90 day period for incurring the service. This claim was specifically taken to Legion's local agent, John Little, by a representative of the insured school district, and Little specifically instructed that representative to have William D. Snyder, M.D., of RGOI and ASC, treat the patient and that the services would be covered. In the alternative, Little was acting within the scope of his actual or apparent authority as an employee for Insurance Associates and/or Oliveras, when he made these misrepresentations about Defendant Legion's and Defendant CAS's willingness to waive the 90 day period for seeking service.

18. As of October 6, 1999, there were over 100 outstanding claims under the Legion polices, some dating back to 1998, but most well over 120 days old, that had not been paid, or even addressed. By December 1999, every outstanding claim of Legion's that had been incurred at RGOI or ASC was over four months old. Most had not even been addressed in writing by Legion in any fashion.

19. Texas has very clear requirements for the manner in which claims must be handled. Article 21.55 of the Texas Insurance Code provides specific provisions for claims paying, whether by an in-

house claims payer, or its third party administrator.  Under 21.55, all claims must be paid no later than 60 days from the receipt of all reasonably (emphasis added) requested material.  The claims payer has 15 days from receipt of the claim to acknowledge the claim, start its investigation, and request any items, statements, or forms, which are reasonably required.  From that point, the claims payer has 15 more days to either reject or pay the claim.  If the claim is to be paid in part, the payment must come within five days of such notification.  Any extension of these deadlines must be made in writing, and will allow the claims payer to extend for up to 45 days, but the reason for the extension must be specifically set forth.

20.    Legion and/or CAS's claims paying practices with regard to Plaintiffs' claims have been a clear violation of the mandates in 21.55.  Some claims went months before even being acknowledged. Requests for information came only after Plaintiffs had filed complaints with the Texas Department of Insurance, and/or by-passed CAS and sought relief directly from Legion.  In many instances, the requests for information appear to have been mere guises for further delay, and representations that information was being requested of insureds or patients proved to be misrepresentations.  At one point, a person contacted RGOI and indicated that he was a retired investigator that had been retained by CAS to investigate RGOI.  He indicated he wanted to come to RGOI's offices.  RGOI agreed to allow him to come if he could produce authorization from both CAS and Legion that he was authorized to come on their behalf, and could further produce credentials proving he was in fact a licensed or retired licensed investigator.  He never contacted RGOI or ASC again.  When this incident was reported directly to Legion's legal counsel in Philadelphia, Debra James Vance, neither she nor anyone else she contacted purported to have any knowledge of the investigator.  This attempt to investigate RGOI came after RGOI began to pressure CAS to pay its claims, and filed complaints

CutePDF - www.tesisa.com

with the Texas Department of Insurance.   None of these delays excuse CAS and/or Legion from violating the statutory mandates with regard to the payment of claims.   Art. 21.55 provides for civil damages and penalties for failure to pay, as well as interest at the rate of 18 percent per year.

21.   Only after Plaintiffs began putting pressure directly on Legion in November of 1999 did CAS begin to start addressing claims.   At that point, Legion and/or CAS began to adjust Plaintiffs' claims in a manner that was in direct violation of its own policy provisions.   There are no PPO discounts or network agreements in place between Plaintiffs and Defendants Legion or CAS.   The adjustment and payment of claims is controlled by the language of the policies themselves.   These are not Medicare claims, nor are they subject to fee schedules set for Medicare or Medicaid.   CAS and Legion's sole discretion in adjusting claims is contained in the policy.   On page 4 of the policy, under SCOPE OF COVERAGE, the policy states that Legion will provide the benefits described in the policy to all covered persons who suffer a covered loss which:

(1)   is set forth in the Description of Benefits Provisions; and

(2)   results directly and independently of all other causes, from bodily injury which is suffered in an accident; and

(3)   occurs while the person is a Covered Person under the Policy; and

(4)   is within the scope of the description of hazards provisions.

19.   The Legion policy specifically states on Page 11 that the benefits due under the policy for a loss, other than a loss for which the policy provides installments, will be paid immediately upon receipt of due written proof of such loss.   As set forth herein above, Legion and CAS did not comply with this provision.   However, when Legion and CAS began to pay claims again after stopping, they again violated the terms of the policy, the same representations therein, and the representations made

by their agent John Little.  Once it is determined that the loss is covered, and the person is covered, Legion's and CAS's discretion is governed by its own policy, and requires it to pay "Usual and Customary" fees.  "Usual and Customary" is defined as:

(1)  The usual fee charged by the provider for the service or supply given;

(2)  The average fee charged for the service or supply <u>in the locality in which the service or supply is received</u> (emphasis added); and

(3)  Is reasonable in relation to the services or supply given and the severity of the condition.

22.  As CAS began to pay claims, it became clear that it and Legion were violating the Legion policy as to the manner in which claims were adjusted.  CAS's Explanation of Benefits (EOB), demonstrated reductions between 100% and 70% of billed charges.  These reductions are based on the following global statements in the EOB's:

"The allowance is based on the St. Anthony's Guide to Ambulatory Surgery center payment Groups;"

"The usual and reasonable calculation is based upon the St. Anthony's Guide to Ambulatory Surgery center payment guidelines;"

"The disallowed amount ...represents the reduction of approved charges to USUAL, REASONABLE AND CUSTOMARY CHARGES BENEFIT LIMITED TO REASONABLE AND CUSTOMARY FEES ONLY."

23.  First of all, The St. Anthony's Guide "Group" rates are completely inapplicable to these charges.  It is clear to Plaintiffs that CAS and Legion are using Medicare "Grouper" (Group) rates to adjust claims, and that the rates are not appropriate in this case.  Second, the standard established within the policy is "Usual and Customary," not "Reasonable and Customary."  The only place where

<u>Plaintiffs' First Amended Original Petition</u>                                                                11

"reasonable" appears in the policy is in reference to the fee being reasonable "in relation to the service or supply given and the severity of the condition." It is clear that CAS and Legion are not even investigating this element of the fees. Instead, they are taking the fees, and looking at the generalized procedure performed, i.e., a knee, a shoulder, etc., and applying a Medicare "Group" rate to the charges. This entire procedure is a total breach of Legion's policy, and constitutes a material misrepresentation by all three defendants as to what benefits would be paid under the policies.

24. Prior to filing this lawsuit, counsel for Plaintiffs served both CAS and Legion with a notice letter under the provisions of the Texas Deceptive Trade Practices Act. Sixty days has elapsed since the service of that letter on both CAS and Legion. During the period of time when the sixty day period was running, RGOI and ASC continued to attempt to resolve this claims paying breach by having its counsel contact Legion directly. Upon doing so, it became apparent through conversations with Legion's in-house counsel, Debra James Vance, that Legion had no control over its claims paying service, CAS. It did not know there was a problem, it did not know the amount or number of unpaid claims, nor that they had been unpaid for the period of time that they have existed. In short, Legion is not only responsible for CAS's claims paying deficiencies, but is itself guilty of gross negligence in the selection and oversight of its claims paying service.

## First Cause of Action: Breach of Contract: Count I

Plaintiff hereby incorporates paragraphs 8-22 as if fully set forth herein, and in addition, would plead as follows:

25. Plaintiffs were intended third party beneficiaries to the insurance contracts issued by Legion Insurance Company, and negotiated by Defendants CAS, John Little, Insurance Associates, and/or Oliveras, and/or in the alternative, are the assignees of the contractual rights held by the patients of

the insured school districts. When a patient comes to Plaintiffs for care and submits proof of insurance, that patient signs a form which assigns to Plaintiffs all rights to proceeds from the insurance carrier that provides coverage for the patient. By virtue of that assignment, Plaintiffs inure to the benefits of the insurance contract to the extent that they are entitled to proceeds for medical services provided. In every instance that gives rise to a claim by Plaintiffs against Defendants for the payment of medical services, Plaintiffs performed all of the services in a competent and professional manner, as set forth on the bill for charges submitted to Defendant Legion though Defendant CAS. Plaintiffs submitted all requested information as required by the policies, and otherwise performed all conditions precedent to the payment of insurance proceeds for the services performed on patients covered by Legion's insurance policy. By failing to pay claims in a timely manner, and by further failing to pay claims under the terms of the policy, Defendants Legion, CAS, and Little, are in breach of the agreement signed by Legion Insurance Company and negotiated by Defendants CAS, Little, Insurance Associates, and/or Oliveras. Plaintiffs pray that upon trial on the merits, that it be awarded damages for breach of contract in an amount to be proven at trial that represents the amounts improperly deducted from the Plaintiffs claims, and/or improperly denied, and attorneys fees as provided for in Texas Civil Practice and Remedies Code §38.001. Plaintiffs would further aver that the conduct of Defendants in failing to pay and/or even respond to the Plaintiffs' claims was so outrageous that it constitutes the bad faith payment of claims, which entitles the Plaintiffs to punitive damages as provided for by Texas Law.

## Second Cause of Action: Breach of Contract: Count II

Plaintiff hereby incorporates paragraphs 8-22 as if fully set forth herein, and in addition, or in the alternative, would plead as follows:

26.  When Defendants CAS and/or Legion allowed A&G Health to negotiate a settlement of the five claims set out in paragraph 14 herein above, they authorized A&G to bind it to the terms of that agreement.  The five contracts had all the requisite elements: an offer by A&G to negotiate a reduced settlement and an acceptance of that offer by Plaintiffs.  The consideration was mutual in that Plaintiffs agreed to accept a reduced amount for its charges, and Defendants, by and through their authorized agent, agreed to pay the claims as negotiated.  The agreement was reached on August 6, 1999, as to all five claims.  Thereafter, CAS and/or Legion completely refused to pay the negotiated amounts.  When CAS and Legion finally did adjust these claims, it is clear from the face of the EOBs that they completely ignored the contractually negotiated settlement made in August, 1999. Furthermore, they adjusted the claims in the same improper manner as alleged in paragraphs 20-22 herein above.  As a direct result of this conduct, Defendants CAS and Legion are in breach of contract.  Plaintiff seeks recovery of damages in the amount of $47,830 on these five claims alone, plus reasonable attorney's fees as provided for in Texas Civil Practice and Remedies Code §38.001.

### Third Cause of Action: Negligent and/or Intentional Misrepresentation: Count I

Plaintiff hereby incorporates paragraphs 8-22 as if fully set forth herein, and in addition, and/or in the alternative, would plead as follows:

27.  Defendants Legion, CAS, Little, Insurance Associates, and/or Oliveras, made certain representations through conduct, orally and in writing, to the Plaintiffs, as to what benefits were provided under the insurance polices sold by CAS, Little, Insurance Associates, and/or Oliveras, that Legion issued to school districts in Cameron, Hidalgo, and Starr counties.  Those representations included what fees would be payable under the policy, the manner in which the fees would be

adjusted, and the time period in which claims would be paid.  Those representations were made either intentionally, or negligently, with the intent of the Defendants that Plaintiffs rely upon the representations.  Plaintiffs did in fact rely upon those representations by agreeing to, and thereafter performing, the requested medical services and procedures.  The representations as to the claims that make up the subject matter of this suit were false.  The Defendants either knew they were false at the time they were made, or made them in such a negligent manner that they failed to verify the truth of the representations.  Plaintiffs have been damaged by the representations by virtue of having performed medical procedures and rendered medical services for patient/insureds of Legion that Defendants now refuse to pay for.  Plaintiffs seek the recovery of damages in an amount to be proven at trial that represents the unpaid and/or underpaid claims submitted by Plaintiffs to CAS and/or Legion.  It is Plaintiff's contention that to the extent that these misrepresentations were intentional, they constitute grounds for the award of punitive damages in an amount to be determined by the trier of fact within the parameters provided by Texas law for punitive or exemplary damages.

28.   Defendant Little made the representations set forth herein above, either as agent of record for the policies sold to the school districts, or in the alternative, as the employee of the agent of record; in this case, either Insurance Associates, Oliveras, or both.  As such, not only is Little liable for his own misrepresentations, but his employer or employers are vicariously liable for his conduct.  At all times relevant hereto, the misrepresentations made by Little were made in the scope of his actual or apparent authority.  Therefore, not only are Legion and CAS liable for their own and Little's representations, but Insurance Associates and Oliveras are also liable.

## <u>Fourth Cause of Action: Intentional and/or Negligent Misrepresentation</u>:
## <u>Count II</u>

Plaintiff hereby incorporates paragraphs 8-22 as if fully set forth herein, and in addition, or in the alternative, would plead as follows:

29.   On May 26, 1999, Plaintiffs performed surgery on Jennifer Castillo, a patient/insured of Legion Insurance company.   When Ms. Castillo came to the Plaintiff, it was apparent that she had incurred her injury over 90 days prior.   Plaintiffs and Ms. Castillo were concerned that the Legion policy under which she was covered would not pay for the contemplated surgical procedure. Plaintiffs contacted an athletic trainer who knew Ms. Castillo and understood both her condition and the circumstances of the delay in her seeking medical services.   That trainer contacted Defendant John Little, explained the circumstances, and requested that Mr. Little seek and obtain approval from Legion and/or CAS for the procedure so that Plaintiffs and Ms. Castillo could be assured the procedure would be covered under the legion policy despite the delay in seeking service.   Little was, and is, the duly authorized agent and local representative of Defendant Legion and its claims payer, CAS.   In the alternative, he is the employee of Insurance Associates and/or Oliveras, and one or both are the agent of record for Legion and or CAS.   He held himself out as a legal representative to Plaintiffs on numerous occasions, and that he was authorized to speak and act on Legion's behalf. He also assured Plaintiffs that, as Legion's local representative, Plaintiffs could rely upon Little's statements for purposes of resolving coverage issues and other matters pertaining to the policies of insurance he sold and Legion issued.   At all times relevant to this cause of action, Legion and CAS held Little out, either individual or as an employee of its agent, to be their authorized agent, and never provided any indication of any limitations on Little's authority to act on Legion's and/or CAS's

behalf. Little informed the trainer that Ms. Castillo's procedure would be covered under the policy and to proceed. Plaintiffs relied upon Little's representations and performed the procedure on Ms. Castillo. Thereafter, when Plaintiffs submitted the Castillo claim, Legion, by and through CAS, rejected the claim, not because the procedure was not covered nor because the procedure was unnecessary, but because the services occurred beyond the 90 day time limit prescribed in the Legion policy. The representations made by Legion and/or CAS, by and through their authorized local agent, John Little, were made to induce Plaintiffs to perform the surgical procedure on Ms. Castillo. Plaintiffs relied to their detriment on these representations which proved to be false. The misrepresentations were either made intentionally or with negligent disregard for their truth. As a result of this misrepresentation, Plaintiffs have been damaged in the amount of at least $10,195.00 for which they seek relief. To the extent that Plaintiffs demonstrate that the misrepresentation was made intentionally, Plaintiffs seek the award of punitive/exemplary damages to be determined by the trier of fact in accordance with the limits prescribed by Texas law for punitive damages. To the extent that Little was an employee of Insurance Associates and/or Oliveras, he was acting in the scope of his actual and/or apparent authority, and as such his actions make his employer(s) personally and vicariously liable for his misrepresentations.

### Fifth Cause of Action: Violation of Texas Deceptive Trade Practices/ Texas Insurance Code Art. 21.21

Plaintiff hereby incorporates paragraphs 8-22 as if fully set forth herein, and in addition, and/or in the alternative, would plead as follows:

30. Defendants Legion and CAS are persons as defined by Tex. Ins. Code, art. 21.21 § (2) (a). Plaintiffs, as the assignees of the patients/insureds/policyholders of Legion Insurance Company, are

claimants and/or beneficiaries and/or policyholders under the policies of insurance issued by Legion to the school districts in Starr, Hidalgo, and Cameron Counties, Texas, as contemplated in 21.21 § 10. Art. 21.21 incorporates the provisions of the Texas Deceptive Trade Practices Act into the Insurance Code.

31.    The conduct of Defendants Legion and CAS as outlined herein above, is a direct violation of Texas Insurance Code, art. 21.21 § 10 et seq., in that Legion and CAS have engaged in Unfair Settlement Practices as set forth in 21.21 §10 (i), (ii), (iv), and (viii).

32.    Both CAS and Legion were served with a DTPA demand letter as required by 21.21 § 16 (e),  and sixty days have elapsed since the receipt of those letters, with no offer to settle or compromise the claims in question having been submitted by Defendants CAS and/or Legion.

33.    Plaintiffs seek to recover the actual damages caused by the Defendant's conduct, which will be proven with specificity at trial, an amount equal to three times the actual damages for the intentional conduct of the Defendants in violating the provisions of article 21.21, and reasonable and necessary attorneys fees incurred in the prosecution of this action.  Plaintiffs also seek the recovery of any and all other relief that the Court might deem appropriate, including an order enjoining both CAS and Legion from these unfair settlement practices.

### Sixth Cause of Action: Violation of Texas Insurance Code Art. 21.21-2

Plaintiff hereby incorporates paragraphs 8-22 as if fully set forth herein, and in addition, and/or in the alternative would plead as follows:

34.    The practices of the Defendants, CAS and Legion, as set forth herein above, are violations of art. 21.21-2 §2 (b), and constitute Unfair Settlement Practices in the following respects:

a.    They knowingly misrepresented to claimants pertinent facts or policy provisions;

b.   Failed to acknowledge with reasonable promptness pertinent communications with respect to claims arising under polices;

c.   Based on the conduct in this case, they failed to adopt and implement reasonable standards for prompt investigation of claims;

d.   Failed to in good faith effect prompt, fair and equitable settlements of claims submitted in which liability was reasonably clear; and,

e.   Compelled Plaintiffs to institute suit to recover amounts due under policies by offering amounts substantially less than the amounts which Plaintiffs will ultimately recover.

35.   As set forth in 21.21-2 §2 (7), these violations are a deceptive trade practice, and Plaintiffs seek the recovery of damages as set forth in Subchapter E, Chapter 17, Texas Business and Commerce Code, including but not limited to, the recovery of all actual damages, an amount equal to three times actual damages for the intentional nature of Defendant CAS's and Legion's conduct, and reasonable and necessary attorney's fees.

### Seventh Cause of Action: Violation of Art. 21.55 of Texas Insurance Code

Plaintiff hereby incorporates paragraphs 8-22 as if fully set forth herein, and in addition, and/or in the alternative, would plead as follows:

36.   As set forth in paragraphs 16-18 herein above, Defendants conduct in the manner in which claims were received, investigated, adjusted, and paid, constitutes a clear violation of art 21.55 of the Texas Insurance Code.

37.   Under the provisions of art 21.55, Defendants are liable for the actual amount of the claims, an amount equal to three times the claimed amount for the intentional violation of this provision, attorneys fees, and any and all other relief under Subchapter E, Chapter 17 of the Texas Business and

Commerce Code that the Court deems appropriate.

WHEREFORE PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to appear and answer herein, and that upon trial on the merits, that Plaintiffs be awarded judgment as prayed for herein above.

Respectfully submitted,

Timothy E. Weitz
SBN 21117500
Jeff B. McDonald
SBN 13548560

McDonald, Mackay & Weitz, L.L.P.
1411 West Avenue, Suite 200
Austin, Texas 78701
(512) 322-9202 Main Number
(512) 323-5071 Fax Number

Mark A. Weitz
SBN 21116500
Law Office of Mark A. Weitz
P.O. Box 9673
Austin, Texas 78766-9673
(802) 253-7413 Direct Line
(802) 253-9934 Fax Number

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on this the 25th day of September, 2000, a true and correct copy of this, Plaintiffs' First Amended Original Petition, has been served on the following parties and in the following manner:

Greg Pierce
Julie Springer
Scott, Douglas & McConnico, L.L.P.
600 Congress Ave
Suite 1500
Austin, Texas 78701-2589
(Via Regular, First Class Mail)

Charles M. Jefferson
Attorney at Law
700 N. St. Mary Street
Suite 1000
San Antonio, Texas 78205
(Via Regular, First Class Mail)

W. Michael Fisher
Elizabeth G. Neally
Roerig, Oliveira & Fisher, L.L.P.
855 West Price Road, Suite 9
Brownsville, Texas 78520
(Via Regular, First Class Mail)

_____
Timothy E. Weitz