*57*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

| | | |
|---|---|---|
| RIO GRANDE ORTHOPAEDIC INSTITUTE, ET AL., | § § § | **SEP 2 4 2001** |
| Plaintiffs, | § § | Michael N. Milby Clerk of Court |
| V. | § § | CIVIL ACTION NO. 00-37 |
| LEGION INSURANCE COMPANY, ET AL., | § § § | |
| Defendants. | § § § | |

## DEFENDANT LEGION INSURANCE COMPANY'S
## MOTION FOR SUMMARY JUDGMENT

Defendant Legion Insurance Company ("Legion") files this Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56, and shows the following:

### I.    INTRODUCTION

1. The Court should dismiss this case. Plaintiffs' Original Petition and their discovery responses affirmatively negate standing to pursue any claims for breach of contract, for violation of Texas Insurance Code art. 21.21, or for violation of Texas Insurance Code art. 21.55 against Legion. Furthermore, the allegations of Plaintiffs' Original Petition defeat the Plaintiffs' remaining claims -- for intentional/negligent misrepresentation -- as a matter of law. Accordingly, summary judgment should be entered dismissing all claims alleged against Legion.

279954

## II. <u>SUMMARY JUDGMENT STANDARD</u>

2. One seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. <u>See e.g</u>. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986); <u>Colson v. Grohman</u>, 174 F.3d 498, 506 (5th Cir. 1999). The moving party, however, need not negate the elements of the non-movant's case. <u>See e.g</u>. <u>Celotex</u>, 477 U.S. at 323, 106 S.Ct. at 2553; <u>Wallace v. Texas Tech Univ.</u>, 80 F.3d 1042, 1047 (5th Cir. 1996).

3. In order to defeat summary judgment, the non-movant may not relay upon mere allegations or denials in pleadings, but must present affirmative evidence, setting forth specific facts to show the existence of a genuine issue for trial. <u>See e.g</u>. <u>Celotex</u>, 477 U.S. at 322-323, 106 S.Ct. 2552-2553; <u>Colson</u>, 174 F.2d at 506; <u>Wallace</u>, 80 F.3d at 1047. The non-movant's burden is not satisfied by "metaphysical doubts," conclusory allegations, unsubstantiated assertions, speculation, the mere existence of some alleged factual dispute, or only a scintilla of evidence. <u>See e.g</u>. <u>Wallace</u>, 80 F.3d at 1047; <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994). Instead, the non-movant must present evidence upon which a jury could reasonably find for the non-movant. <u>See e.g</u>. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512 (1986); <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-587, 106 S.Ct. 1348, 1356 (1986).

2

279954

## III.    LEGAL DISCUSSION

4. The Plaintiffs' claims against Legion should be dismissed. The Plaintiffs' pleadings and discovery responses demonstrate that they lack standing to assert claims for breach of contract, violation of the Texas Deceptive Trade Practices/Texas Insurance Code art. 21.21, violation of Texas Insurance Code art. 21.21-2, and violations of Texas Insurance Code art. 21.55 against Legion. Additionally, the Plaintiffs' pleadings and discovery responses demonstrate that their remaining claims (for intentional/negligent misrepresentation) should be dismissed because the claims lack merit.[1]

### A.    The Plaintiffs lack standing to assert the breach of contract claims.

5. The Plaintiffs lack standing to assert the breach of contract claims. Plaintiffs' Original Petition acknowledges that Plaintiffs are neither insureds nor "covered persons" under the Policies[2] they claim have been breached. See Plaintiff's Original Petition at 4, attached as **Exhibit A**; Plaintiffs' Motion to Remand at 11-12, attached as **Exhibit B**. Instead, they claim to be third party beneficiaries and/or assignees of the insureds/covered persons. Neither of these bases, however, provides Plaintiffs' with standing to sue.

### i.    Plaintiffs are not third party beneficiaries of the Legion Policies

6. First, Plaintiffs' allegation as to their third party beneficiary status is based upon their claim that medical services providers are third party beneficiaries to health benefits policies such as those at issue in this case. See **Exhibit A** at 11. To the contrary,

---

[1] As discussed below, the Court has already found that Plaintiffs' cannot recover on their fraud/negligent misrepresentation claims as a matter of law.

3

medical services providers are not third party beneficiaries to insurance policies covering medical costs. See Herman Hospital v. Liberty Life Assur. Co., 696 S.W.2d 37, 40 (Tex. App.—Houston [14th Dist.] 1985, writ ref. n.r.e.).

7.   Herman Hospital is directly on point. It involved a claim by a hospital under a policy covering medical costs incurred by a patient. See Herman Hospital, 696 S.W.2d at 39.   The hospital alleged standing, claiming third party beneficiary status because the policy clearly contemplated the payment of benefits based upon charges by a medical caregiver. See Herman Hospital, 696 S.W.2d at 41.   The Court rejected the hospital's position, holding that the medical caregiver is not a third party beneficiary to the policy. See Herman Hospital, 696 S.W.2d at 41.

8.   Accordingly, as a matter of law, Plaintiffs are not third party beneficiaries to the Policies, and lack standing to assert any claim for breach of contract.

ii.   **Insureds assigned no rights to Plaintiffs**

9.   Plaintiffs alternatively claim standing to bring their breach of contract claims as assignees of the insured's benefits under the Policies. See **Exhibit A** at 11.   Plaintiffs' cannot, however, provide any evidence to demonstrate any such assignment.

10. To be valid, however, the assignment must "manifest [an] intention to make a present transfer of the rights without further action by the obligor." U.S. ex rel. v. St Luke's Episcopal Hospital, 982 F. Supp. 1261 (S. D. Tex. 1997).

---

[2] According to Plaintiff's Original Petition, the various policies are identical in language, differing only as to the named insured. See Exhibit A at 4-5, 9.

4

11. Here, however, Plaintiffs' deny any contracts between themselves and the patients. <u>See</u> Plaintiffs' Response To Defendant Legion Insurance Company's First Set of Interrogatories at 5, attached as **Exhibit C**. <u>Instead, they claim only that the patients authorized Plaintiffs to file insurance claims on the patients' behalf</u>. <u>See</u> **Exhibit C** at 5. Thus, by Plaintiffs' own admission, they have not been assigned any rights, but merely filed claims on behalf of the patients. Accordingly, they have no standing to sue Legion for breach of the insurance contracts.

**B.** <u>No standing to assert claims under Tex. Ins. Code art. 21.21, 21.21-2, 21.55, or the DTPA for "unfair settlement practices."</u>

12. By the same token, Plaintiffs lack standing to assert claims for unfair settlement practices under Tex. Ins. Code art. 21.21, 21.21-2, 21.55, and/or the Texas Deceptive Trade Practices and Consumer Protection Act (the "DTPA").

**i.** <u>No Standing to assert claims under Tex. Ins. Code art. 21.21, 21.21-2, or the DTPA</u>

13. The Texas Supreme Court, in <u>Allstate Ins. Co. v. Watson</u>, held that only an insured may make a claim for unfair claims settlement practices under Tex. Ins. Code art. 21.21 and/or the DTPA. <u>See Allstate Ins. Co. v. Watson</u>, 876 S.W.2d 145, 149-150 (Tex 1994); <u>see also Tamez v. Certain Underwriters at Lloyd's, London, Internat'l Accident Facilities, Inc.</u>, 999 S.W.2d 12, 21 (Tex.App.--Houston [14[th] Dist.] 1998, writ den'd) (holding that third party claimants lacked standing to assert claims under Tex. Ins. Code art. 21.21). The Texas Supreme Court also noted that there is no private right of action for violation of Tex. Ins. Code art. 21.21-2. <u>See Allstate</u>, 876 S.W.2d at 148-149. Thus, since Plaintiffs admit that they are not insureds of Legion (<u>see</u> **Exhibit A** at 4-5, 11;

5

**Exhibit B** at 4-5), and since they have not been assigned any rights by insureds/covered persons under the policies at issue, Plaintiffs lack standing to assert any claims against Legion under Tex. Ins. Code art. 21.21, the DTPA, or Tex. Ins. Code art. 21.21-2.

    ii.    <u>Plaintiffs lack standing to sue under Tex. Ins. Code art. 21.55</u>

14. Plaintiffs also lack standing to assert claims under Tex. Ins. Code art. 21.55. Tex. Ins. Code art. 21.55 §6 states:

> In all cases, where a claim is made pursuant to a policy of insurance and the insurer liable therefor is not in compliance with the requirements of this article, *such insurer shall be liable to pay the holder of the policy, or the beneficiary making a claim under the policy,* in addition to the amount of the claim, 18 percent per annum of the amount of such claim as damages, together with reasonable attorney fees. If suit is filed, such attorney's fees shall be taxed as part of the costs of the case.

<u>Id.</u> (emphasis added). The term "claim" is defined as "a first party claim made by any insured or a policyholder under an insurance policy ...." Tex. Ins. Code art. 21.55 §1(3). As detailed above, Plaintiffs admit that they are not insureds or policyholders with respect to the Policies. <u>See</u> **Exhibit A** at 4, **Exhibit B** at 4-5. Accordingly, Tex. Ins. Code art. 21.55 simply does not apply here.

15. Moreover, Texas law clearly holds that Tex. Ins. Code art. 21.55 is not a separate cause of action from a claim for breach of the insurance contract. <u>See Hartman v. St. Paul Fire and Marine Ins. Company</u>, 55 F.Supp.2d 600, 603 n. 2 (N.D. Tex. 1998); <u>Lusk v. Puryear</u>, 896 S.W.2d 377, 380 (Tex.App.--Amarillo 1995, no writ). Thus, since the Plaintiffs have no standing to pursue a breach of contract action, they also lack standing to pursue the remedies provided under Tex. Ins. Code art. 21.55.

6

16. As such, Plaintiffs lack standing to assert any claims under Tex. Ins. Code art. 21.55.

### C.    No negligent/intentional misrepresentation as a matter of law

17. Finally, the Plaintiffs two negligent/intentional misrepresentation claims should be dismissed as a matter of law.  The first alleges that Legion misrepresented the benefits provided under the policies issued by Legion.  See **Exhibit A** at 12-13.  The second alleges that Legion misrepresented the coverage afforded by Legion's policies for medical procedures allegedly performed by Plaintiffs on Jennifer Castillo, a student covered under one of the Legion Policies.  See **Exhibit A** at 13-15.  Neither can survive because, as the Court has already held, none of the misrepresentations alleged by Plaintiffs can support a fraud/negligent misrepresentation claim under Texas law, and because Legion owed no duty to Plaintiffs.

### i.    Plaintiffs have asserted no claim for misrepresentation of the Policies

### (a)    Legion made no actionable misrepresentations of the Policies

18. Under Texas law, absent some specific misrepresentation of the terms of coverage, the mistaken belief that a policy provides coverage under certain contingencies which are not covered cannot give rise to a claim for misrepresentation.  See e.g. Burton v. State Farm Mutual Automotive Insurance Company, 869 F. Supp. 480, 486 (S.D. Tex. 1994), aff'd, 66 F.2d 319 (5th Cir. 1995); Parkins v. Texas Farmers Ins. Co., 645 S.W.2d 775, 777 (Tex. 1983); State Farm County Mutual Ins. Company of Texas v. Moran, 809 S.W.2d 613, 620-621 (Tex. App.--Corpus Christi 1991, writ denied).

19. As the Court has already found, in ruling on Plaintiff's Motion to Remand, the

7

Plaintiffs have not alleged a valid claim of misrepresentation. <u>See</u> Magistrate Judge's Report and Recommendation, attached as **Exhibit D**. Indeed, the Plaintiffs specifically allege that the policies at issue contained the very representations that form the basis of the claim for misrepresentation. <u>See</u> **Exhibit A** at 9. Thus, no valid claim for misrepresentation has even been alleged, and Plaintiffs cannot provide evidence supporting the claim for negligent/intentional misrepresentation. Accordingly, it should be dismissed.

     **(b)**    <u>**Legion owed no duty to Plaintiffs as a matter of law**</u>

20. Moreover, the summary judgment proof conclusively establishes that, even if the Plaintiffs' negligent misrepresentation claims are viable, in no event are their *intentional* misrepresentation claims proper. Under Texas law, a claim for intentional misrepresentation exists only where the defendant made representations directly to the plaintiff. <u>Kanon v. Methodist Hospital</u>, 9 S.W.3d 365, 372 (Tex. App.—Houston [1st Dist.] 1999, no writ)(where "after diligently search[ing] Texas case law," the court was "unable to find any cases in which a person was held liable for fraud or intentional misrepresentation when there was no privity between the plaintiff and the defendant").

21. None of the alleged misrepresentations upon which Plaintiffs base their claims in this lawsuit were made by Legion *directly* to Plaintiffs, and Plaintiffs cannot provide any evidence of any claims made directly to them by Legion. Accordingly, Plaintiffs' intentional misrepresentation claims should be dismissed as a matter of law.

8

ii.   **The Plaintiffs cannot recover based upon any alleged misrepresentation regarding coverage afforded to Jennifer Castillo**

22. The Plaintiffs also cannot recover on their second misrepresentation claim against Legion -- that it misrepresented the coverage afforded to Jennifer Castillo.  As the Plaintiffs' admit, they were aware that the language of the policies issued by Legion excluded coverage for the services it provided to Jennifer Castillo.  See **Exhibit A** at 14. Of course, one cannot recover on a misrepresentation claim where he knew the true facts all along.  See e.g. Haralson v. E.F. Hutton Group, Inc., 919 F.2d 1014, 1026 (5th Cir. 1990); Chitsey v. Nat'l Lloyds Ins. Co., 698 S.W.2d 766, 769 (Tex. App.--Austin 1985), aff'd, 738 S.W.2d 641 (Tex. 1987).  Again, the Court already disposed of this claim in ruling on the Motion to Remand.  See **Exhibit D**.  Thus, even if Legion falsely stated that the Legion Policies covered services to Jennifer Castillo, the Plaintiffs cannot recover for such representation in light of their knowledge that Ms. Castillo's injuries were not covered.

## IV.  CONCLUSION

22.   Each and every one of Plaintiffs claims lack any basis in law or fact. Plaintiffs lack standing to even assert most of their claims; and even those causes of action which survive the initial standing test fail to state a claim.  Accordingly, the claims asserted against Legion should be dismissed, with prejudice.

WHEREFORE, PREMISES CONSIDERED, Legion Insurance Company requests that this Court grant its Motion for Summary Judgment, dismiss Plaintiffs' claims against Legion, and that the Court grant Legion all other relief to which Legion is entitled.

Respectfully submitted,

SCOTT, DOUGLASS & McCONNICO, L.L.P.
One American Center
600 Congress Avenue, 15th Floor
Austin, Texas 78701-2589
512/495-6300
512/474-0731 (Fax)

By: _____

Greg Pierce
Attorney-in-Charge
SDT Admission No. 13785
State Bar No. 15994250

Of Counsel:

Julie Springer
State Bar No. 18966770
Scott, Douglass & McConnico, L.L.P.
600 Congress Avenue, 15th Floor
Austin, Texas  78701-2589

ATTORNEYS  FOR  LEGION  INSURANCE COMPANY

10

279954

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendant Legion Insurance Company's Motion for Summary Judgment has been served, as indicated, on the following counsel of record on September 21, 2001:

Timothy E. Weitz          VIA CM,RRR 7001 0360 0003 4979 5923
McDonald, Mackay & Weitz, L.L.P.
1411 West Avenue, Suite 200
Austin, TX 78701

Mark A. Weitz          VIA CM,RRR 7001 0360 0003 4979 5930
Law Offices of Mark A. Weitz
P.O. Box 9673
Austin, TX 78766-9673

Charles M. Jefferson          VIA CM RRR 7001 0360 0003 4979 5947
One Riverwalk Place, Suite 1000
700 North St. Mary's Street
San Antonio, Texas 78205-3585

Reynaldo Ortiz          VIA CM RRR 7001 0360 0003 4979 5954
Law Office of Reynaldo Ortiz
1109 W. Nolana, Suite 204
McAllen, Texas 78504

Greg Pierce

11

279954

FILED _11:30_ O'CLOCK _____ M
AURORA DE LA GARZA DIST. CLERK

JAN 25 2000

CAUSE NO. 2000-01-326-C

RIO GRANDE ORTHOPAEDIC                  §          IN THE DISTRICT COURT
INSTITUTE, AND RIO GRANDE               §
ORTHOPAEDIC INSTITUTE                   §
AMBULATORY SURGERY CENTER,              §
LTD.                                    §
                                        §
VS.                                     §          OF CAMERON COUNTY, TEXAS
                                        §
LEGION INSURANCE COMPANY,               §
CLAIMS ADMINISTRATION                   §
SERVICES, INC., AND                     §
JOHN LITTLE, DBA INSURANCE              §
ASSOCIATES OF THE VALLEY                §          _197th_ JUDICIAL DISTRICT

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Rio Grande Orthopaedic Institute, and Rio Grande Orthopaedic Institute

Ambulatory Surgery Center, LTD., and files this their Original Petition, complaining of Legion

Insurance Company, Claims Administration Services, Inc., and John Little, DBA Insurance Associates

of the Valley, and for causes of action would show the court as follows:

### Parties and In Personam Jurisdiction

1.    Plaintiff, Rio Grande Orthopaedic Institute (RGOI), is a domestic professional association,

formed and operating under the laws of the state of Texas, and engaged in business as a surgical clinic

at 400 East Dove Avenue, McAllen, Texas 78504.  Rio Grande Orthopaedic Institute Ambulatory

Surgery Center, LTD. (ASC), is a limited liability corporation, formed and operating under the laws

of the State of Texas as a free standing, out-patient surgery center, located at 5401 C Street,

McAllen, Texas 78504.

2.    Defendant, Legion Insurance Company (Legion), is an alien insurance company doing business in the State of Texas, with its principle place of business at 1 Logan Square, Suite 1400, Philadelphia, Pennsylvania 19103. It can be served with process by serving its registered agent for service of process, CT Corporation Systems, at 350 St. Paul Street, Dallas, Texas 75201. Legion is engaged in the business of selling insurance in the State of Texas through local representatives. As an authorized alien insurance company, Legion has purposely availed itself of the laws and privileges of doing business in the state of Texas, and pursuant thereto, enters into contracts with Texas residents, and receives premiums for providing insurance coverage. In this case, Legion sold and received premiums for accident policies No. AH2-133461 and No. AH2-133485 through Defendants Claims Administration Services, Inc., and John Little, to various school districts in Starr, Hidalgo, and Cameron Counties, Texas. The policies that form the basis of this suit purport to cover student athletes for the period of August 1, 1998, through July 31, 1999, who were injured in the course of school sponsored athletic activities. Those injured athletes in turn sought surgical services from RGOI and/or ASC, by showing proof of insurance coverage indicating they were covered under an insurance policy issued by Legion. Having entered into contracts in the State of Texas, received premiums in the State of Texas, and breached its contracts in the State of Texas, Legion has sufficient related and unrelated minimum contacts to make it subject to the jurisdiction of the Courts of the State of Texas. This court therefore has in personam jurisdiction over Defendant Legion.

3.    Defendant, Claims Administration Services, Inc. (CAS), is a foreign corporation licensed to conduct business in the State of Texas, with its principle place of business at P.O. Box 3968, Boca Raton, Florida 33427-3968. Based on the listing of its registered agent in the records kept by the Texas Department of Insurance, CAS can be served with process by serving "any officer, at P.O. Box

3968, Boca Raton, Florida 33427, by Certified Mail, Return Receipt Requested. CAS holds a license issued by the Texas Department of Insurance to operate as a Third Party Administrator. It has therefore purposely availed itself of the laws and privileges of doing business in the State of Texas. It has entered into contracts with Texas residents, and/or entered into contracts with non-residents that require insurance to provide services to Texas residents. In this case, CAS acted as the independent claims paying entity for Legion in the course of paying claims under Legion policies No. AH2-133461 and No. AH2-133485. It dealt directly with the Plaintiffs and with insureds of Legion, all of which worked and lived in Cameron, Starr, and Hidalgo Counties, Texas. In exchange for the claims paying services it provides, CAS receives a fee, paid for in part from the premiums derived from Texas residents. As such, CAS has sufficient related and unrelated minimum contacts to make it subject to the jurisdiction of Texas courts, and this Court therefore has in personam jurisdiction over Defendant, CAS.

4.   Defendant, John Little, d.b.a. Insurance Associates of the Valley (Little), is an individual natural person, residing and doing business in Harlingen, Cameron County, Texas, with his offices at 521 South 77 Sunshine Strip, Harlingen, Texas 78550. Defendant Little can be served by delivery of citation, with a true and correct copy of this petition, at his office address listed above. This court therefore has in personam jurisdiction over Defendant Little.

### Discovery

5.   Plaintiff intends to conduct discovery pursuant to Texas Rule of Civil Procedure 190.3.

### Venue

6.   Cameron County is the county of residence of John Little, and is one of the counties where the insurance policies that are the subject mater of this suit were sold and in force. Cameron County

is the county where the cause of action arose at least in part, and is the county in Texas where both Defendants Legion and CAS did business for purposes of the policies in question. Therefore, pursuant to Texas Civil Practice and Remedies Code § 15.002, venue is proper in Cameron County, Texas.

## Subject Matter Jurisdiction

7.    The amount in controversy involves unpaid surgical claims that total in excess of $200,000.00, and that arise out of a contractual obligation on the part of Defendant Legion to pay the medical provider claims of insured persons under the contracts. This Court therefore has subject matter jurisdiction of this case.

## Statement of Facts

8.    In July of 1998, Legion Insurance Company Policy Numbers AH2-133461 and AH2-133485, were sold by Defendants Little and CAS to various school districts throughout the Rio Grande Valley. The policy, although carrying a different number for each school district, was an "Accident Only Policy." The policy provided coverage for sports related injuries to any "Covered Person" while he or she was covered as a student or member of the insured school district.

9.    The representations made by Legion, CAS, and Little, were that the policy would pay for surgical services provided to covered persons of the insured school districts, to the extent that the fees charged by the medical provider were:

    a.    The usual fee charged by the provider for the service or supply given;

    b.    The average fee charged for the service or supply in the locality in which the service or supply is received (emphasis added); and

    c.    Is reasonable in relation to the services or supply given and the severity of the condition.

These representations were not only made in writing, they were made to the insureds themselves, who then conveyed them to Plaintiffs, and they were also made by Defendant Little directly to the Plaintiffs whenever questions arose on issues of coverage over the course of the policy period.

10.  The various accident polices went into effect in August 1998, and Plaintiffs began seeing patients almost immediately.  RGOI and ASC specialize in advanced orthoscopic knee and shoulder surgeries.  The clinic and free standing surgical facility represent one of, if not the most, technically advanced surgical facilities in the Rio Grande Valley, which enables it to perform difficult and technically advanced surgical procedures on an out-patient basis, that frequently are done on an in-patient basis at a hospital.  The savings from such procedures include reduced costs from overnight hospital stays and costly rehabilitative care.

11.  When a patient comes into RGOI and/or ASC, he or she provides proof of insurance, usually in the form of a claim form.  These forms and other proof were routinely furnished by Defendants Legion, CAS and/or Little, for the sole purpose of inducing Plaintiffs and other similarly situated medical providers to provide medical services to insured patents.  The cards are themselves a representation that the provider will be paid by the patent's insurance for the services provided under the terms of the policy.

12.  For almost 10 months, from August 1998 until June 1999, Legion and CAS paid claims  in a timely manner, and in amounts that generally matched the billed charges, or came within 80-85% of the billed charges.  However, some claims dating back as far as November of 1998 remained not only unpaid, but unaddressed in the sense that CAS and/or Legion did not state whether the claim had been rejected, denied, or approved.

13.  In August 1999, the Legion polices expired, and from information and belief, it is Plaintiffs'

5

understanding that Legion no longer wrote the accident polices for school districts in the Rio Grande Valley. Under the policy provisions, insured persons under the policy could still receive services that the Legion polices paid for, if the injury was incurred and treated during the policy period, and the additional service after the expiration of the policy nevertheless related to that injury. However, for the most part, Legion's exposure under the polices in effect from August 1998 to August 1999 has all but ended.

14.    By August 1999, Legion and/or CAS's claims paying practices had become so deficient that Plaintiffs began filing complaints with the Texas Department of Insurance, and even went so far as to agree to the submission of five claims to a claims auditing service suggested by Legion and/or CAS. The claims auditor, A&G Health Plans, negotiated a $1,000.00 discount per claim for the following five claims:

| Patient | Date of Service | Charge | Discount |
|---|---|---|---|
| Jennifer Castillo | 5/26/99 | $10,195 | $1,000 |
| Roberto Gonzalez | 11/03/98 | $5,225 | $1,000 |
| Susie Marroquin | 1/16/99 | $7,695 | $1,000 |
| Sarah Jiminez | 5/15/99 | $12,670 | $1,000 |
| Silbestie Gutierrez | 5/5/99 | $17,045 | $1,000 |

These five claims were negotiated and finalized on August 6, 1999. Still, Legion and/or CAS refused to pay the claims. With regard to one claim, that of Jennifer Castillo, Legion and/or CAS out right denied the claim in December 1999, alleging the expense/service was rendered 105 days from the date of injury, and was not within the 90 day period for incurring the service. This claim was specifically taken to Legion's local agent, John Little, by a representative of the insured school district, and Little specifically instructed that representative to have William D. Snyder, M.D., of RGOI and ASC, treat the patient and that the services would be covered.

15. As of October 6, 1999, there were over 100 outstanding claims under the Legion polices, some dating back to 1998, but most well over 120 days old, that had not been paid, or even addressed. By December 1999, every outstanding claim of Legion's that had been incurred at RGOI or ASC was over four months old. Most had not even been addressed in writing by Legion in any fashion.

16. Texas has very clear requirements for the manner in which claims must be handled. Article 21.55 of the Texas Insurance Code provides specific provisions for claims paying, whether by an in-house claims payer, or its third party administrator. Under 21.55, all claims must be paid no later than 60 days from the receipt of all reasonably (emphasis added) requested material. The claims payer has 15 days from receipt of the claim to acknowledge the claim, start its investigation, and request any items, statements, or forms, which are reasonably required. From that point, the claims payer has 15 more days to either reject or pay the claim. If the claim is to be paid in part, the payment must come within five days of such notification. Any extension of these deadlines must be made in writing, and will allow the claims payer to extend for up to 45 days, but the reason for the extension must be specifically set forth.

17. Legion and/or CAS's claims paying practices with regard to Plaintiffs' claims have been a clear violation of the mandates in 21.55. Some claims went months before even being acknowledged. Requests for information came only after Plaintiffs had filed complaints with the Texas Department of Insurance, and/or by-passed CAS and sought relief directly from Legion. In many instances, the requests for information appear to have been mere guises for further delay, and representations that information was being requested of insureds or patients proved to be misrepresentations. At one point, a person contacted RGOI and indicated that he was a retired investigator that had been retained

by CAS to investigate RGOI. He indicated he wanted to come to RGOI's offices. RGOI agreed to allow him to come if he could produce authorization from both CAS and Legion that he was authorized to come on their behalf, and could further produce credentials proving he was in fact a licensed or retired licensed investigator. He never contacted RGOI or ASC again. When this incident was reported directly to Legion's legal counsel in Philadelphia, Debra James Vance, neither she nor anyone else she contacted purported to have any knowledge of the investigator. This attempt to investigate RGOI came after RGOI began to pressure CAS to pay its claims, and filed complaints with the Texas Department of Insurance. None of these delays excuse CAS and/or Legion from violating the statutory mandates with regard to the payment of claims. Art. 21.55 provides for civil damages and penalties for failure to pay, as well as interest at the rate of 18 percent per year.

18.   Only after Plaintiffs began putting pressure directly on Legion in November of 1999 did CAS begin to start addressing claims. At that point, Legion and/or CAS began to adjust Plaintiffs' claims in a manner that was in direct violation of its own policy provisions. There are no PPO discounts or network agreements in place between Plaintiffs and Defendants Legion or CAS. The adjustment and payment of claims is controlled by the language of the policies themselves. These are not Medicare claims, nor are they subject to fee schedules set for Medicare or Medicaid. CAS and Legion's sole discretion in adjusting claims is contained in the policy. On page 4 of the policy, under SCOPE OF COVERAGE, the policy states that Legion will provide the benefits described in the policy to all covered persons who suffer a covered loss which:

(1)  is set forth in the Description of Benefits Provisions; and

(2)  results directly and independently of all other causes, from bodily injury which is suffered in an accident; and:

CitiPDF - www.texisi.com

(3)  occurs while the person is a Covered Person under the Policy; and

(4)  is within the scope of the description of hazards provisions.

19.  The Legion policy specifically states on Page 11 that the benefits due under the policy for a loss, other than a loss for which the policy provides installments, will be paid immediately upon receipt of due written proof of such loss.  As set forth herein above, Legion and CAS did not comply with this provision.  However, when Legion and CAS began to pay claims again after stopping, they again violated the terms of the policy, the same representations therein, and the representations made by their agent John Little.  Once it is determined that the loss is covered, and the person is covered, Legion's and CAS's discretion is governed by its own policy, and requires it to pay "Usual and Customary" fees.  "Usual and Customary" is defined as:

(1)  The usual fee charged by the provider for the service or supply given;

(2)  The average fee charged for the service or supply in the locality in which the service or supply is received (emphasis added); and

(3)  Is reasonable in relation to the services or supply given and the severity of the condition.

20.  As CAS began to pay claims, it became clear that it and Legion were violating the Legion policy as to the manner in which claims were adjusted.  CAS's Explanation of Benefits (EOB), demonstrated reductions between 100% and 70% of billed charges.  These reductions are based on the following global statements in the EOB's:

"The allowance is based on the St. Anthony's Guide to Ambulatory Surgery center payment Groups;"

"The usual and reasonable calculation is based upon the St. Anthony's Guide to Ambulatory Surgery center payment guidelines;"

"The disallowed amount ...represents the reduction of approved charges to USUAL, REASONABLE AND CUSTOMARY CHARGES BENEFIT LIMITED TO REASONABLE AND CUSTOMARY FEES ONLY."

21. First of all, The St. Anthony's Guide "Group" rates are completely inapplicable to these charges. It is clear to Plaintiffs that CAS and Legion are using Medicare "Grouper" (Group) rates to adjust claims, and that the rates are not appropriate in this case. Second, the standard established within the policy is "Usual and Customary," not "Reasonable and Customary." The only place where "reasonable" appears in the policy is in reference to the fee being reasonable "in relation to the service or supply given and the severity of the condition." It is clear that CAS and Legion are not even investigating this element of the fees. Instead, they are taking the fees, and looking at the generalized procedure performed, i.e., a knee, a shoulder, etc., and applying a Medicare "Group" rate to the charges. This entire procedure is a total breach of Legion's policy, and constitutes a material misrepresentation by all three defendants as to what benefits would be paid under the policies.

22. Prior to filing this lawsuit, counsel for Plaintiffs served both CAS and Legion with a notice letter under the provisions of the Texas Deceptive Trade Practices Act. Sixty days has elapsed since the service of that letter on both CAS and Legion. During the period of time when the sixty day period was running, RGOI and ASC continued to attempt to resolve this claims paying breach by having its counsel contact Legion directly. Upon doing so, it became apparent through conversations with Legion's in-house counsel, Debra James Vance, that Legion had no control over its claims paying service, CAS. It did not know there was a problem, it did not know the amount or number of unpaid claims, nor that they had been unpaid for the period of time that they have existed. In short, Legion is not only responsible for CAS's claims paying deficiencies, but is itself guilty of gross

Plaintiff's Original Petition                                                                                          10

CISPDF - www.fesio.com

negligence in the selection and oversight of its claims paying service.

## First Cause of Action: Breach of Contract: Count I

Plaintiff hereby incorporates paragraphs 8-22 as if fully set forth herein, and in addition, would plead as follows:

23.    Plaintiffs were intended third party beneficiaries to the insurance contracts issued by Legion insurance company, and negotiated by CAS and/or Defendant John Little, and/or in the alternative, Plaintiffs are the assignees of the contractual rights held by the patients of the insured school districts. When a patient comes to Plaintiffs for care and submits proof of insurance, that patient signs a form which assigns to Plaintiffs all rights to proceeds from the insurance carrier that provides coverage for the patient. By virtue of that assignment, Plaintiffs inure to the benefits of the insurance contract to the extent that they are entitled to proceeds for medical services provided. In every instance that gives rise to a claim by Plaintiffs against Defendants for the payment of medical services, Plaintiffs performed all of the services in a competent and professional manner, as set forth on the bill for charges submitted to Defendant Legion though Defendant CAS. Plaintiffs submitted all requested information as required by the policies, and otherwise performed all conditions precedent to the payment of insurance proceeds for the services performed on patients covered by Legion's insurance policy. By failing to pay claims in a timely manner, and by further failing to pay claims under the terms of the policy, Defendants Legion, CAS, and Little, are in breach of the agreement signed by Legion Insurance Company and negotiated by Defendants CAS and/or Little. Plaintiffs pray that upon trial on the merits, that it be awarded damages for breach of contract in an amount to be proven at trial that represents the amounts improperly deducted from the Plaintiffs claims, and/or improperly denied, and attorneys fees as provided for in Texas Civil Practice and Remedies Code §38.001.

Plaintiffs would further aver that the conduct of Defendants in failing to pay and/or even respond to the Plaintiffs' claims was so outrageous that it constitutes the bad faith payment of claims, which entitles the Plaintiffs to punitive damages as provided for by Texas Law.

### Second Cause of Action: Breach of Contract: Count II

Plaintiff hereby incorporates paragraphs 8-22 as if fully set forth herein, and in addition, or in the alternative, would plead as follows:

24.    When Defendants CAS and/or Legion allowed A&G Health to negotiate a settlement of the five claims set out in paragraph 14 herein above, they authorized A&G to bind it to the terms of that agreement. The five contracts had all the requisite elements: an offer by A&G to negotiate a reduced settlement and an acceptance of that offer by Plaintiffs. The consideration was mutual in that Plaintiffs agreed to accept a reduced amount for its charges, and Defendants, by and through their authorized agent, agreed to pay the claims as negotiated. The agreement was reached on August 6, 1999, as to all five claims. Thereafter, CAS and/or Legion completely refused to pay the negotiated amounts. When CAS and Legion finally did adjust these claims, it is clear from the face of the EOBs that they completely ignored the contractually negotiated settlement made in August, 1999. Furthermore, they adjusted the claims in the same improper manner as alleged in paragraphs 20-22 herein above. As a direct result of this conduct, Defendants CAS and Legion are in breach of contract. Plaintiff seeks recovery of damages in the amount of $47,830 on these five claims alone, plus reasonable attorney's fees as provided for in Texas Civil Practice and Remedies Code §38.001.

### Third Cause of Action: Negligent and/or Intentional Misrepresentation: Count I

Plaintiff hereby incorporates paragraphs 8-22 as if fully set forth herein, and in addition, and/or

in the alternative, would plead as follows:

25.   Defendants Legion, CAS, and/or John Little, made certain representations through conduct, orally and in writing, to the Plaintiffs, as to what benefits were provided under the insurance polices sold by John Little and/or CAS, that Legion issued to school districts in Cameron, Hidalgo, and Starr counties. Those representations included what fees would be payable under the policy, the manner in which the fees would be adjusted, and the time period in which claims would be paid. Those representations were made either intentionally, or negligently, with the intent of the Defendants that Plaintiffs rely upon the representations. Plaintiffs did in fact rely upon those representations by agreeing to, and thereafter performing, the requested medical services and procedures. The representations as to the claims that make up the subject matter of this suit were false. The Defendants either knew they were false at the time they were made, or made them in such a negligent manner that they failed to verify the truth of the representations. Plaintiffs have been damaged by the representations by virtue of having performed medical procedures and rendered medical services for patient/insureds of Legion that Defendants now refuse to pay for. Plaintiffs seek the recovery of damages in an amount to be proven at trial that represents the unpaid and/or underpaid claims submitted by Plaintiffs to CAS and/or Legion. It is Plaintiff's contention that to the extent that these misrepresentations were intentional, they constitute grounds for the award of punitive damages in an amount to be determined by the trier of fact within the parameters provided by Texas law for punitive or exemplary damages.

### Fourth Cause of Action: Intentional and/or Negligent Misrepresentation: Count II

Plaintiff hereby incorporates paragraphs 8-22 as if fully set forth herein, and in addition, or in the

CSldPDF - www.fasiso.com

alternative, would plead as follows:

26.   On May 26, 1999, Plaintiffs performed surgery on Jennifer Castillo, a patient/insured of Legion Insurance company.  When Ms. Castillo came to the Plaintiff, it was apparent that she had incurred her injury over 90 days prior.  Plaintiffs and Ms. Castillo were concerned that the Legion policy under which she was covered would not pay for the contemplated surgical procedure. Plaintiffs contacted an athletic trainer who knew Ms. Castillo and understood both her condition and the circumstances of the delay in her seeking medical services.  That trainer contacted Defendant John Little, explained the circumstances, and requested that Mr. Little seek and obtain approval from Legion and/or CAS for the procedure so that Plaintiffs and Ms. Castillo could be assured the procedure would be covered under the legion policy despite the delay in seeking service.  Little was, and is, the duly authorized agent and local representative of Defendant Legion and its claims payer, CAS.  He held himself out as such and represented to Plaintiffs on numerous occasions that he was authorized to speak and act on Legion's behalf.  He also assured Plaintiffs that, as Legion's local representative, Plaintiffs could rely upon Little's statements for purposes of resolving coverage issues and other matters pertaining to the policies of insurance he sold and Legion issued.  At all times relevant to this cause of action, Legion and CAS held Little out to be their authorized agent, and never provided any indication of any limitations on Little's authority to act on Legion's and/or CAS's behalf.  Little informed the trainer that Ms. Castillo's procedure would be covered under the policy and to proceed.  Plaintiffs relied upon Little's representations and performed the procedure on Ms. Castillo.  Thereafter, when Plaintiffs submitted the Castillo claim, Legion, by and through CAS, rejected the claim, not because the procedure was not covered nor because the procedure was unnecessary, but because the services occurred beyond the 90 day time limit prescribed in the Legion

CHMPDF - www.fasika.com

policy. The representations made by Legion and/or CAS, by and through their authorized local agent,

John Little, were made to induce Plaintiffs to perform the surgical procedure on Ms. Castillo.

Plaintiffs relied to their detriment on these representations which proved to be false. The

misrepresentations were either made intentionally or with negligent disregard for their truth. As a

result of this misrepresentation, Plaintiffs have been damaged in the amount of at least $10,195.00

for which they seek relief. To the extent that Plaintiffs demonstrate that the misrepresentation was

made intentionally, Plaintiffs seek the award of punitive/exemplary damages to be determined by the

trier of fact in accordance with the limits prescribed by Texas law for punitive damages.

### Fifth Cause of Action: Violation of Texas Deceptive Trade Practices/ Texas Insurance Code Art. 21.21

Plaintiff hereby incorporates paragraphs 8-22 as if fully set forth herein, and in addition, and/or

in the alternative, would plead as follows:

27.    Defendants Legion and CAS are persons as defined by Tex. Ins. Code, art. 21.21 § (2) (a).

Plaintiffs, as the assignees of the patients/insureds/policyholders of Legion Insurance Company, are

claimants and/or beneficiaries and/or policyholders under the policies of insurance issued by Legion

to the school districts in Starr, Hidalgo, and Cameron Counties, Texas, as contemplated in 21.21 §

10.    Art. 21.21 incorporates the provisions of the Texas Deceptive Trade Practices Act into the

Insurance Code.

28.    The conduct of Defendants Legion and CAS as outlined herein above, is a direct violation

of Texas Insurance Code, art. 21.21 § 10 et seq., in that Legion and CAS have engaged in Unfair

Settlement Practices as set forth in 21.21 §10 (i), (ii), (iv), and (viii).

29.    Both CAS and Legion were served with a DTPA demand letter as required by 21.21 § 16

(e), and sixty days have elapsed since the receipt of those letters, with no offer to settle or compromise the claims in question having been submitted by Defendants CAS and/or Legion.

30.   Plaintiffs seek to recover the actual damages caused by the Defendant's conduct, which will be proven with specificity at trial, an amount equal to three times the actual damages for the intentional conduct of the Defendants in violating the provisions of article 21.21, and reasonable and necessary attorneys fees incurred in the prosecution of this action.   Plaintiffs also seek the recovery of any and all other relief that the Court might deem appropriate, including an order enjoining both CAS and Legion from these unfair settlement practices.

### Sixth Cause of Action: Violation of Texas Insurance Code Art. 21.21-2

Plaintiff hereby incorporates paragraphs 8-22 as if fully set forth herein, and in addition, and/or in the alternative would plead as follows:

30.   The practices of the Defendants, CAS and Legion, as set forth herein above, are violations of art. 21.21-2 §2 (b), and constitute Unfair Settlement Practices in the following respects:

a.   They knowingly misrepresented to claimants pertinent facts or policy provisions;

b.   Failed to acknowledge with reasonable promptness pertinent communications with respect to claims arising under polices;

c.   Based on the conduct in this case, they failed to adopt and implement reasonable standards for prompt investigation of claims;

d.   Failed to in good faith effect prompt, fair and equitable settlements of claims submitted in which liability was reasonably clear; and,

e.   Compelled Plaintiffs to institute suit to recover amounts due under policies by offering amounts substantially less than the amounts which Plaintiffs will ultimately recover.

31.  As set forth in 21.21-2 §2 (7), these violations are a deceptive trade practice, and Plaintiffs seek the recovery of damages as set forth in Subchapter E, Chapter 17, Texas Business and Commerce Code, including but not limited to, the recovery of all actual damages, an amount equal to three times actual damages for the intentional nature of Defendant CAS's and Legion's conduct, and reasonable and necessary attorney's fees.

### Seventh Cause of Action: Violation of Art. 21.55 of Texas Insurance Code

Plaintiff hereby incorporates paragraphs 8-22 as if fully set forth herein, and in addition, and/or in the alternative, would plead as follows:

32.  As set forth in paragraphs 16-18 herein above, Defendants conduct in the manner in which claims were received, investigated, adjusted, and paid, constitutes a clear violation of art 21.55 of the Texas Insurance Code.

33.  Under the provisions of art 21.55, Defendants are liable for the actual amount of the claims, an amount equal to three times the claimed amount for the intentional violation of this provision, attorneys fees, and any and all other relief under Subchapter E, Chapter 17 of the Texas Business and Commerce Code that the Court deems appropriate.

WHEREFORE PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to appear and answer herein, and that upon trial on the merits, that Plaintiffs be awarded judgment as prayed for herein above.

Respectfully submitted,

Jeff B. McDonald
SBN 13548560
Timothy E. Weitz
SBN 21117500

McDonald, Mackay & Weitz, L.L.P.
1411 West Avenue, Suite 200
Austin, Texas 78701
(512) 322-9202 Main Number
(512) 323-5071  Fax Number

Mark A. Weitz
SBN 21116500
Law Office of Mark A. Weitz
P.O. Box 9673
Austin, Texas 78766-9673
(802) 253-7413  Direct Line
(802) 253-9934  Fax Number

ATTORNEYS FOR PLAINTIFFS

FILED _11:30_ O'CLOCK _a_ M
AURORA DE LA GARZA DIST. CLERK

JAN 2 5 2000

DISTRICT COURT OF CAMERON COUNTY, TEXAS
JANIE WOLFE
DEPUTY

CAUSE NO. 2000-1-326-C

| | | |
|---|---|---|
| RIO GRANDE ORTHOPAEDIC | § | IN THE DISTRICT COURT |
| INSTITUTE, AND RIO GRANDE | § | |
| ORTHOPAEDIC INSTITUTE | § | |
| AMBULATORY SURGERY CENTER, | § | |
| LTD. | § | |
| | § | |
| VS. | § | OF CAMERON COUNTY, TEXAS |
| | § | |
| LEGION INSURANCE COMPANY, | § | |
| CLAIMS ADMINISTRATION | § | |
| SERVICES, INC., AND | § | |
| JOHN LITTLE, DBA INSURANCE | § | |
| ASSOCIATES OF THE VALLEY | § | _197th_ JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Rio Grande Orthopaedic Institute, and Rio Grande Orthopaedic Institute Ambulatory Surgery Center, LTD., and files this their Original Petition, complaining of Legion Insurance Company, Claims Administration Services, Inc., and John Little, DBA Insurance Associates of the Valley, and for causes of action would show the court as follows:

### Parties and In Personam Jurisdiction

1.  Plaintiff, Rio Grande Orthopaedic Institute (RGOI), is a domestic professional association, formed and operating under the laws of the state of Texas, and engaged in business as a surgical clinic at 400 East Dove Avenue, McAllen, Texas 78504. Rio Grande Orthopaedic Institute Ambulatory Surgery Center, LTD. (ASC), is a limited liability corporation, formed and operating under the laws of the State of Texas as a free standing, out-patient surgery center, located at 5401 C Street, McAllen, Texas 78504.

2.     Defendant, Legion Insurance Company (Legion), is an alien insurance company doing business in the State of Texas, with its principle place of business at 1 Logan Square, Suite 1400, Philadelphia, Pennsylvania 19103.  It can be served with process by serving its registered agent for service of process, CT Corporation Systems, at 350 St. Paul Street, Dallas, Texas 75201.  Legion is engaged in the business of selling insurance in the State of Texas through local representatives.  As an authorized alien insurance company, Legion has purposely availed itself of the laws and privileges of doing business in the state of Texas, and pursuant thereto, enters into contracts with Texas residents, and receives premiums for providing insurance coverage.  In this case, Legion sold and received premiums for accident policies No. AH2-133461 and No. AH2-133485 through Defendants Claims Administration Services, Inc., and John Little, to various school districts in Starr, Hidalgo, and Cameron Counties, Texas.  The policies that form the basis of this suit purport to cover student athletes for the period of August 1, 1998, through July 31, 1999, who were injured in the course of school sponsored athletic activities.  Those injured athletes in turn sought surgical services from RGOI and/or ASC, by showing proof of insurance coverage indicating they were covered under an insurance policy issued by Legion.  Having entered into contracts in the State of Texas, received premiums in the State of Texas, and breached its contracts in the State of Texas, Legion has sufficient related and unrelated minimum contacts to make it subject to the jurisdiction of the Courts of the State of Texas.  This court therefore has in personam jurisdiction over Defendant Legion.

3.     Defendant, Claims Administration Services, Inc. (CAS), is a foreign corporation licensed to conduct business in the State of Texas, with its principle place of business at P.O. Box 3968, Boca Raton, Florida 33427-3968.  Based on the listing of its registered agent in the records kept by the Texas Department of Insurance, CAS can be served with process by serving "any officer, at P.O. Box

3968, Boca Raton, Florida 33427, by Certified Mail, Return Receipt Requested. CAS holds a license issued by the Texas Department of Insurance to operate as a Third Party Administrator. It has therefore purposely availed itself of the laws and privileges of doing business in the State of Texas. It has entered into contracts with Texas residents, and/or entered into contracts with non-residents that require insurance to provide services to Texas residents. In this case, CAS acted as the independent claims paying entity for Legion in the course of paying claims under Legion policies No. AH2-133461 and No. AH2-133485. It dealt directly with the Plaintiffs and with insureds of Legion, all of which worked and lived in Cameron, Starr, and Hidalgo Counties, Texas. In exchange for the claims paying services it provides, CAS receives a fee, paid for in part from the premiums derived from Texas residents. As such, CAS has sufficient related and unrelated minimum contacts to make it subject to the jurisdiction of Texas courts, and this Court therefore has in personam jurisdiction over Defendant, CAS.

4.    Defendant, John Little, d.b.a. Insurance Associates of the Valley (Little), is an individual natural person, residing and doing business in Harlingen, Cameron County, Texas, with his offices at 521 South 77 Sunshine Strip, Harlingen, Texas 78550. Defendant Little can be served by delivery of citation, with a true and correct copy of this petition, at his office address listed above. This court therefore has in personam jurisdiction over Defendant Little.

**Discovery**

5.    Plaintiff intends to conduct discovery pursuant to Texas Rule of Civil Procedure 190.3.

**Venue**

6.    Cameron County is the county of residence of John Little, and is one of the counties where the insurance policies that are the subject mater of this suit were sold and in force. Cameron County

is the county where the cause of action arose at least in part, and is the county in Texas where both Defendants Legion and CAS did business for purposes of the policies in question. Therefore, pursuant to Texas Civil Practice and Remedies Code § 15.002, venue is proper in Cameron County, Texas.

### Subject Matter Jurisdiction

7.    The amount in controversy involves unpaid surgical claims that total in excess of $200,000.00, and that arise out of a contractual obligation on the part of Defendant Legion to pay the medical provider claims of insured persons under the contracts. This Court therefore has subject matter jurisdiction of this case.

### Statement of Facts

8.    In July of 1998, Legion Insurance Company Policy Numbers AH2-133461 and AH2-133485, were sold by Defendants Little and CAS to various school districts throughout the Rio Grande Valley. The policy, although carrying a different number for each school district, was an "Accident Only Policy." The policy provided coverage for sports related injuries to any "Covered Person" while he or she was covered as a student or member of the insured school district.

9.    The representations made by Legion, CAS, and Little, were that the policy would pay for surgical services provided to covered persons of the insured school districts, to the extent that the fees charged by the medical provider were:

a.    The usual fee charged by the provider for the service or supply given;

b.    The average fee charged for the service or supply in the locality in which the service or supply is received (emphasis added); and

c.    Is reasonable in relation to the services or supply given and the severity of the condition.

These representations were not only made in writing, they were made to the insureds themselves, who then conveyed them to Plaintiffs, and they were also made by Defendant Little directly to the Plaintiffs whenever questions arose on issues of coverage over the course of the policy period.

10.   The various accident polices went into effect in August 1998, and Plaintiffs began seeing patients almost immediately.  RGOI and ASC specialize in advanced orthoscopic knee and shoulder surgeries.  The clinic and free standing surgical facility represent one of, if not the most, technically advanced surgical facilities in the Rio Grande Valley, which enables it to perform difficult and technically advanced surgical procedures on an out-patient basis, that frequently are done on an in-patient basis at a hospital.  The savings from such procedures include reduced costs from overnight hospital stays and costly rehabilitative care.

11.   When a patient comes into RGOI and/or ASC, he or she provides proof of insurance, usually in the form of a claim form.  These forms and other proof were routinely furnished by Defendants Legion, CAS and/or Little, for the sole purpose of inducing Plaintiffs and other similarly situated medical providers to provide medical services to insured patents.  The cards are themselves a representation that the provider will be paid by the patent's insurance for the services provided under the terms of the policy.

12.   For almost 10 months, from August 1998 until June 1999, Legion and CAS paid claims in a timely manner, and in amounts that generally matched the billed charges, or came within 80-85% of the billed charges.  However, some claims dating back as far as November of 1998 remained not only unpaid, but unaddressed in the sense that CAS and/or Legion did not state whether the claim had been rejected, denied, or approved.

13.   In August 1999, the Legion polices expired, and from information and belief, it is Plaintiffs'

understanding that Legion no longer wrote the accident polices for school districts in the Rio Grande Valley. Under the policy provisions, insured persons under the policy could still receive services that the Legion polices paid for, if the injury was incurred and treated during the policy period, and the additional service after the expiration of the policy nevertheless related to that injury. However, for the most part, Legion's exposure under the polices in effect from August 1998 to August 1999 has all but ended.

14.   By August 1999, Legion and/or CAS's claims paying practices had become so deficient that Plaintiffs began filing complaints with the Texas Department of Insurance, and even went so far as to agree to the submission of five clams to a claims auditing service suggested by Legion and/or CAS. The claims auditor, A&G Health Plans, negotiated a $1,000.00 discount per claim for the following five claims:

| Patient | Date of Service | Charge | Discount |
|---|---|---|---|
| Jennifer Castillo | 5/26/99 | $10,195 | $1,000 |
| Roberto Gonzalez | 11/03/98 | $5,225 | $1,000 |
| Susie Marroquin | 1/16/99 | $7,695 | $1,000 |
| Sarah Jiminez | 5/15/99 | $12,670 | $1,000 |
| Silbestie Gutierrez | 5/5/99 | $17,045 | $1,000 |

These five claims were negotiated and finalized on August 6, 1999. Still, Legion and/or CAS refused to pay the claims. With regard to one claim, that of Jennifer Castillo, Legion and/or CAS out right denied the claim in December 1999, alleging the expense/service was rendered 105 days from the date of injury, and was not within the 90 day period for incurring the service. This claim was specifically taken to Legion's local agent, John Little, by a representative of the insured school district, and Little specifically instructed that representative to have William D. Snyder, M.D., of RGOI and ASC, treat the patient and that the services would be covered.

CSXPDF - www.fesko.com

15.  As of October 6, 1999, there were over 100 outstanding claims under the Legion polices, some dating back to 1998, but most well over 120 days old, that had not been paid, or even addressed.  By December 1999, every outstanding claim of Legion's that had been incurred at RGOI or ASC was over four months old.  Most had not even been addressed in writing by Legion in any fashion.

16.  Texas has very clear requirements for the manner in which claims must be handled.  Article 21.55 of the Texas Insurance Code provides specific provisions for claims paying, whether by an in-house claims payer, or its third party administrator.  Under 21.55, all claims must be paid no later than 60 days from the receipt of all <u>reasonably</u> (emphasis added) requested material.  The claims payer has 15 days from receipt of the claim to acknowledge the claim, start its investigation, and request any items, statements, or forms, which are reasonably required.  From that point, the claims payer has 15 more days to either reject or pay the claim.  If the claim is to be paid in part, the payment must come within five days of such notification.  Any extension of these deadlines must be made in writing, and will allow the claims payer to extend for up to 45 days, but the reason for the extension must be specifically set forth.

17.  Legion and/or CAS's claims paying practices with regard to Plaintiffs' claims have been a clear violation of the mandates in 21.55.  Some claims went months before even being acknowledged.  Requests for information came only after Plaintiffs had filed complaints with the Texas Department of Insurance, and/or by-passed CAS and sought relief directly from Legion.  In many instances, the requests for information appear to have been mere guises for further delay, and representations that information was being requested of insureds or patients proved to be misrepresentations.  At one point, a person contacted RGOI and indicated that he was a retired investigator that had been retained

<u>Plaintiff's Original Petition</u>                                                     7

by CAS to investigate RGOI. He indicated he wanted to come to RGOI's offices. RGOI agreed to allow him to come if he could produce authorization from both CAS and Legion that he was authorized to come on their behalf, and could further produce credentials proving he was in fact a licensed or retired licensed investigator. He never contacted RGOI or ASC again. When this incident was reported directly to Legion's legal counsel in Philadelphia, Debra James Vance, neither she nor anyone else she contacted purported to have any knowledge of the investigator. This attempt to investigate RGOI came after RGOI began to pressure CAS to pay its claims, and filed complaints with the Texas Department of Insurance. None of these delays excuse CAS and/or Legion from violating the statutory mandates with regard to the payment of claims. Art. 21.55 provides for civil damages and penalties for failure to pay, as well as interest at the rate of 18 percent per year.

18.   Only after Plaintiffs began putting pressure directly on Legion in November of 1999 did CAS begin to start addressing claims. At that point, Legion and/or CAS began to adjust Plaintiffs' claims in a manner that was in direct violation of its own policy provisions. There are no PPO discounts or network agreements in place between Plaintiffs and Defendants Legion or CAS. The adjustment and payment of claims is controlled by the language of the policies themselves. These are not Medicare claims, nor are they subject to fee schedules set for Medicare or Medicaid. CAS and Legion's sole discretion in adjusting claims is contained in the policy. On page 4 of the policy, under SCOPE OF COVERAGE, the policy states that Legion will provide the benefits described in the policy to all covered persons who suffer a covered loss which:

(1)   is set forth in the Description of Benefits Provisions; and

(2)   results directly and independently of all other causes, from bodily injury which is suffered in an accident; and:

(3)  occurs while the person is a Covered Person under the Policy; and

(4)  is within the scope of the description of hazards provisions.

19.  The Legion policy specifically states on Page 11 that the benefits due under the policy for a loss, other than a loss for which the policy provides installments, will be paid immediately upon receipt of due written proof of such loss.  As set forth herein above, Legion and CAS did not comply with this provision.  However, when Legion and CAS began to pay claims again after stopping, they again violated the terms of the policy, the same representations therein, and the representations made by their agent John Little.  Once it is determined that the loss is covered, and the person is covered, Legion's and CAS's discretion is governed by its own policy, and requires it to pay "Usual and Customary" fees.  "Usual and Customary" is defined as:

(1)  The usual fee charged by the provider for the service or supply given;

(2)  The average fee charged for the service or supply in the locality in which the service or supply is received (emphasis added); and

(3)  Is reasonable in relation to the services or supply given and the severity of the condition.

20.  As CAS began to pay claims, it became clear that it and Legion were violating the Legion policy as to the manner in which claims were adjusted.  CAS's Explanation of Benefits (EOB), demonstrated reductions between 100% and 70% of billed charges.  These reductions are based on the following global statements in the EOB's:

"The allowance is based on the St. Anthony's Guide to Ambulatory Surgery center payment Groups;"

"The usual and reasonable calculation is based upon the St. Anthony's Guide to Ambulatory Surgery center payment guidelines;"

"The disallowed amount ...represents the reduction of approved charges to USUAL, REASONABLE AND CUSTOMARY CHARGES BENEFIT LIMITED TO REASONABLE AND CUSTOMARY FEES ONLY."

21.    First of all, The St. Anthony's Guide "Group" rates are completely inapplicable to these charges. It is clear to Plaintiffs that CAS and Legion are using Medicare "Grouper" (Group) rates to adjust claims, and that the rates are not appropriate in this case. Second, the standard established within the policy is "Usual and Customary," not "Reasonable and Customary." The only place where "reasonable" appears in the policy is in reference to the fee being reasonable "in relation to the service or supply given and the severity of the condition." It is clear that CAS and Legion are not even investigating this element of the fees. Instead, they are taking the fees, and looking at the generalized procedure performed, i.e., a knee, a shoulder, etc., and applying a Medicare "Group" rate to the charges. This entire procedure is a total breach of Legion's policy, and constitutes a material misrepresentation by all three defendants as to what benefits would be paid under the policies.

22.    Prior to filing this lawsuit, counsel for Plaintiffs served both CAS and Legion with a notice letter under the provisions of the Texas Deceptive Trade Practices Act. Sixty days has elapsed since the service of that letter on both CAS and Legion. During the period of time when the sixty day period was running, RGOI and ASC continued to attempt to resolve this claims paying breach by having its counsel contact Legion directly. Upon doing so, it became apparent through conversations with Legion's in-house counsel, Debra James Vance, that Legion had no control over its claims paying service, CAS. It did not know there was a problem, it did not know the amount or number of unpaid claims, nor that they had been unpaid for the period of time that they have existed. In short, Legion is not only responsible for CAS's claims paying deficiencies, but is itself guilty of gross

negligence in the selection and oversight of its claims paying service.

### First Cause of Action: Breach of Contract: Count I

Plaintiff hereby incorporates paragraphs 8-22 as if fully set forth herein, and in addition, would plead as follows:

23. Plaintiffs were intended third party beneficiaries to the insurance contracts issued by Legion insurance company, and negotiated by CAS and/or Defendant John Little, and/or in the alternative, Plaintiffs are the assignees of the contractual rights held by the patients of the insured school districts. When a patient comes to Plaintiffs for care and submits proof of insurance, that patient signs a form which assigns to Plaintiffs all rights to proceeds from the insurance carrier that provides coverage for the patient. By virtue of that assignment, Plaintiffs inure to the benefits of the insurance contract to the extent that they are entitled to proceeds for medical services provided. In every instance that gives rise to a claim by Plaintiffs against Defendants for the payment of medical services, Plaintiffs performed all of the services in a competent and professional manner, as set forth on the bill for charges submitted to Defendant Legion though Defendant CAS. Plaintiffs submitted all requested information as required by the policies, and otherwise performed all conditions precedent to the payment of insurance proceeds for the services performed on patients covered by Legion's insurance policy. By failing to pay claims in a timely manner, and by further failing to pay claims under the terms of the policy, Defendants Legion, CAS, and Little, are in breach of the agreement signed by Legion Insurance Company and negotiated by Defendants CAS and/or Little. Plaintiffs pray that upon trial on the merits, that it be awarded damages for breach of contract in an amount to be proven at trial that represents the amounts improperly deducted from the Plaintiffs claims, and/or improperly denied, and attorneys fees as provided for in Texas Civil Practice and Remedies Code §38.001.

Plaintiffs would further aver that the conduct of Defendants in failing to pay and/or even respond to the Plaintiffs' claims was so outrageous that it constitutes the bad faith payment of claims, which entitles the Plaintiffs to punitive damages as provided for by Texas Law.

## Second Cause of Action: Breach of Contract: Count II

Plaintiff hereby incorporates paragraphs 8-22 as if fully set forth herein, and in addition, or in the alternative, would plead as follows:

24. When Defendants CAS and/or Legion allowed A&G Health to negotiate a settlement of the five claims set out in paragraph 14 herein above, they authorized A&G to bind it to the terms of that agreement. The five contracts had all the requisite elements: an offer by A&G to negotiate a reduced settlement and an acceptance of that offer by Plaintiffs. The consideration was mutual in that Plaintiffs agreed to accept a reduced amount for its charges, and Defendants, by and through their authorized agent, agreed to pay the claims as negotiated. The agreement was reached on August 6, 1999, as to all five claims. Thereafter, CAS and/or Legion completely refused to pay the negotiated amounts. When CAS and Legion finally did adjust these claims, it is clear from the face of the EOBs that they completely ignored the contractually negotiated settlement made in August, 1999. Furthermore, they adjusted the claims in the same improper manner as alleged in paragraphs 20-22 herein above. As a direct result of this conduct, Defendants CAS and Legion are in breach of contract. Plaintiff seeks recovery of damages in the amount of $47,830 on these five claims alone, plus reasonable attorney's fees as provided for in Texas Civil Practice and Remedies Code §38.001.

## Third Cause of Action: Negligent and/or Intentional Misrepresentation: Count I

Plaintiff hereby incorporates paragraphs 8-22 as if fully set forth herein, and in addition, and/or

in the alternative, would plead as follows:

25.  Defendants Legion, CAS, and/or John Little, made certain representations through conduct, orally and in writing, to the Plaintiffs, as to what benefits were provided under the insurance polices sold by John Little and/or CAS, that Legion issued to school districts in Cameron, Hidalgo, and Starr counties. Those representations included what fees would be payable under the policy, the manner in which the fees would be adjusted, and the time period in which claims would be paid.  Those representations were made either intentionally, or negligently, with the intent of the Defendants that Plaintiffs rely upon the representations.  Plaintiffs did in fact rely upon those representations by agreeing to, and thereafter performing, the requested medical services and procedures.  The representations as to the claims that make up the subject matter of this suit were false.  The Defendants either knew they were false at the time they were made, or made them in such a negligent manner that they failed to verify the truth of the representations.  Plaintiffs have been damaged by the representations by virtue of having performed medical procedures and rendered medical services for patient/insureds of Legion that Defendants now refuse to pay for.  Plaintiffs seek the recovery of damages in an amount to be proven at trial that represents the unpaid and/or underpaid claims submitted by Plaintiffs to CAS and/or Legion.  It is Plaintiff's contention that to the extent that these misrepresentations were intentional, they constitute grounds for the award of punitive damages in an amount to be determined by the trier of fact within the parameters provided by Texas law for punitive or exemplary damages.

### Fourth Cause of Action: Intentional and/or Negligent Misrepresentation:
### Count II

Plaintiff hereby incorporates paragraphs 8-22 as if fully set forth herein, and in addition, or in the

alternative, would plead as follows:

26.   On May 26, 1999, Plaintiffs performed surgery on Jennifer Castillo, a patient/insured of Legion Insurance company.   When Ms. Castillo came to the Plaintiff, it was apparent that she had incurred her injury over 90 days prior.   Plaintiffs and Ms. Castillo were concerned that the Legion policy under which she was covered would not pay for the contemplated surgical procedure. Plaintiffs contacted an athletic trainer who knew Ms. Castillo and understood both her condition and the circumstances of the delay in her seeking medical services.   That trainer contacted Defendant John Little, explained the circumstances, and requested that Mr. Little seek and obtain approval from Legion and/or CAS for the procedure so that Plaintiffs and Ms. Castillo could be assured the procedure would be covered under the legion policy despite the delay in seeking service.   Little was, and is, the duly authorized agent and local representative of Defendant Legion and its claims payer, CAS.   He held himself out as such and represented to Plaintiffs on numerous occasions that he was authorized to speak and act on Legion's behalf.   He also assured Plaintiffs that, as Legion's local representative, Plaintiffs could rely upon Little's statements for purposes of resolving coverage issues and other matters pertaining to the policies of insurance he sold and Legion issued.   At all times relevant to this cause of action, Legion and CAS held Little out to be their authorized agent, and never provided any indication of any limitations on Little's authority to act on Legion's and/or CAS's behalf.   Little informed the trainer that Ms. Castillo's procedure would be covered under the policy and to proceed.   Plaintiffs relied upon Little's representations and performed the procedure on Ms. Castillo.   Thereafter, when Plaintiffs submitted the Castillo claim, Legion, by and through CAS, rejected the claim, not because the procedure was not covered nor because the procedure was unnecessary, but because the services occurred beyond the 90 day time limit prescribed in the Legion

31.  As set forth in 21.21-2 §2 (7), these violations are a deceptive trade practice, and Plaintiffs seek the recovery of damages as set forth in Subchapter E, Chapter 17, Texas Business and Commerce Code, including but not limited to, the recovery of all actual damages, an amount equal to three times actual damages for the intentional nature of Defendant CAS's and Legion's conduct, and reasonable and necessary attorney's fees.

### Seventh Cause of Action: Violation of Art. 21.55 of Texas Insurance Code

Plaintiff hereby incorporates paragraphs 8-22 as if fully set forth herein, and in addition, and/or in the alternative, would plead as follows:

32.  As set forth in paragraphs 16-18 herein above, Defendants conduct in the manner in which claims were received, investigated, adjusted, and paid, constitutes a clear violation of art 21.55 of the Texas Insurance Code.

33.  Under the provisions of art 21.55, Defendants are liable for the actual amount of the claims, an amount equal to three times the claimed amount for the intentional violation of this provision, attorneys fees, and any and all other relief under Subchapter E, Chapter 17 of the Texas Business and Commerce Code that the Court deems appropriate.

WHEREFORE PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to appear and answer herein, and that upon trial on the merits, that Plaintiffs be awarded judgment as prayed for herein above.

Respectfully submitted,

Jeff B. McDonald
SBN 13548560
Timothy E. Weitz
SBN 21117500

McDonald, Mackay & Weitz, L.L.P.
1411 West Avenue, Suite 200
Austin, Texas 78701
(512) 322-9202 Main Number
(512) 323-5071 Fax Number

Mark A. Weitz
SBN 21116500
Law Office of Mark A. Weitz
P.O. Box 9673
Austin, Texas 78766-9673
(802) 253-7413 Direct Line
(802) 253-9934 Fax Number

ATTORNEYS FOR PLAINTIFFS

<u>**Plaintiff's Original Petition**</u>                                                      18



# CT System

**Service of Process Transmittal Form**
Dallas, Texas

**01/31/2000**

Courier   Via Federal Express (2nd Day)

A & H

TO: Andrew Walsh VP & Gen. Csl.
Legion Insurance Company
One Logan Square
Suite 1400
Philadelphia, PA  19103-0000

RE:   **PROCESS SERVED IN TEXAS**

FOR      Legion Insurance Company Domestic State: Pa

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

**1. TITLE OF ACTION:**            Rio Grande Orthopaedic Institute, et al  vs Legion Insurance Company, et al

**2. DOCUMENT(S) SERVED:**      Citation, Plaintiff's Original Petition

**3. COURT:**                  197th Judicial District Court, Cameron County, Texas
                        Case Number 2000-01-326-C

**4. NATURE OF ACTION:**        Alleging breach of contract, failure to pay claims in a timely manner, failure to pay claims under
                        the insurance policy, etc.

**5. ON WHOM PROCESS WAS SERVED:**      CT Corporation System, Dallas, Texas

**6. DATE AND HOUR OF SERVICE:**        By Certified mail on 01/31/2000 with Postmarked Date 01/27/2000

**7. APPEARANCE OR ANSWER DUE:**       10:00 a.m. Monday next after the expiration of 20 days

**8. ATTORNEY(S):**        Jeff B McDonald
                  1411 West Avenue, Suite 200
                  Austin, Tx.  78701

**9. REMARKS:**        According to the records of our office our services have been discontinued in this state.

FEB - 2 ...

SIGNED      CT Corporation System

PER        Beatrice Casarez
ADDRESS    350 North St. Paul Street
           Dallas, TX  75201
           SOP WS 0002783771

Information contained on this transmittal form is recorded for C T Corporation System's record keeping purposes only and to permit quick reference for
the recipient. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information that
can be obtained from the documents themselves. The recipient is responsible for interpreting the documents and for taking the appropriate action.

Citation for Person. Service  - BY CERTIFIED MAIL     _it. Seq. # 5.003.01

No. 2000-01-000326-C            COPY 

T H E   S T A T E   O F   T E X A S

NOTICE TO DEFENDANT:  You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.

TO: LEGION INSURANCE COMPANY
CT CORPORATION SYSTEMS
350 ST. PAUL ST.
DALLAS, TEXAS 75201

the _____ DEFENDANT _____ , GREETING:

You are commanded to appear by filing a written answer to the

PLAINTIFFS' ORIGINAL PETITION

at or before 10:00 o'clock a.m. of the Monday next after the expiration of 20 days after the date of service of this citation before the Honorable District Court 197th Judicial District of Cameron County, Texas at the Courthouse of said county in Brownsville, Texas.  Said _____ PETITION _____ was filed on JANUARY 25, 2000 .  A copy of same accompanies this citation.

The file number of said suit being No. 2000-01-000326-C.

The style of the case is:

RIO GRANDE ORTHOPAEDIC INSTITUTE., ET AL.
VS.
LEGION INSURANCE COMPANY., ET AL.

Said petition was filed in said court by _____ JEFF B. MCDONALD _____
(Attorney for _____ PLAINTIFF _____ ), whose address is
1411 WEST AVENUE,SUITE 200 AUSTIN, TEXAS  78701                    .

The nature of the demand is fully shown by a true and correct copy of the Petition accompanying this citation and made a part hereof.

The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

Issued and given under my hand and seal of said Court at Brownsville, Texas, this the 25th day of JANUARY , A.D. 2000 .

AURORA DE LA GARZA , DISTRICT CLERK
Cameron County, Texas
974 E. Harrison St.
Brownsville, Texas 78521

By: _____ Janie Wolfe _____ , Deputy

| ATTACH RETURN F   IPTS WITH<br>ADDRESSEE'S SIGNATURE | | CERTIFICATE `F DELIVERY OF MAIL |
|---|---|---|

**CERTIFICATE `F DELIVERY OF MAIL**

| ATTACH RETURN F   IPTS WITH ADDRESSEE'S SIGNATURE |
|---|

Rule 106 (a)(2):  The citation shall be served by mailing to the defendant by Certified Mail, Return Receipt Requested, a true copy of the citation.

Sec. 17.027, Rules of Civil Practice and Remedies Code, if not prepared by Clerk of Court.

| NAME OF PREPARER | TITLE |
|---|---|

| ADDRESS |
|---|

| CITY | STATE | ZIP |
|---|---|---|

I hereby certify that on the 25th of

__JANUARY__  __2000__,  I mailed to

_____LEGION INSURANCE COMPANY_____

by registered mail or certified mail, with delivery restricted to addressee only, return receipt requested, a true copy of this citation with a copy of the petition attached hereto.

CERTIFIED MAIL NO.   __P214898066__
RETURN RECEIPT REQUESTED
DELIVER TO ADDRESSEE ONLY

____AURORA DE LA GARZA____, District Clerk
Cameron County, Texas

By:_____, Deputy

Citation for Personal Service - BY CERTIFIED MAIL    Lit. Seq. # 5.003.01

No. 2000-01-000326-C          COPY 

T H E   S T A T E   O F   T E X A S

NOTICE TO DEFENDANT: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.

TO: LEGION INSURANCE COMPANY
    CT CORPORATION SYSTEMS
    350 ST. PAUL ST.
    DALLAS, TEXAS 75201

the _____ DEFENDANT _____, GREETING:

    You are commanded to appear by filing a written answer to the

PLAINTIFFS' ORIGINAL PETITION

at or before 10:00 o'clock a.m. of the Monday next after the expiration of 20 days after the date of service of this citation before the Honorable District Court 197th Judicial District of Cameron County, Texas at the Courthouse of said county in Brownsville, Texas. Said _____ PETITION _____ was filed on JANUARY 25, 2000 . A copy of same accompanies this citation.

The file number of said suit being No. 2000-01-000326-C.

The style of the case is:

    RIO GRANDE ORTHOPAEDIC INSTITUTE., ET AL.
                        VS.
    LEGION INSURANCE COMPANY., ET AL.

Said petition was filed in said court by _____ JEFF B. MCDONALD _____ (Attorney for _____ PLAINTIFF _____), whose address is 1411 WEST AVENUE,SUITE 200 AUSTIN, TEXAS  78701 .

    The nature of the demand is fully shown by a true and correct copy of the Petition accompanying this citation and made a part hereof.

    The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

    Issued and given under my hand and seal of said Court at Brownsville, Texas, this the 25th day of JANUARY , A.D. 2000.

                        AURORA DE LA GARZA _____, DISTRICT CLERK
                        Cameron County, Texas
                        974 E. Harrison St.
                        Brownsville, Texas 78521

                        By: _____ Janie Wolfe _____, Deputy

| ATTACH RETURN ⸱ EIPTS WITH<br>ADDRESSEE'S SIGNATURE |  |
|---|---|

Rule 106 (a)(2): The citation
shall be served by mailing to
the defendant by Certified Mail,
Return Receipt Requested, a true
copy of the citation.

Sec. 17.027, Rules of Civil
Practice and Remedies Code, if
not prepared by Clerk of Court.

| NAME OF PREPARER | TITLE |
|---|---|
| ADDRESS |  |
| CITY | STATE | ZIP |

I hereby certify that on the <u>25th</u> of

<u>JANUARY</u>  <u>2000</u>,  I mailed to

<u>LEGION INSURANCE COMPANY</u>

by registered mail or certified mail, with
delivery restricted to addressee only,
return receipt requested, a true copy of
this citation with a copy of the petition
attached hereto.

CERTIFIED MAIL NO.  <u>P214898066</u>
RETURN RECEIPT REQUESTED
DELIVER TO ADDRESSEE ONLY

<u>AURORA DE LA GARZA</u> , District Clerk
Cameron County, Texas

By: _____ , Deputy



# CT System

**Service of Process Transmittal Form**

Dallas, Texas

**01/31/2000**

Courier   Via Federal Express (2nd Day)

A & H

TO:  Andrew Walsh VP & Gen. Csl.
     Legion Insurance Company
     One Logan Square
     Suite 1400
     Philadelphia, PA  19103-0000

RE:   **PROCESS SERVED IN TEXAS**

FOR        Legion Insurance Company Domestic State: Pa

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

| | |
|---|---|
| **1. TITLE OF ACTION:** | Rio Grande Orthopaedic Institute, et al  vs Legion Insurance Company, et al |
| **2. DOCUMENT(S) SERVED:** | Citation, Plaintiff's Original Petition |
| **3. COURT:** | 197th Judicial District Court, Cameron County, Texas<br>Case Number 2000-01-326-C |
| **4. NATURE OF ACTION:** | Alleging breach of contract, failure to pay claims in a timely manner, failure to pay claims under the insurance policy, etc. |
| **5. ON WHOM PROCESS WAS SERVED:** | CT Corporation System, Dallas, Texas |
| **6. DATE AND HOUR OF SERVICE:** | By Certified mail on 01/31/2000 with Postmarked Date 01/27/2000 |
| **7. APPEARANCE OR ANSWER DUE:** | 10:00 a.m. Monday next after the expiration of 20 days |
| **8. ATTORNEY(S):** | Jeff B McDonald<br>1411 West Avenue, Suite 200<br>Austin, Tx.  78701 |
| **9. REMARKS:** | According to the records of our office our services have been discontinued in this state. |



| | |
|---|---|
| **SIGNED** | CT Corporation System |
| **PER** | Beatrice Casarez |
| **ADDRESS** | 350 North St. Paul Street<br>Dallas, TX  75201<br>SOP WS 0002783771 |

Information contained on this transmittal form is recorded for C T Corporation System's record keeping purposes only and to permit quick reference for the recipient. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information that can be obtained from the documents themselves. The recipient is responsible for interpreting the documents and for taking the appropriate action.

Citation for Personal Service — BY CERTIFIED MAIL     Lit. Seq. # 5.003.01

No. 2000-01-000326-C     

T H E   S T A T E   O F   T E X A S

     NOTICE TO DEFENDANT: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.

TO: LEGION INSURANCE COMPANY
    CT CORPORATION SYSTEMS
    350 ST. PAUL ST.
    DALLAS, TEXAS 75201

the     DEFENDANT    , GREETING:

    You are commanded to appear by filing a written answer to the

PLAINTIFFS' ORIGINAL PETITION

at or before 10:00 o'clock a.m. of the Monday next after the expiration of 20 days after the date of service of this citation before the Honorable District Court 197th Judicial District of Cameron County, Texas at the Courthouse of said county in Brownsville, Texas. Said     PETITION     was filed on JANUARY 25, 2000 . A copy of same accompanies this citation.

The file number of said suit being No. 2000-01-000326-C.

The style of the case is:

    RIO GRANDE ORTHOPAEDIC INSTITUTE., ET AL.
                    VS.
    LEGION INSURANCE COMPANY., ET AL.

Said petition was filed in said court by     JEFF B. MCDONALD (Attorney for     PLAINTIFF     ), whose address is 1411 WEST AVENUE, SUITE 200 AUSTIN, TEXAS 78701 .

    The nature of the demand is fully shown by a true and correct copy of the Petition accompanying this citation and made a part hereof.

    The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

    Issued and given under my hand and seal of said Court at Brownsville, Texas, this the 25th day of JANUARY , A.D. 2000.

                  AURORA DE LA GARZA    , DISTRICT CLERK
                  Cameron County, Texas
                  974 E. Harrison St.
                  Brownsville, Texas 78521

                  By: Janie Wolfe    , Deputy

| ATTACH RETURN RECEIPTS WITH ADDRESSEE'S SIGNATURE |
|---|

Rule 106 (a)(2): **The citation shall be served by mailing to the defendant by Certified Mail, Return Receipt Requested, a true copy of the citation.**

Sec. 17.027, Rules of Civil Practice and Remedies Code, if not prepared by Clerk of Court.

NAME OF PREPARER          TITLE

ADDRESS

CITY          STATE          ZIP

CERTIFICATE OF DELIVERY OF MAIL

I hereby certify that on the <u>25th</u> of <u>JANUARY</u> <u>2000</u>, I mailed to

<u>LEGION INSURANCE COMPANY</u>

by registered mail or certified mail, with delivery restricted to addressee only, return receipt requested, a true copy of this citation with a copy of the petition attached hereto.

CERTIFIED MAIL NO. <u>P214898066</u>
RETURN RECEIPT REQUESTED
DELIVER TO ADDRESSEE ONLY

<u>AURORA DE LA GARZA</u>, District Clerk
Cameron County, Texas

By:_____, Deputy



## CT System

**Service of Process Transmittal Form**
Dallas, Texas

**01/31/2000**

A & H

Courier   Via Federal Express (2nd Day)

TO:   Andrew Walsh VP & Gen. Csl
Legion Insurance Company
One Logan Square
Suite 1400
Philadelphia, PA  19103-0000

RE:   **PROCESS SERVED IN TEXAS**

FOR        Legion Insurance Company Domestic State: Pa

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

**1. TITLE OF ACTION:**        Rio Grande Orthopaedic Institute, et al  vs Legion Insurance Company, et al

**2. DOCUMENT(S) SERVED:**        Citation, Plaintiff's Original Petition

**3. COURT:**        197th Judicial District Court, Cameron County, Texas
Case Number 2000-01-326-C

**4. NATURE OF ACTION:**        Alleging breach of contract, failure to pay claims in a timely manner, failure to pay claims under
the insurance policy, etc.

**5. ON WHOM PROCESS WAS SERVED:**        CT Corporation System, Dallas, Texas

**6. DATE AND HOUR OF SERVICE:**        By Certified mail on 01/31/2000 with Postmarked Date 01/27/2000

**7. APPEARANCE OR ANSWER DUE:**        10:00 a.m. Monday next after the expiration of 20 days

**8. ATTORNEY(S):**        Jeff B McDonald
1411 West Avenue, Suite 200
Austin, Tx.  78701

**9. REMARKS:**        According to the records of our office our services have been discontinued in this state.



**SIGNED**   CT Corporation System

**PER**        Beatrice Casarez
**ADDRESS**   350 North St. Paul Street
Dallas, TX  75201
SOP WS 0002783771

Information contained on this transmittal form  is  recorded  for  C T Corporation  System's record  keeping  purposes only and to permit quick reference for
the recipient. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information that
can be obtained from the documents themselves. The  recipient is responsible for interpreting the documents and for taking the appropriate action.

Citation for Personal Service · BY CERTIFIED MAIL   Lit. Seq. # S.004.01

No. 2000-01-000326-C

THE STATE OF TEXAS **ORIGINAL**

NOTICE TO DEFENDANT:  You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.

TO: CLAIMS ADMINISTRATION SERVICES, INC.
    ANY OFFICER OF CLAIMS
    ADMINISTRATION SERVICES, INC.
    P.O. BOX 3968
    BOCA RATON, FLORIDA 33427

the        DEFENDANT        , GREETING:

You are commanded to appear by filing a written answer to the

PLAINTIFFS' ORIGINAL PETITION

at or before 10:00 o'clock a.m. of the Monday next after the expiration of 20 days after the date of service of this citation before the Honorable District Court 197th Judicial District of Cameron County, Texas at the Courthouse of said county in Brownsville, Texas.  Said        PETITION        was filed on _____.  A copy of same accompanies this citation.

The file number of said suit being No. 2000-01-000326-C.

The style of the case is:

RIO GRANDE ORTHOPAEDIC INSTITUTE., ET AL.
VS.
LEGION INSURANCE COMPANY., ET AL.

Said petition was filed in said court by _____ JEFF B. MCDONALD _____ (Attorney for        PLAINTIFF        ), whose address is 1411 WEST AVENUE,SUITE 200 AUSTIN, TEXAS  78701                          .

The nature of the demand is fully shown by a true and correct copy of the Petition accompanying this citation and made a part hereof.

The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

Issued and given under my hand and seal of said Court at Brownsville, Texas, this the 25th day of JANUARY , A.D. 2000.

        AURORA DE LA GARZA        , DISTRICT CLERK
Cameron County, Texas
974 E. Harrison St.
Brownsville, Texas 78521

By: _____ , Deputy

**P 214 898 067**

US Postal Service
**Receipt for Certified Mail**
No Insurance Coverage Provided.
Do not use for International Mail (See reverse)

| | |
|---|---|
| Sent to CLAIMS ADMINS SERVICE, INC. | |
| P.O. BOX 3968 | |
| Post Office, State & ZIP Code BOCA RATON, FLORIDA 33427 | |
| Postage | $ |
| Certified Fee | |
| Special Delivery Fee | |
| Restricted Delivery Fee | |
| Return Receipt Showing to Whom & Date Delivered | |
| Return Receipt Showing to Whom, Date & Addressee's Address | |
| TOTAL Postage & Fees | $ |
| Postmark or Date | |

CITATION ISSUED: 01-25-00
2000-01-326-C

PS Form 3800, April 1995

---

TH

ion
to
Mail,
true

if
art.

TITLE

ZIP

---

CERTIFICATE OF DELIVERY OF MAIL

I hereby certify that on the 25th of
JANUARY 2000, I mailed to
CLAIMS ADMINISTRATION SERVICES, INC.
by registered mail or certified mail, with
delivery restricted to addressee only,
return receipt requested, a true copy of
this citation with a copy of the petition
attached hereto.

CERTIFIED MAIL NO. P214898067
RETURN RECEIPT REQUESTED
DELIVER TO ADDRESSEE ONLY

AURORA DE LA GARZA , District Clerk
Cameron County, Texas

By: _Junie Wolfe_ , Deputy



Citation for Personal Service  - GENERAL       Lit. Seq. # 5.005.01/

|-2

No. 2000-01-000326-C     **ORIGINAL**

## T H E   S T A T E   O F   T E X A S

NOTICE TO DEFENDANT: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.

TO: JOHN LITTLE
     521 SOUTH 77 SUNSHINE STRIP
     HARLINGEN, TEXAS 78550

the      DEFENDANT     , GREETING:

You are commanded to appear by filing a written answer to the

PLAINTIFFS' ORIGINAL PETITION

at or before 10:00 o'clock a.m. of the Monday next after the expiration of 20 days after the date of service of this citation before the Honorable District Court 197th Judicial District of Cameron County, Texas at the Courthouse of said county in Brownsville, Texas. Said      PETITION      was filed on JANUARY 25, 2000 . A copy of same accompanies this citation.

The file number of said suit being No. 2000-01-000326-C.

The style of the case is:

RIO GRANDE ORTHOPAEDIC INSTITUTE., ET AL.
VS.
LEGION INSURANCE COMPANY., ET AL.

Said petition was filed in said court by      JEFF B. MCDONALD     
(Attorney for     , PLAINTIFF     ), whose address is
1411 WEST AVENUE, SUITE 200 AUSTIN, TEXAS 78701     .

, The nature of the demand is fully shown by a true and correct copy of the Petition accompanying this citation and made a part hereof.

The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

Issued and given under my hand and seal of said Court at Brownsville, Texas, this the 25th day of JANUARY , A.D. 2000.

1st Att. 1-27-00 at 30pm Not in office, will
contact by phone, Mr. Little is enroute to Austin
and will return Monday    1-31-00

     AURORA DE LA GARZA     , DISTRICT CLERK
Cameron County, Texas
974 E. Harrison St.
Brownsville, Texas 78521

By:                 , Deputy

26 2000

R E T U R N   O F   O F F I C E R

Came to hand the _25_ day of _Jan_, _2000_, at _4:00_ o'clock _P_.M., and

executed (not executed) on the _31_ day of _Jan_, _2000_, by delivering to

___The John Little IV___ in person a true copy of this Citation,

upon which I endorsed the date of delivery, together with the accompanying copy

of the _Plaintiff Original Petition_                            .

Cause of failure to execute this citation is: _____
_____.

                                        OMAR LUCIO, SHERIFF

FEES serving 1 copy         _____

Total....... $_45_          Sheriff/constable _Cameron_ County, TEXAS

Fees paid by:_____   By ___John Kocera___ Deputy

FILED _8:30_ O'CLOCK _A_ M
AURORA DE LA GARZA DIST. CLERK
FEB 1 1 2000
DISTRICT COURT OF CAMERON COUNTY, TEXAS
_____ DEPUTY

5-2

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

RIO GRANDE ORTHOPAEDIC           §
INSTITUTE, AND RIO GRANDE        §
ORTHOPAEDIC INSTITUTE            §
AMBULATORY SURGERY CENTER        §        CIVIL ACTION NO. 00-37
LTD.                             §
                                 §
VS.                              §
                                 §
LEGION INSURANCE COMPANY,        §
CLAIMS ADMINISTRATION            §
SERVICES, INC., AND              §
JOHN LITTLE, DBA INSURANCE       §
ASSOCIATES OF THE VALLEY         §



## PLAINTIFFS' MOTION FOR REMAND

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Rio Grande Orthopaedic Institute and Rio Grande Orthopaedic Institute ASC, Ltd, Plaintiffs in the above styled and numbered cause and file this, their Motion to Remand this Cause back to the 197th Judicial District Court of Cameron County, Texas from which it was removed by Defendant Legion Insurance Company, and in support thereof would show the Court as follows:

### A. Remand is Timely

1.  Defendant Legion Insurance Company removed this case from Texas State District Court on February 28, 2000. Under the provisions of 28 USC §1332 and §1441 Plaintiffs have 30 days to file a Motion to Remand. This Motion is therefore timely filed under the statutory provisions governing Remand.

**Plaintiffs' Motion for Remand**                                          1

MAR 2  2000

## B. Basis of Removal

2.  Legion Insurance Company's sole grounds for removal of this case rest on the allegation of diversity of citizenship.  There is no Federal Question or other grounds that would otherwise allow for removal of this cause **(Def's Notice of Removal Paragraph 6)**.

3.  Legion further concedes that diversity exists only if a resident Defendant, John Little, is ignored for purposes of diversity.  They therefore concede that on the face of the Plaintiffs' petition there is no diversity of citizenship that would allow for the proper removal of this case **(Def's Motion Notice of Removal Paragraphs 6 & 7).**

4.  As demonstrated herein below, this case must be remanded back to State Court for the following reasons:

> a.  There is no diversity.  Defendant Legion's allegations of "Fraudulent Transfer" do not meet the rudimentary requirements under the law to demonstrate an improper joinder of a Texas resident for purposes of defeating diversity;
>
> b.  Defendant Legion has totally misrepresented and misconstrued the Plaintiffs' claims against John Little in order to somehow fashion an argument for "Fraudulent Joinder"; and,
>
> c.  Under 28 USC § 1332 (c) & § 1441, Defendant Legion is itself a resident of Texas <u>for purposes of diversity jurisdiction.</u>

### C. Fraudulent Transfer Standard

5.  The term "fraudulent" is a misnomer.  As a matter of law the Plaintiffs' intent is irrelevant to the issue of whether a non-diverse defendant is properly joined in a lawsuit.  In order to show "Fraudulent Joinder" the removing defendant must show (a) that there is an outright fraud in the Plaintiffs' recitation of jurisdictional facts; (b) there is no possibility that the Plaintiff will be able to

CVisPDF - www.fasiio.com

establish a cause of action against the non-diverse defendant in state court; (c) the diverse defendant is joined with the non-diverse defendant as to whom there is no joint, several or alternative liability and the claim against the diverse defendant has no real connection to the claim against the non-diverse defendant. Madison vs. Vintage Petroleum, Inc., 114 F.3rd 514, 516 (5th Circ. 1997). A defendant seeking to show that a non-diverse party is a sham party, or that a fraudulent joinder has occurred, bears a heavy burden of making such a showing by clear and convincing evidence, Pampillonia vs. RJR Nabisco, Inc., 138 F.3rd 459, 461 (2d Circ 1998). The Courts have held that if there is even a possibility that a cause of action exists (Emphasis Added) against any in state defendant, the federal court must find that the in-state defendants have been properly joined, there is incomplete diversity, and the case must be remanded to the state court. Put another way, there must be no possibility for a valid state cause of action being set out against the in-state defendant before the court may hold that there is fraudulent joinder. Green vs. Amerada Hess Corp., 707 F.2d 201, 205 (5th Circ. 1983); Pesch vs. First City Bank of Dallas, 637 F. Supp. 1530, 1537,38 (N.D. Tex., 1986). In the case of any disputed fact issues or questions of state law, the Court must initially resolve such disputes in favor of the Plaintiff, Green., at 206.

6. The defendant must demonstrate that the non-diverse party is a sham and/or fraudulently joined by facts established with its Notice rightly leading to that conclusion, and cannot support such an assertion with the simple deductions of the pleader, Wilson vs. Republic Iron and Steel Co., 257 U.S. 92, 66 L.Ed. 144, 42 S.Ct. 35 (1921). As will be pointed out herein below, the conclusions of the pleader is all that the Defendant offers, and those deductions are themselves flawed, and factually inaccurate based on the pleadings themselves. More importantly, a diverse defendant cannot assert a fraudulent joinder claim based on a defense that the non-diverse defendant had, but did not raise.

Sergos Commercial Airlines vs. American President Lines Ltd., 934 F.Supp. 243, 245 (S.D. Tex, 1996).

### D. Applying Law to the Facts of Defendant Legion's Removal

7. Nowhere in the Defendant's Notice of Removal does it allege that there was any fraud, outright or otherwise, in the pleading of the jurisdictional facts by the Plaintiffs. Thus, Defendant Legion not only cannot support removal on that ground, but does not even attempt to do so.

8. Nowhere in the Defendant's Notice of Removal does it even allege that the facts which give rise to the lawsuit and the claims asserted against the non-diverse defendant, agent John Little, have no connection to the diverse defendant, Legion. In fact, a simple reading of the Plaintiffs' petition will demonstrate that the entire suit is based on one continuous, totally interconnected flow of facts . The factual basis of this suit runs from the time the insurance polices in question were sold by Little through the end of the policy period in August of 1999, to a period beyond the end of the policy when claims were still being improperly paid. The improper payments were in direct contravention of the representations made by all three defendants at various times relevant to this suit. Furthermore, Defendant Legion makes no assertion that there is a lack of joint, several or alternative liability as between Legion and John Little. Therefore, Defendant Legion admits that neither (a) nor (c) as set out in Madison, at 516, apply.

9. Defendant's sole basis of establishing Fraudulent Joinder is that Plaintiffs cannot prevail against Defendant John Little **(Defendant's Notice of Removal, Paragraphs 6-14)**. First, Defendant Legion has misstated the test. For purposes of resolving the diversity question, it is not, "can you win" but "can the Plaintiff establish a cause of action against the non-diverse defendant in a state court." Madison, at 516. Plaintiffs have clearly established a causes of action against Little in State

Court, these causes of action will not only impose liability on Little, but will impose liability on the other Defendants, including Legion.

**Plaintiffs' Count I Claim For Misrepresentation Against Little**:

10.  Defendant Legion's assertion to support its removal on the grounds that Plaintiffs cannot prevail is based upon a partial recitation of the Plaintiffs' petition combined with Texas case law that does not apply.  Defendant Legion specifically asserts that the claim cannot prevail because Plaintiffs' failed "to specify any particular provision of the policy that was misrepresented." **(Defendant's Notice of Removal, paragraph 11).**  Defendant has either inadvertently or intentionally failed to set out the full extent of Plaintiffs' pleading.  Plaintiffs' cause of action against Little as set out in Count I, incorporates paragraph 8-22 of its Statement of Facts.  Plaintiff not only  set out the specific provisions of the policy that were misrepresented, in paragraphs 9, 18, and 19, but went one step further by setting out the specific way in which those provisions were violated in paragraphs 20, 21 and 22.  Plaintiffs then tied those specific provisions to the misrepresentations made by Little and the other two defendants in Paragraph 25 of their Original Petition.  The identification of the specific provisions of the policy are set out herein below and can be matched by the Court with the specific provisions of the Plaintiffs' petition attached to the Notice of Removal, and the copy of one of the insurance policies that forms the basis of this suit, attached hereto as Exhibit 1:

"The representations made by Legion, CAS and Little were that the policy would pay for surgical services provided to covered persons of the insured school districts to the extent that the fees charged by the medical provider were:
    a.  The usual fee charged by the provider for the service or supply given;
    b.  The average fee charged for the service or supply in the locality in which the service or supply is received (emphasis added); and
    c.  Is reasonable in relation to the services or supply given and the severity of the condition." **(Plaintiffs' Original Petition, Paragraph 9)**

"Only after Plaintiffs began putting pressure directly on Legion in November of 1999 did CAS begin to start addressing claims. At that point Legion and/or CAS began to adjust Plaintiffs' claims in a manner that was in direct violation of its own policy provisions. There are no PPO discounts or network agreements in place between Plaintiffs and Defendants Legion/CAS. The adjustment and payment of claims is controlled by the language of the policies themselves. These are not Medicare claims, nor are they subject to fee schedules set for Medicare or Medicaid. CAS/Legion's sole discretion in adjusting claims is contained in the policy. On page 4 of the policy under SCOPE OF COVERAGE the policy states that Legion will provide the benefits described in the policy to all covered persons who suffer a covered loss which:

> (1) is set forth in the description of benefits Provisions; and
>
> (2) results directly and independently of all other causes, from bodily injury which is suffered in an accident; and:
>
> (3) occurs while the person is a Covered Person under the Policy; and
>
> (4) is within the scope of the description of hazards provisions." **(Plaintiffs' Original Petition, Paragraph 18)**

"The Legion policy specifically states on Page 11 that the benefits due under the policy for a loss, other than a loss for which the policy provides installments, will be paid immediately upon receipt of due written proof of such loss. As set forth herein above, Legion/CAS did not do this. However, when Legion/CAS began to pay claims again after stopping, they again violated the terms of the policy, the same representations therein, and the representations made by their agent John Little. Once it is determined that the loss is covered, and the person is covered, Legion/CAS's discretion is governed by its own policy, and requires it to pay "Usual and Customary" fees. Usual and Customary is defined as:

> (1) The usual fee charged by the provider for the service or supply given;
>
> (2) The average fee charged for the service or supply <u>in the locality in which the service or supply is received</u> (emphasis added); and
>
> (3) Is reasonable in relation to the services or supply given and the severity of the condition."
> " **(Plaintiffs' Original Petition, Paragraph 19)**

11. Plaintiffs would question just how specific Defendant Legion expects them to be. When one reads the petition it is patently clear exactly what provisions were violated, how they were violated and how those violations are connected to the representations made by Defendant John Little in the course of selling these polices, and others like them, to the School Districts in the Rio Grande Valley.

12. The notion that John Little cannot be found liable by a Texas State Court for misrepresenting the terms of coverage of an accident liability insurance policy is wrong. Plaintiffs set out each and every element of negligent and intentional misrepresentation. See <u>Trenhom vs. Ratcliff,</u> 646 S.W. 2d 927,

930 (Tex 1983) and <u>Cook Consultants, Inc. vs. Larson,</u> 700 S.W. 2d 231, 234-35, (Tex. App.--

Dallas, 1985). In their answers, none of the Defendants, including Little, filed any special exceptions,

affirmative defenses or other pleadings that would call into question that Plaintiffs had failed to plead

each and every element of the causes of action it has alleged against in state Defendant, John Little.

There is nothing that exempts John Little from personal liability for his own misrepresentations. Not

only is Little liable himself, but his actions also make Legion liable, as will be set out further herein

below.

<u>**Plaintiffs' Count II Misrepresentation Claim Against John Little**</u>:

13.   Defendant Legion's assertion that Plaintiffs cannot recover on their claim against John Little

regarding the Jennifer Lopez claim is also groundless.  First of all, Texas law is clear that an insurance

agent, by virtue of his own misrepresentations, can prevent an insurance company from enforcing the

provisions of its policy, <u>Mid-Century Insurance Company vs. H & H Meat Products,</u> 822 S.W. 2d

747 (Tex. Civ. App.--Corpus Christi, 1992), <u>Fisher vs. Indiana Lumberman's Muutal Insurance,</u> 456

F.2d 1396 (5th Circ., 1972).

14.   More importantly, as set forth in paragraph 12 above, Little is clearly liable for his own

misrepresentations, and if for any reason it is established at trial that his conduct does not make

Legion liable, Plaintiffs can clearly recover against Little, either from his personal assets, or his errors

and omissions carrier, for the value of the services they provided  that were not paid for because of

his misrepresentations.   The key is "misrepresentation."  Both Plaintiffs and the school district

approached Little on the Castillo claim and requested that he verify coverage or get approval for

coverage <u>because of the time limit factor (Emphasis Added)</u>.  The misrepresentation is that he agreed

to do so, did so, and then represented that Jennifer Castillo's coverage had been verified <u>despite the</u>

language of the policy that precluded coverage after 90 days from the incident (Emphasis Added)

Again, the clear language of the allegation is set forth in Plaintiffs' Petition and herein below:

"With regard to one claim, that of Jennifer Castillo, Legion and/or CAS out right denied in December 1999 alleging the expense/service was rendered 105 days from the date of injury and was not within the 90 day period for incurring the service. This claim was specifically taken to Legion's local agent, John Little by a representative of the insured school district and Little specifically told that representative to have Dr. Snyder treat the patent and that his services would be covered." **(Paragraph 10, Plaintiffs' Original Petition)**.

"On May 26, 1999 Plaintiffs performed surgery on Jennifer Castillo, a patient/insured of Legion Insurance company. When Ms. Castillo came to the Plaintiff it was apparent that she had incurred her injury over 90 days prior. Plaintiffs and Ms. Castillo were concerned that the Legion policy under which she was covered would not pay for the contemplated surgical procedure. Plaintiffs contacted an athletic trainer who knew Ms. Castillo and understood both her condition and the circumstances of the delay in her seeking medical services. That trainer contacted Defendant John Little, explained the circumstances and requested that Mr. Little seek and obtain approval from Legion and/or CAS for the procedure so that Plaintiffs and Ms. Castillo could be assured the procedure would be covered under the Legion policy, despite the delay in seeking service. Little was and is the duly authorized agent and local representative of Defendant Legion and its claims payer, CAS. He held himself out as such and represented to Plaintiffs on numerous occasions that he was authorized to speak and act on Legion's behalf. He also assured Plaintiffs that as Legion's local representative that Plaintiffs could rely upon Little's statements for purposes of resolving coverage issues and other matters pertaining to the policies of insurance he sold and Legion issued. At all times relevant to this cause of action, Legion and CAS held Little out to be their authorized agent and never provided any indication of any limitations on Little's authority to act on Legion and/or CAS's behalf. Little informed the trainer that Ms. Castillo's procedure would be covered under the policy and to proceed. Plaintiffs relied upon Little's representations and performed the procedure on Ms. Castillo. Thereafter, when Plaintiffs submitted the Castillo claim, Legion, by and through CAS rejected the claim, not because the procedure was not covered, or because the procedure was unnecessary, but because the services occurred beyond the 90 day time limit prescribed in the Legion policy. The representations made by Legion and/or CAS by and through their authorized local agent, John Little were made to induce Plaintiffs to perform the surgical procedure on Ms. Castillo. Plaintiffs relied, to their detriment, on these representations which proved to be false. The misrepresentations were either made intentionally or with negligent disregard for their truth. As a result of this misrepresentation Plaintiffs have been damaged in the amount of at least $10,195.00 for which they seek relief. To the extent Plaintiffs demonstrate that the misrepresentation was made intentionally, Plaintiff seeks the award of punitive/exemplary damages to be determined by the trier of fact in accord with the limits prescribed by Texas law for punitive damages." **(Plaintiffs' Original Petition, paragraph 26)**.

The misrepresentation was not that he misrepresented the terms within the policy, but rather he

misrepresented that Legion had agreed to waive the specific terms, something insurance companies do as a matter of course. Legion's attempt to misconstrue the allegation does not pass muster under a reading of the clear language and assertion in the petition. Even if Legion could demonstrate that Little was not its agent, it would not exonerate Little from being personally liable for his own misrepresentation.

### Plaintiffs' Breach of Contract Claim Against Little

15. All three Defendants in this case elected to initially answer the lawsuit in state court. While this answer does not appear to rise to the level of waiver of removal under the Federal Law and cases, it does establish the parameters of the Defendants' defenses. Rule 94 of the Texas Rules of Civil Procedure requires that a Defendant raise an affirmative defense, or that defense is waived.

16. As stated herein above, a diverse defendant can not rely upon a defense of a non-diverse defendant that the non-diverse defendant did not plead. Legion has alleged that Little is not liable on the theory of breach of contract because he is a "disclosed agent." That defense is not Legion's, it is Little's. Little, Legion and CAS had a full and fair opportunity to raise any and all defenses, counterclaims, demands for more specificity and any other legal pleading, without waiving removal. As evidenced by the attachments to Legions's notice of removal, no defendant, including Little, raised any affirmative defense, or filed any type of pleading other than a general denial. Legion filed a specific denial alleging a violation of the Texas Constitution with regard to the damages pled, but it is irrelevant to this dispute. "Avoidance" of contractual liability is specifically mentioned in the rules as an affirmative defense. Thus, Little having failed to raise the defense, Legion cannot rely upon it to establish diversity, even if it were somehow valid, which Plaintiffs deny that it is, because Little did not raise the defense. See Sergos Commercial Airlines vs. American President Lines Ltd., 934 F.

Supp. 243, 245 (S.D. Tex, 1996).

17.  Little negotiated the sale of the insurance coverage.  He accepted premium on behalf of the insurance company and received a commission, that was paid for from that premium.  Legion says Little was not its agent, but then admits that Plaintiffs' arguments of agency between Legion and Little are true.  It then relies upon the unsupported statement, not backed up by its, or Little's pleadings, that "at best Little was a disclosed agent" and therefore not liable.  This statement is the precise type of unsupported conclusion and deduction of the pleader that the well established case laws says is wholly inadequate to establish Fraudulent Joinder.

### E. Conclusion as to Fraudulent Joinder

18.  The test is "can the Plaintiff s establish a cause of action against a non-diverse defendant in a state court."  Plaintiffs clearly not only can, but have done so.  The convoluted arguments Legion makes with regard to the misrepresentation claims only serve to reinforce that the Plaintiffs have a clear cause of action against a non-diverse defendant, John Little, whose conduct is so intertwined with that of the other defendants that not only is it a valid state cause of action against Little, but it also forms the basis for a valid state cause of action against Legion and CAS.  The issue Legion raises with regard to the breach of contract cannot procedurally be raised because there is no underlying pled defense by Little, and without that defense Legion cannot raise the matter.

19.  Legion's argument is so weak, and its proof to support such a heavy burden so inadequate, that when coupled with its failure to completely set out the Plaintiffs pleadings, its conduct not only justifies the award of attorney's fees, but the imposition of costs and sanctions as more fully set forth below.  Legion sold a policy in the Rio Grande Valley to local school districts, using a local insurance agent, John Little,  who not only spoke on its behalf, but was for the most part the only person that

any of the insureds or medical providers like the Plaintiffs ever saw or spoke to. He made statements and representations personally, that clearly expose him to liability and may also expose his principals. Now Legion wishes to argue that such a person has been improperly joined and should be ignored as a defendant, based on virtually no evidence whatsoever, other than the unsupported conclusions of its counsel in a motion that no other Defendant has even joined. After taking $135,000 in premium from at least one school district, a portion of which went directly to Mr. Little, Legion now wishes to argue that Plaintiffs cannot recover against Mr. Little for misrepresentations that induced the school districts to buy the insurance, and induced the Plaintiffs to perform the surgical services on student athletes whose families could not hope to pay for such services themselves. That may be how the law works in Pennsylvania, but not in Texas.

### F. Legion is A Texas Citizen for Purposes of Diversity

20. The Removal Statute, 28 USC §1332 (c) specifically provides:

> "A corporation shall be deemed a citizen of any State in which it has been incorporated and of the State where it has its principle place of business: Provided further, That in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen."

21. Attached hereto as Exhibit A to Timothy Weitz's Affidavit **[Exhibit 1]**, is a true and correct copy of one of the three policies of insurance issued by Legion that forms the basis of this suit. It was issued by Legion to Pharr-San Juan-Alamo Independent School District. In the top left-hand corner of the policy it clearly identifies Legion by name and address. The address matches that in the Plaintiffs' Original Petition. Under the address, the policy clearly identifies Legion as a stock insurance company. In the top right- hand corner, it identifies the policy as an "Accident Only Policy." This policy is not a medical policy or any type of life or health policy. It is a liability policy

as described in 28 USC §1332 (c). Similar to an auto liability policy, which pays for medical expenses and property damage from a car accident, this policy pays for medical expenses incurred when a student is involved in a sports related accident **(Pages 2 and 5 of Exhibit 1).** The courts have defined liability insurance as that form of insurance whereby the insured, in this case the school district, is indemnified against liability for injuries to others, in this case student athletes, <u>Ford Motor Co. Vs. Insurance Company of North America,</u> 669 F. 2d 421 (CA 6 Mich).

22.   The Plaintiffs are clearly not the named insureds, but are third party medical providers.   The lawsuit does not name the insured, in this case the school district.   Under the clear language of the statute, Legion is therefore deemed to be a citizen of the State of the insured.   Pharr, San Juan and Alamo School districts are all Texas Citizens.

23.   In a variety of different insurance settings, the case law is clear that insurance companies, situated like Legion, are citizens of the state of their insureds for diversity purposes, where the insured is not a named party.   In <u>Torres vs. Hartford Ins. Co.</u> 588 F.2d 848 (CA 1 Puerto Rico, 1978) the court held an insurer is deemed to be a citizen of the same state as the Plaintiff if either named insured or tortfeasor omnibus insured is a citizen of that state for purposes of 28 USC 1332. The same result was reached in <u>Allstate Vehicles vs. Allstate Insurance company,</u> 620 F. Supp. 444 (SD NY, 1985, [3rd party was an assignee]).   The same result has been held in Texas where a worker sues his employer's workers compensation carrier for benefits without first suing his employer and without even joining his employer as a party-defendant.   <u>Hernandez vs. Travelers Insurance Company</u> 489 F. 2d 721 (5th Circ 1974).

24.   This case is clearly one of direct action.   The courts have defined direct action as situations where an injured party is permitted to sue the insured's insurance company directly, and without joinder of

the insured, and without first obtaining a judgment against the insured, Irvin vs. Allstate Insurance Company, 436 F. Supp. 575 (WD Okla, 1975). This cause is also clearly the type of action that Congress intend to exempt from removal, where an injured or damaged third party can bring an action directly against an insured's insurance company without the cost, expense and necessity of first obtaining a judgment against the insured. Government Employers Ins. Co. Vs. Le Bleu 272 F. Supp. 421 (ED La, 1972); Lank vs. Federal Ins. Co., 309 F. Supp. 349 (DC Del, 1970).

25. As set forth in Plaintiffs' Original Petition, the misrepresentations made by Legion were made both directly to Plaintiffs and were also made through the insured school districts, who assured Plaintiffs that their services would be paid by the policy of insurance if Plaintiffs treated the students from that school. Because it seems clear that the insureds themselves were deceived and misrepresented to, Plaintiffs elected not to sue them. However, the torts of misrepresentation against Legion, are the same claim that Plaintiffs could have alleged against the school districts themselves. As such, 1332 (c) defeats removal jurisdiction because the claim by the Plaintiffs (third party) which it could have alleged against the insured (school districts) is in part the same one asserted against Legion, and falls within the primary liability coverage for which insurance was issued by Legion, specifically the payment of medical expenses for treating the injured students. John Cooper Produce, Inc. vs. Paxton nat. Ins. Co. 774 F.2d 433, (CA 11 Ala, 1985) ). Had the school district not been insured, it would have been responsible for the medical bills incurred by students in the course of athletic activities sanctioned by the school.

26. The instances where the Courts refuse to invoke 1332 (c) are where, (1) the insured, and not a third party brings the action, Searles vs. Cincinnati Insurance Company 998 F.2d 728. 93, (CA 9 Cal, 1993); Basel vs. Allstate Co. 757 F. Supp. 39, (ND Cal, 1991), (2) the suit is not a direct action

lawsuit, Cunningham vs. State Farm Mutual Auto. 297 F. Supp. 1138 (ED Tenn, 1969), (3) the insurance is not deemed to be liability coverage, Ennis vs. Queens Insurance Company 364 F. Supp. 964, (WD Tenn, 1973 [fire insurance not liability insurance]) . None of these instances apply in this case, and as such, 1332 (c) makes Legion a Texas resident and destroys diversity between it and the Plaintiffs, regardless of any other assertions by Legion.

### G. Failure to Obtain Proper Consent

27. Although Legion asserts in its pleading that Defendants Claims Administration Services, Inc. and John Little have consented to removal, Legion has failed to obtain proper consent to suppor the assertion. Proper consent by other defendants requires that defendants either sign the notice of removal or file a separate form agreeing to the notice of removal. Such consent must be in writing and must give official notice of consent. Neither CAS nor Little have signed the notice of removal or filed a written official notice of consent. No exceptions apply in this instance and Legion's assertion of consent is insufficient. Consequently, Legion's removal is procedurally defective and the case should be remanded. Roe v. O'Donohue, 38 F.3rd 298, 301(7th Circ. 1994); Getty Oil corp. V. Insurance Co., 841 F.2d 1254, 1262 (5th Circ. 1988). Under the applicable law the deadline for defendants Little and CAS to file written notices of consent has past. Where they did not join the removal notice, both Defendants had 30 days from the date they were served. To file their notice of consent. Choghervand v. Carefirst, 909 F. Supp. 304. 308-09 (D. Md. 1995). We know the period has run, because not only were all defendants served, but they filed answers and those answers are attached to Legion's Notice of Removal and indicate the answers were filed well over thirty days ago. Therefore, in addition to its substantive defects, Legions removal is also procedurally flawed.

## H. The Award of Attorney's Fees and Sanctions is Appropriate

28. Given the lack of substance to the Defendant Legion's allegations of removal, Plaintiff contends that the sole purpose of removing this case was to harass the Plaintiffs and delay the suit. It has done both. Plaintiffs have expended attorney's fees as set forth in Timothy Weitz's Affidavit, attached hereto as Exhibit 1, in order to remand this suit. Mr. Weitz attempted to contact Legions' counsel, Greg Pierce on several occasions. After leaving telephone messages for Legion's counsel, Greg Pierce, on March 3 and March 8, 2000, Mr. Weitz was eventually able to confer with him by telephone on March 23, 2000. Through the previous messages and the March 23, 2000 telephone conversation, Mr. Weitz conveyed Plaintiffs' belief that, based on the case law, Legion's removal was completely unfounded. Mr Weitz requested that Legion's counsel revisit the position taken by Legion and consider a remand agreement. It was explained that if a remand was not possible, Plaintiffs would file the Motion for Remand and would seek attorney's fees and sanctions. Legion's counsel indicated that if Plaintiffs' counsel did not receive a phone call by March 24, 2000, then counsel should assume that Legion was unwilling to agree to a remand. No such call was received. Discovery has been delayed as Plaintiffs must now wait for the outcome of this motion before proceed. The court has the power to both award attorney's fees and to sanction an improper removal, Unanue Casual v. Unanue Casual, 898 F.2d 839, 841-42 (1st Circ 1990). Plaintiffs request that the Court award them both attorney's fees and sanctions.

WHEREFORE PREMISES CONSIDERED, Plaintiffs pray that the Court remand this cause to the State District Court in Cameron County, that it ward the Plaintiffs its attorney's fees for the improper removal of this cause and that it further award Plaintiffs sanctions for the harassment and

delay caused by the removal, and grant Plaintiffs any and all other relief at law or in equity to which
it is otherwise entitled.

Respectfully submitted,

Timothy E. Weitz
SBN 21117500
Jeff B. McDonald
SBN 13548560
McDonald, Mackay & Weitz, L.L.P.
1411 West Avenue, Suite 200
Austin, Texas 78701
(512) 322-9202 Main Number
(512) 323-5071  Fax Number

Mark A. Weitz
SBN 21116500
Law Office of Mark A. Weitz
P.O. Box 9673
Austin, Texas 78766-9673
(512) 322-9202  Direct Line
(512) 323-5071  Fax Number

ATTORNEYS FOR PLAINTIFFS

CISPDF - www.fasiso.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 24th day of March, 2000, a true and correct copy of this Motion to Remand has been served on the following parties and in the following manner:

Greg Pierce
Julie Springer
One American Center
600 Congress Avenue, 15th Floor
Austin, Texas 78701-2589

Charles M. Jefferson
One Riverwalk Place, Suite 1000
700 North St. Mary's Street
San Antonio, Texas 78205

Elizabeth G. Neally
Roerig, Oliveira & Fisher, L.L.P.
855 West Price Road, Suite 9
Brownsville, Texas 78520

(Via Certified Mail)

Timothy E. Weitz.

## CERTIFICATE OF CONFERENCE

I hereby certify that on the 23rd Day of March 2000, I conferenced with Greg Pierce, attorney for Legion Insurance Company in an effort to resolve this Motion for Remand. I was instructed to wait until Noon on March 24, 2000 and that if I had not been contacted by him, Legion would not agree to Remand the case. I waited until Noon on March 24, 2000 and did not receive a call.

Timothy E. Weitz

**Plaintiffs' Motion for Remand**                                                                17

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| RIO GRANDE ORTHOPAEDIC INSTITUTE, AND RIO GRANDE ORTHOPAEDIC INSTITUTE AMBULATORY SURGERY CENTER, LTD., | § § § § § § | |
| Plaintiffs, | § § | COPY |
| V. | § § | CIVIL ACTION NO. 00-37 |
| LEGION INSURANCE COMPANY, CLAIMS ADMINISTRATION SERVICES, INC., AND JOHN LITTLE, D/B/A INSURANCE ASSOCIATES OF THE VALLEY, | § § § § § § | |
| Defendants | § | |

## AFFIDAVIT OF TIMOTHY E. WEITZ

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF TRAVIS | § |

KNOW ALL MEN BY THESE PRESENCES:

ON THIS DAY, personally appeared before me, a notary public, the person known to me to be Timothy E. Weitz, and after being duly sworn on his oath deposed and stated as follows:

"My name is Timothy E. Weitz. I am over eighteen years of age, of sound mind and in all other respects capable of making this affidavit. I have personal knowledge of all the facts stated herein.

I am a partner in the law firm of McDonald, Mackay & Weitz, L.L.P., and I, along with my partner Jeff B. McDonald, and Mark A. Weitz, a solo practitioner, represent the Plaintiffs in the above styled and numbered matter.

This affidavit is Exhibit 1 to the foregoing Plaintiffs' Motion for Remand. Attached hereto as Exhibit A is a true and correct copy of the insurance policy #AH2-0133485-SA issued to Pharr-San Juan-Alamo Independent School District by Legion Insurance Company.

In order to prepare and file the referenced motion, myself, Jeff B. McDonald, and Mark A. Weitz have dedicated and collectively expended 18 hours and 37 minutes at the rate of $180.00 per hour to research, draft, file and serve the motion. The total amount of attorneys' fees for responding to the removal of this cause of action through this Motion for Remand is $3,351.00. The rate charged and hours spent are customary and reasonable for such a case and particular matter in Texas and the Rio Grande Valley given the experience of the attorneys involved and the complexity of the work performed. All of the facts recited herein are true and correct to the best of my personal knowledge.

Further affiant sayeth not."

Timothy E. Weitz

SWORN AND SUBSCRIBED TO BEFORE ME, A NOTARY PUBLIC, ON THIS THE 24TH DAY OF MARCH, 2000.

NOTARY PUBLIC

NORA E. Acosta
PRINTED NAME OF NOTARY

NORA E. ACOSTA
Notary Public, State of Texas
My Commission Expires
March 05, 2002

**LEGION INSURANCE COMPANY**
**One Logan Square, Philadelphia PA. 19103**
**(A STOCK INSURANCE COMPANY HEREIN CALLED**
**THE INSURANCE COMPANY)**

**ACCIDENT ONLY POLICY**
**NON-PARTICIPATING**

Policy Number:    AH2-0133485-SA

Policy Effective Date:    7/31/98

Policy Term: One Year

Policyholder: Pharr-San Juan-Alamo Independent School District

The Policy is issued in the state of __Texas__ and shall be governed by its laws.

The Policy contains the terms under which the Insurance Company agrees to insure certain persons and pay benefits in return for the payment of premium.

**Effective Date and Policy Term:** The Policy takes effect on the Policyholder Effective Date. The period of insurance begins and ends at 12:01 A.M. Standard Time at the Policyholder's address.
Coverage will be terminated by the Insurance Company or the Policyholder in accordance with the GENERAL PROVISION called "POLICY TERMINATION".

We have issued the Policy in consideration of the signed Application and the payment of required premium. The Insurance Company and the Policyholder have agreed to all the terms of the Policy.

_____
Legion Insurance Company Appointed Representative

**THIS IS AN ACCIDENT ONLY POLICY.**
**READ IT CAREFULLY**
**BENEFITS ARE NOT PAYABLE FOR LOSS DUE ~ [CKNESS UNLESS SPECIALLY**
**ENDORSED.**
**THIS POLICY PAYS BENEFITS FOR SPECIFIC LOSSES FROM ACCIDENT ONLY.**

**THIS IS A SINGLE TERM POLICY AND IS NOT RENEWABLE**

Page 1

EXHIBIT A

# TABLE OF CONTENTS

|  | Page |
|---|---|
| Insuring Agreements | 1 |
| Table of Contents | 2 |
| Definitions | 2 |
| Scope of Coverage | 4 |
| Provisions Concerning Insureds | 5 |
| Description of Hazards | 5 |
| Description of Benefits | 7 |
| Exclusions | 9 |
| Claim Provisions | 10 |
| General Policy Provisions | 13 |
| Schedule of Benefits | 14 |
| Rate Table | 14 |

## DEFINITIONS

The terms shown below shall have the meaning given in this section whenever they appear in the Policy. Additional terms may be defined within the provision to which they apply.

**"Accident"** means a sudden, unforeseeable external event which:

(1)    causes Injury to one or more Covered Persons; and

(2)    occurs while coverage is in effect for the Covered Person.

**"Benefit Period"** 52 weeks from the date of Injury, unless specially endorsed.

**"Covered Person"** means an Eligible Person for whom application has been accepted and proper premium payment has been made, and who is therefore insured under the Policy.

**"Deductible"** means the amount of Eligible Expenses which must be paid by the Covered Person before benefits are payable under the Policy.  It applies separately to each Covered Person.

**"Doctor"** means a licensed practitioner of the healing arts acting within the scope of his license.  Doctor does not include:  the Covered Person; his spouse; his child; his parent; his brother; his sister; or a person living with him.

**"Eligible Expenses"** means the Usual and Customary charges for services or supplies which are incurred by the Covered Person for the Medically Necessary treatment of Injury.  Eligible Expenses must be incurred while the Policy is in force.

**"He", "his" and "him"** includes "she", "her" and "hers".

**"Health Care Plan"** means any contract, policy or other arrangement for benefits or services for medical or dental care or treatment under:

(1)    group or blanket insurance, whether on an insured or self-funded basis;

(2)    hospital or medical service organizations on a group basis;

(3)    Health Maintenance Organizations on a group basis;

(4)    group labor management plans;

Page 2

## DEFINITIONS (Continued)

(5)   employee benefit organization plan;

(6)   professional association plans on a group basis;

(7)   any other group employee welfare benefit plan as defined in the Employee Retirement Income Security Act of 1974 as amended; or

(8)   automobile no-fault coverage.

"**Hospital**" means an institution which:

(1)   is operated pursuant to law;

(2)   is primarily and continuously engaged in providing medical care and treatment to sick and injured persons on an inpatient basis;

(3)   is under the supervision of a staff of Doctors;

(4)   provides 24-hour nursing service by or under the supervision of a graduate registered nurse(R.N.);

(5)   has medical, diagnostic and treatment facilities, with major surgical facilities;

   (a)   on its premises; or

   (b)   available to it on a prearranged basis; and

(6)   charges for its services.

Hospital does not include:

(1)   a clinic or facility for:

   (a)   convalescent, custodial, educational or nursing care;

   (b)   the aged, drug addicts or alcoholics;

   (c)   rehabilitation; or

(2)   a military or veterans hospital or a hospital contracted for or operated by a national government or its agency unless:

   (a)   the services are rendered on an emergency basis; and

   (b)   a legal liability exists for the charges made to the individual for the services given in the absence of insurance.

"**Hospital Stay**" means a Medically Necessary overnight confinement in a Hospital when room and board and general nursing care are provided for which a per diem charge is made by the Hospital.

"**Injury**" means bodily harm which results, directly and independently of all other causes, from an Accident. All injuries sustained in one accident, including all related conditions and recurring symptoms of the Injuries will be considered one Injury.

"**Insured**" means an eligible person of the Policyholder for whom insurance is in force under the Policy.

"**Medically Necessary**" or "**Medically Necessity**" means the service or supply is:

(1)   prescribed by a Doctor for the treatment of the Injury; and

(2)   appropriate, according to conventional medical practice for the Injury in the locality in which the service or supply is given.

"**Nurse**" means a professional, licensed, graduate registered nurse(R.N.) or a professional, licensed practical nurse (L.P.N.).

"**School**" means the participating School or School District where the Covered Person is enrolled or employed. The School must be a duly accredited(state certified or accredited) primary, elementary, secondary, or collegiate school.

Page 3

# DEFINITIONS (Continued)

"**Supervised and Sponsored Activity**" means a Policyholder, or School authorized function:

    (1)    in which the Covered Person participates;
    (2)    which is organized by or under its auspices; and
    (3)    which is within the scope of customary activities for such entity.

"**Usual and Customary**" means the fee(s) for medical services or supplies which is(are):

    (1)    the usual fee(s) charged by the provider for the service or supply given;
    (2)    the average fee charged for the service or supply in the locality in which the service or supply is received; and
    (3)    reasonable in relationship to the service or supply given and the severity of the condition.

"**We, our, or us**" means the Legion Insurance Company.

# SCOPE OF COVERAGE

We will provide the benefits described in the Policy to all Covered Persons who suffer a covered loss which:

    (1)    is set forth in the **DESCRIPTION OF BENEFITS PROVISIONS**; and
    (2)    results, directly and independently of all other causes, from bodily Injury which is suffered in an Accident; and
    (3)    occurs while the person is a Covered Person under the Policy; and
    (4)    is within the scope of the risks set forth in the **DESCRIPTION OF HAZARDS** provisions.

## Full Excess Medical Expense

If an Injury to the Covered Person results in his incurring Eligible Expenses for any of the services in the SCHEDULE OF BENEFITS, we will pay the Eligible Expenses incurred, subject to the Deductible Amount(if any), that are in excess of Expenses payable by any other Health Care Plan, regardless of any Coordination of Benefits provision contained in such Health Care Plan.

The Covered Person must be under the care of a Doctor when the Eligible Expenses are incurred.  The Expense must be incurred:

    (1)    solely for treatment of a covered Injury; and
    (2)    while the person is insured; or
    (3)    during the Benefit Period.

The first Expense must be incurred within the time frame shown on the Schedule of Benefits.

The total of all medical benefits payable under the Policy is shown on the Schedule of Benefits.

**Page 4**

# PROVISIONS CONCERNING INSUREDS

**Eligibility:**

Persons eligible to be insured under the Policy are those persons described in the Policy. This includes anyone who may become eligible while the Policy is in force.

**Effective Dates:**

An Eligible Person will become an Insured under the Policy, provided proper premium payment is made, on the latest of:

    (1)    the Policy Effective Date; or

    (2)    the day he becomes eligible.

**Termination:**

Insurance for an Insured will end on the earliest of:

    (1)    the date he is no longer in an Eligible Class;

    (2)    full time active duty in any Armed Forces. (Send us proof of service. We will refund any premium paid for this time.) This does not include Reserve or National Guard duty for training;

    (3)    the end of the period for which the last premium contribution is paid; or

    (4)    the date the Policy is terminated.

Termination will not affect a claim for a covered loss due to an Accident which occurred while coverage was in effect.

# DESCRIPTION OF HAZARDS

## A. SPORTS ONLY COVERAGE

Subject to all other provisions of the Policy, coverage is provided for a Covered Person while he is:

    (1)    taking part in:

        (a)    a regularly scheduled athletic game or competition; or

        (b)    a practice session for an athletic team or club;

    (2)    traveling to or from such a game, competition or practice session provided he is:

        (a)    traveling with the athletic team or club; and

        (b)    under the direct and immediate supervision of:

            (i)    the athletic team or club; or

            (ii)    an adult authorized by the athletic team or club; or

    (3)    traveling directly, without interruption:

        (a)    between his home and a scheduled game, competition or practice session;

        (b)    in a vehicle which is:

            (i)    designated or furnished by the athletic team or club;

            (ii)    operated by a properly licensed, adult driver; or

            (iii)    under the direct supervision of the athletic team or club; or

        (c)    in a vehicle other than that described in (3)(b) when:

            (i)    operated by a properly licensed driver.

**Page 5**

## Descriptions of Hazards (Continued)

Travel time includes the time:
- (i)     to or from home, a scheduled game, competition or practice session;
- (ii)    before required attendance time;
- (iii)   after the Covered Person is dismissed; and
- (iv)   after the Covered Person completes extra duties assigned by the School.

Covered athletic games or competitions are shown under Description of Hazards on the Schedule of Benefits. Injuries which result over a period of time (such as blisters, tennis elbow, heat exhaustion, hernia, etc.), and which are a normal, foreseeable result of the sport, are covered. These items are considered a Sickness and are not covered unless this Policy is specially endorsed.

## B. POLICYHOLDER FUNCTIONS

Subject to all other provisions of the Policy, insurance is provided for a Covered Person while he is:
- (1)   attending or participating in a Supervised and Sponsored Activity; or
- (2)   attending a Policyholder function, as described under Description of Hazards on the Schedule of Benefits.

The Covered Person must be:
- (1)   on the premises of the Policyholder:
  - (a)   during its normal hours;
  - (b)   during scheduled functions; and;
  - (c)   during other periods if he is attending or participating in a Supervised and Sponsored Activity.
- (2)   not on Policyholder premises and attending or participating in a Supervised and Sponsored Activity;
- (3)   traveling directly, without interruption:
  - (a)   between his home and the Policyholder's premises for participation in a Supervised and Sponsored Activity.
  - (b)   between the site of the Supervised and Sponsored Activity and his home or the Policyholder's premises, if the Supervised and Sponsored Activity is located within or outside the town where the Policyholder's premises are located.
  - (c)   in a vehicle which is:
    - (i)     designated or furnished by the Policyholder
    - (ii)    operated by a properly licensed, adult driver; or
    - (iii)   under the direct supervision of the athletic team or club; or
  - (c)   in a vehicle other than that described in (3)(b) when:
    - (i)     operated by a properly licensed driver; and
    - Travel time includes the time:
    - (i)     to or from home, the Policyholder's address and Supervised and Sponsored Activity
    - (ii)    before the appointed time; and
    - (iii)   after the Supervised and Sponsored Activity is completed.

Unless otherwise stated, we will pay benefits for a covered loss, only once, even if coverage was provided under more than one Description of Hazards.

Page 6

# DESCRIPTION OF BENEFITS

## ACCIDENTAL DEATH, DISMEMBERMENT, OR LOSS OF SIGHT BENEFIT

If, within one year from the date of an Accident covered by the Policy, Injury from such Accident, results in Loss listed below, we will pay the benefit set opposite such Loss. If the Covered Person sustains more than one such Loss as the result of one Accident, we will pay only one amount, the largest to which he is entitled. This amount will not exceed the Principal Sum which applies for the Covered Person.

| Loss | Benefit Amount |
|------|----------------|
| Loss of Life | The Principal Sum |
| Loss of Both Hands | The Principal Sum |
| Loss of Both Feet | The Principal Sum |
| Loss of Entire Sight of Both Eyes | The Principal Sum |
| Loss of One Hand and One Foot | The Principal Sum |
| Loss of One Hand and Entire Sight of One Eye | The Principal Sum |
| Loss of One Foot and Entire Sight of One Eye | The Principal Sum |
| Loss of One Hand | One-Half the Principal Sum |
| Loss of One Foot | One-Half the Principal Sum |
| Loss of Entire Sight of One Eye | One-Half the Principal Sum |
| Loss of Thumb and Index Finger of the Same Hand | One-Quarter the Principal Sum |

Loss of a hand or foot means complete Severance through or above the wrist or ankle joint. Loss of sight means the total, permanent loss of sight of the eye. The loss of sight must be irrecoverable by natural, surgical or artificial means. Loss of a thumb and index finger means complete Severance through or above the metacarpophalangeal joints(the joints between the fingers and the hand).

(In California, loss of a thumb and index finger means loss by complete Severance of at least one whole phalanx of each.) (In South Carolina, the complete severance of four whole fingers from one hand equals the loss of one hand.)

"Severance" means the complete separation and dismemberment of the part from the body.

## ACCIDENT MEDICAL EXPENSE BENEFIT

If the first Eligible Expense is incurred within 90 days from the date of a covered Accident, we will pay up to the Maximum Benefit Amount as shown on the Schedule of Benefits, subject to the Deductible Amount (if any), for:

(1) Hospital Room and Board charges, up to the most common semi-private daily room rate, for each day of the Hospital Stay.

(2) Intensive Care Room and Board charges. This payment is in lieu of payment for Hospital Room and Board charges for those days.

Page 7

## ACCIDENT MEDICAL EXPENSE BENEFIT(Continued)

(3) Hospital Miscellaneous charges, during a Hospital Stay.  Miscellaneous charges do not include charges for telephone, radio or television, extra beds or cots, meals for guests, take home items, or other convenience items.

(4) Outpatient charges, by a Hospital for:
    (a)    pre-admission testing, confinement must occur within 7 days of the testing; or
    (b)    emergency room treatment.

(5) Surgical charges for:
    (a)    a Doctor, for primary performance of a surgical procedure. Two or more surgical procedures through the same incision will be considered as one procedure.  However, we will pay up to 1.5 times the Surgical procedure charge when more than one surgical procedure through different operating fields are performed during the same surgical session.
    (b)    a Doctor, for assistant surgeon duties, a second surgical opinion, or consultation.
    (c)    anesthesia and its administration.
    (d)    use of surgical facilities.

(6) Charges by a Doctor for other than pre- or post-operative care:
    (a)    for in-Hospital visits; and
    (b)    for office visits;

(7) Charges for X-ray and laboratory tests.

(8) Charges for nursing services, other than routine Hospital care, by or under the supervision of a licensed graduate registered nurse.

(9) Charges for Physiotherapy:
    (a)    while Hospital confined; or
    (b)    as an outpatient.
    Physiotherapy includes:
    (i)    heat treatment;
    (ii)    diathermy;
    (iii)    microtherm;
    (iv)    ultrasonic;
    (v)    adjustment;
    (vi)    manipulation;
    (vii)    massage therapy; and
    (viii)    acupuncture.

(10) Ambulance from the place where the Injury occurred to the Hospital.

(11) Rental charges for medical equipment, for:
    (a)    a wheelchair;
    (b)    an iron lung; or
    (c)    other medical equipment for which prior approval by us has been given.

(12) Charges for medical services and supplies for:
    (a)    oxygen and its administration;
    (b)    blood and blood transfusions.

(13) Charges for dental treatment, for Injury to a tooth which was sound and natural at the time of Injury. (In Maryland, "sound and natural tooth" includes a tooth which has received caps, crowns and fillings.)

                                           **Page 8**

# OUTPATIENT PHYSIOTHERAPY BENEFIT

We will pay the Eligible Expenses, incurred for physiotherapy:

    (1)    due to a covered Injury; and

    (2)    when received on out-patient basis

Physiotherapy includes: heat treatment or diathermy, ultrasonic, microtherm, manipulation, adjustment; massage therapy and acupuncture.

## EXCLUSIONS

Benefits will not be paid for a Covered Person's loss which:

(1)    is caused by or results from his own:

    (a)    intentionally self-inflicted Injury, suicide or any attempt thereat (in Missouri this applies only while sane.); or

    (b)    voluntary self-administration of any drug or chemical substance not prescribed by, or taken according to the directions of, a Doctor (Accidental ingestion of a poisonous substance is not excluded.); or

    (c)    commission or attempt to commit a felony; or

    (d)    participation in a riot or insurrection; or

(2)    is caused by or results from:

    (a)    declared or undeclared war or act of war; or

    (b)    an act of terrorism; or

    (c)    an Accident which occurs while the Covered Person is on active duty service in any Armed Forces. Send us proof of service. We will refund any premium paid for this time. (Reserve or National Guard active duty for training is not excluded unless it extends beyond 31 days.); or

    (d)    charges which:

        (1)    the Covered Person would not have to pay if he did not have insurance; or

        (2)    are in excess of Usual and Customary charges; or

    (e)    an Injury that is caused by:

        (1)    flight in an aircraft, except as a fare-paying passenger;

        (2)    flight in a space craft or any craft designed for navigation above or beyond the earth's atmosphere; or

        (3)    an ultra light, hang-gliding, parachuting or bungi-cord jumping; or

    (f)    practice or play in any sports activity, including travel to and from the activity and practice, unless specifically provided for in the Policy (see page 5 Sports Only Coverage); or

    (g)    services or treatment rendered by a Doctor, nurse or any other person who is:

        (1)    employed or retained by the Policyholder; or

        (2)    who is the Covered Person or a member of his immediate family; or

    (h)    treatment in any Veterans Administration or Federal Hospital, except if there is a legal obligation to pay; or

    (i)    cosmetic surgery, except for reconstructive surgery on an injured part of the body; or

**Page 9**

# EXCLUSIONS(Continued)

(j)   any loss which is covered by state or federal worker's compensation, employers liability, or occupational disease law; or

(k)   dental care or treatment other than care of sound, natural teeth and gums required on account of Injury resulting from an Accident while the Covered Person is covered under the Policy; or

(l)   eyeglasses, contact lenses, or hearing aids; or

(m)   disease, illness or bacterial infection (except infection resulting directly from the accidental Injury or unless this Policy is specially endorsed)

## CLAIM PROVISIONS

**NOTICE OF CLAIM:**

Written notice must be given to us within 90 days after a covered loss occurs or begins or as soon as reasonably possible. Notice can be given at our agent. Notice should include the Policyholder's name and number and the Insured's name and address.

**CLAIM FORMS:**

When we receive the notice of claim, we will send forms for filing proof of loss. (Our agent may have already supplied claim forms.) If claim forms are not sent within 15 days after notice is given, the proof requirements will be met by submitting, within the time required under PROOFS OF LOSS, written proof of the nature and extent of the loss.

**PROOF OF LOSS:**

Written proof of loss must be furnished to us at our home office in case of claim for loss for which the Policy provides periodic payment contingent upon continuing loss within 90 days after the end of the period for which we are liable. Written proof that the loss continues must be furnished to us at intervals required by us.

In case of claim for any other loss, proof must be furnished within 90 days after the date of such loss.

If that is not reasonably possible, we will not deny or reduce any claim if proof is furnished as soon as reasonably possible. Proof must, in a any case, be furnished not more than a year later, except for lack of legal capacity.

Page 10

## TIME OF PAYMENT OF CLAIMS:

Benefits due under the Policy for a loss, other than a loss for which the Policy provides installments, will be paid immediately upon receipt of due written proof of such loss.

Subject to due written proof of loss, all accrued benefits for loss for which the Policy provides installments will be paid Monthly; any balance remaining unpaid upon the termination of liability will be paid immediately upon receipt of due written proof, unless otherwise stated in the Description of Benefits.

## PAYMENT OF CLAIMS:

Benefits for the Insured's loss of life will be paid to the beneficiary named in our records, if any, at the time of payment. The benefits can be paid on one sum or, at the Insured's written request, in accordance with one of our settlement plans. If the Insured has not requested any settlement plan, the beneficiary can do so in writing after the Insured's death. If there is no named beneficiary or surviving beneficiary, the Insured's loss of life benefits will be paid in one sum to the first surviving class of the following:

    (1)     the beneficiary named to receive the Insured's proceeds under his group life insurance
             coverage through the Policyholder
    (2)     spouse;
    (3)     child or children;
    (4)     mother or father;
    (5)     sisters or brothers; or
    (6)     the estate;

of the Insured.

If we are to pay benefits to the estate or to a person who is incapable of giving a valid release, we may pay up to $1,000 to a relative by blood or marriage whom we believe is equitably entitled. This good faith payment satisfies our legal duty to the extent of that payment.

Any other accrued benefits which are unpaid at the Insured's death may, at our option, be paid either to his beneficiary or to his estate. All other benefits, unless specifically stated otherwise, will be paid to the Insured.

## PAYMENT OF CLAIMS: OTHER BENEFITS:

All other benefits will be paid to the Covered Person, if he is living, if not, we will pay his beneficiary or his estate.

Page 11

## CHANGE OF BENEFICIARY

The Insured can change the beneficiary at any time by giving us written notice. The beneficiary's consent is not required for this or any other change which the Insured may make unless the designation of beneficiary is irrevocable.

## INTOXICANTS AND CONTROLLED SUBSTANCES:

We will not be liable for any loss sustained or contracted in consequence of the Covered Person's being legally intoxicated or under the influence of any controlled substance unless administered on the advice of a Doctor.

## PHYSICAL EXAMINATION AND AUTOPSY:

We will pay the cost and have the right to have the Covered Person examined as often as reasonably necessary while the claim is pending. We can have an autopsy made at our expense unless prohibited by law. (Autopsies are not permitted in Massachusetts, Mississippi, and South Carolina.)

## LEGAL ACTIONS:

No action at law or in equity shall be brought to recover benefits under the Policy less than 60 days after written proof of loss has been furnished as required by the Policy. No such action shall be brought more than 3 years (Kansas: 5 years; South Carolina: 6 years) after the time written proof of loss is required to be furnished.

## CONDITIONAL CLAIM PAYMENT:

If a Covered Person incurs expenses for Injuries received in a covered Accident and in our opinion a third party may be liable, we will pay benefits if:

    (1)    the Covered Person first agrees in writing to refund the lesser of:
        (a)    the amount we actually paid for such expenses; or
        (b)    the amount actually received from the third party for such expenses; and
    (2)    the third party's liability is determined and satisfied whether by settlement, judgment, arbitration or otherwise.

However, if the third party's liability is satisfied in an amount less than the benefits payable under the Policy, we will pay the difference.

## RECOVERY OF BENEFITS:

We reserve the right to recover from a Covered Person any benefits we have paid to him for Injuries:

    (1)    received in a covered Accident; and
    (2)    which are covered under:
        (a)    Workers' Compensation; or
        (b)    Occupational Disease Law; or
        (c)    any Employer's Liability Insurance.

Page 12

## CLAIM PROVISIONS(Continued)

### RECOVERY OF BENEFITS (Continued)

It will be assumed that the Covered Person is in receipt of such benefits unless he gives us proof such benefits have been denied to him.

## GENERAL POLICY PROVISIONS

### ENTIRE CONTRACT; CHANGES:

The Policy, the Application of the Policyholder(a copy of which is attached), Endorsements, Riders and attached papers constitute the entire contract between the parties. If an application of any Insured is required, the application of any Insured, at our option, may also be made a part of this contract.

All statements made by the Policyholder or a Covered Person are deemed representations and not warranties. No such statement will cause us to deny or reduce benefits or be used as a defense to a claim unless a copy of the instrument containing the statement is or has been furnished to such person; or, in the event of his death or incapacity, his beneficiary or representative. After two years from the Covered Person's effective date of coverage, no such statement, except in the case of fraud or with respect to eligibility for coverage, will cause such coverage to be contested.

No change in the Policy will be valid until approved by one of our executive officers. This approval must be endorsed on or attached to the Policy. No agent may change the Policy or waive any of its provisions.

### WORKERS' COMPENSATION INSURANCE:

The Policy is not in lieu of and does not affect any requirement for coverage under any Workers' Compensation Insurance.

### RECORDS MAINTAINED:

The Policyholder or its authorized administrator will maintain records of the essential features of each Covered Person's insurance under the Policy.

We shall be permitted to examine the Policyholder's records relating to coverage under the Policy. Examination may occur at any reasonable time up to the later of:
   (1)    the two year period after the expiration of the Policyholder's coverage; or
   (2)    the final adjustment and settlement of all claims under the Policyholder's coverage.

Page 13

# Legion Insurance Company
## SCHEDULE OF BENEFITS

**Policyholder:**   Pharr-San Juan-Alamo Independent School District
P.O. Box 769
Pharr, TX 78577

**Policy Number:** AH20133485-SA        **Effective Date:** 7/31/98
**Policy Term:**   One Year              **Benefit Period:** One Year

## ELIGIBILITY REQUIREMENTS

An Eligible Person means:   All students participating in school sponsored and supervised athletic activities. Coaches, managers, trainers, and student trainers are also covered.

This Schedule provides a brief outline of the coverage and benefits provided by the Policy.  Full details are found in the appropriate Policy provisions.  Please read the Policy carefully.

☒  Sports Only Coverage (see page 5)
☒  Policyholder Functions (see page 6)

**DESCRIPTION OF HAZARDS:**   Participating in scheduled and supervised athletic activities of the Policyholder.

## DESCRIPTION OF BENEFITS:

Accidental Death, Dismemberment, or Loss of Sight
   Principal Sum                                              $20,000.00

Accidental Medical Expense Benefit
   Plan Type:
   ____ Primary
   _XX_ Full Excess

Maximum Benefit Amount Per Covered Person                      $25,000.00
   Benefit Amount                         100% of Usual & Customary Charge

Deductible Amount Per Covered Person:
   Per Injury                                                   $NONE

## RATE TABLE

Rates are determined by us based on our expectations as to future experience.  We may make any adjustments in the rates after the First Policy Term with 31 days written notice.  Notice of any change in rates will be sent to the Policyholder at least 31 days prior to the date the new rates take effect.

## MODE OF PREMIUM PAYMENT:

$135,000.00
 Grace Period: 31 days

Page 4

TOTAL P.15

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| RIO GRANDE ORTHOPAEDIC | § | |
| INSTITUTE, AND RIO GRANDE | § | |
| ORTHOPAEDIC INSTITUTE | § | |
| AMBULATORY SURGERY CENTER | § | CIVIL ACTION NO. 00-37 |
| LTD. | § | |
| | § | |
| VS. | § | |
| | § | |
| LEGION INSURANCE COMPANY, | § | |
| CLAIMS ADMINISTRATION | § | |
| SERVICES, INC., AND | § | |
| JOHN LITTLE, DBA INSURANCE | § | |
| ASSOCIATES OF THE VALLEY | § | |

## ORDER GRANTING PLAINTIFFS' MOTION FOR REMAND

ON THIS DAY, came on for consideration the Plaintiff's Motion for Remand, seeking to have the above referenced cause number remanded back to the 197ᵗʰ Judicial District Court of Cameron County from where it was removed by Defendant Legion on February 28, 2000. After considering the Removal Notice, the Motion for Remand and all other pertinent pleadings and documents, the Court is of the opinion that Plaintiffs' Motion is well taken that Legion's Removal was improper and that the case should be remanded. The Court further finds that sufficient facts exist for the imposition of attorney's fees and sanctions against Defendant Legion Insurance Company. It is therefore,

ORDERED, ADJUDGED AND DECREED, that Plaintiffs' Motion to Remand be and same is hereby in all things GRANTED and this cause be and same is hereby REMANDED back to the 197ᵗʰ Judicial District Court of Cameron County, State of Texas;

IT BE FURTHER ORDERED, that Plaintiffs are hereby awarded attorneys' fees in the

**Order Granting Plaintiffs' Motion to Remand**                                                                     1

amount of $_____, and that sanctions in the amount of $_____ are hereby

imposed upon Defendant Legion Insurance Company and are to be paid to Plaintiffs.


SIGNED THIS _____ DAY OF _____, 2000.


_____
PRESIDING JUDGE

CIMPDF - www.fesioa.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| RIO GRANDE ORTHOPAEDIC INSTITUTE, ET AL., | § | |
| Plaintiffs | § | |
| | § | |
| Vs. | § | CIVIL ACTION NO. B-00-37 |
| | § | |
| LEGION INSURANCE COMPANY, ET AL., | § | |
| | § | |
| Defendants | § | |

## PLANTIFFS' RESPONSE TO DEFENDANT LEGION INSURANCE COMPANY'S FIRST SET OF INTERROGATORIES

TO:   Legion Insurance Company, by and through its attorney of record:

Greg Pierce/Julie A. Springer
Scott, Douglass & McConnico, L.L.P.
600 Congress Avenue, Suite 1500
Austin, Texas  78701-2589

Pursuant to the Federal Rules of Civil Procedure, Plaintiffs Rio Grande

Orthopaedic Institute and Rio Grande Orthopaedic Institute Ambulatory Surgery Center,

LTD. (hereinafter RGIO and RGIO-ASC) hereby respond to Defendant Legion Insurance

Company's First Set of Interrogatories to Plaintiffs.

## INTERROGATORY RESPONSES

INTERROGATORY NO 1:

Please identify each and every person answering or assisting in the answering of
these Interrogatories and, for each person identified, specifically state the Interrogatory or

RECEIVED
OCT 3 0 2000
BY:_____

Interrogatories (by number) that person assisted in answering, as well as the documents or other things, if any, referred to in answering each respective Interrogatory.

ANSWER:

| | | |
|---|---|---|
| William Snyder, M.D. | Mark A. Weitz | Tim Weitz |
| 400 E. Dove Avenue | P.O. Box 9673 | 1411 West Avenue, Suite 200 |
| McAllen, Texas 78504 | Austin, Texas 78766 | Austin, Texas 78701 |
| 956-668-2663 | 512-322-9202 | 512-322-9202 |

INTERROGATORY NO 2:

Please identify all persons having knowledge of facts relevant to this Lawsuit.

ANSWER:

William Snyder, M.D.
Cecilia Quiroz
400 E. Dove Ave
McAllen, Texas 78504
956-686-2663
Plaintiff employee, contact through Plaintiffs only

Debra James Vance
Last Known Address
Legion Insurance Company
1 Legion Plaza
Philadelphia, Pennsylvania

Peter Holt
President Claims Administration Services
P.O. Box 3968
Boca Raton, Florida 33427
1-516-241-9500

Gil Garza
PSJA I.S.D.
Athletic Director
700 E. Gore
Pharr, Texas 78577
956-702-5697

Athletic Trainers at High Schools covered by Legion between 1998-1999.

Plaintiffs' Response to Defendant Legion Insurance Company's First Set of Interrogatories

Patients listed on Attachment 1 of this Plaintiffs' Response to Defendant Legion Insurance Company's First Set of Interrogatories.  Addresses were provided previously to Claims Administrative Services when claims were filed and Legion Insurance Company is in possession of that information.   To the extent that Legion seeks repetitive information, Plaintiffs object on the grounds that the request is unreasonably duplicative and that the information can be obtained from another source that is more convenient and less burdensome.

John Lawton
4300 Horizon North Parkway
#832
Dallas, Texas 75287
Plaintiff contract employee, contact through Plaintiff only

INTERROGATORY NO 3:

Identify and describe any communication among you, including any communications between your employees, officers, directors, agents, and/or representatives, within the last five years regarding your billing rates.

ANSWER:

Plaintiffs object to this interrogatory as vague, overly broad in terms of both time and the nature of the communications, and unduly burdensome.  "Regarding billing rates" is not only undefined, but is so broad as to literally encompass any discussion at any time regarding submitting bills to patients and/or insurance providers.  As this question is worded it asks for information that is literally impossible to ascertain because no one keeps records of conversations and/or communications of something that is as routine a part of the Plaintiffs' business as billing.  If Legion seeks to determine what Plaintiffs' billing rates are, how they are calculated, or any other aspect regarding them, such an inquiry should be made.  That information is also provided in the responses to Interrogatories numbered 7 and 8 herein below.  This question as worded cannot reasonably be answered.

INTERROGATORY NO 4:

Identify all persons to whom you provided medical services that you contend should be paid by Legion, but which have not.

ANSWER:

See Attachment 1 to this Plaintiffs' Response to Defendant Legion Insurance Company's First Set of Interrogatories.

---

INTERROGATORY NO 5:

      For each person identified in response to Interrogatory No. 4, describe the services provided to those persons for which you seek to recover in this Lawsuit.

ANSWER:

Plaintiffs object to this interrogatory on the grounds that Legion Insurance Company already has the material it is requesting and to require this information again is unduly burdensome. Plaintiffs further object on the grounds that the request is unreasonably duplicative and that the information can be obtained from another source that is more convenient, less burdensome, and less expensive. The information requested in this interrogatory was provided to Legion at the time the claims were filed between August 1998 and December 1999. Requiring the duplication of effort will unnecessarily require RGOI and RGOI-ASC to go through each file and extract the CPT code for each patient when this information is already in the hands of Legion and its co-defendant. Legion and its co-defendant Claims Administration (CAS) already have this information. Plaintiffs direct Legion to the EOB's issued by CAS that contain the requested information.

INTERROGATORY NO 6:

      For each incident of nonpayment for services provided to those persons described in response to Interrogatory No. 4, state the date(s) upon which those services were allegedly rendered.

ANSWER:

See Attachment 1 to this Plaintiffs' Response to Defendant Legion Insurance Company's First Set of Interrogatories.

INTERROGATORY NO 7:

      State the amount you contend Legion should pay for services rendered by you to each of the persons identified in response to Interrogatory No. 4 and describe the method for calculating that amount.

ANSWER:

Plaintiffs object that the request is unreasonably duplicative and that the information can be obtained from another source that is more convenient, less burdensome, and less expensive. Without waiving the foregoing, Plaintiffs respond as follows. See Attachment 1 to this Plaintiffs' Response to Defendant Legion Insurance Company's

---

Plaintiffs' Response to Defendant Legion Insurance Company's First Set of Interrogatories

First Set of Interrogatories. Plaintiffs seek the full amount billed in that it is the usual and customary reimbursement for the services provided. The method of calculation is set out in Legion's own insurance policies issued to the school districts, and calls for "usual and customary" reimbursement. Legion can find Plaintiffs' methodology within those policies under the definition of "usual and customary." Legion itself knows what this calculation is and how to apply it because from approximately August 1998 until August 1999 it paid claims in accordance with this definition. It was only after Legion and/or CAS sought to somehow limit Legion's claims exposure that it began to not pay claims. When it resumed payment, Legion and/or CAS began to use Medicare and other guidelines not only totally inconsistent with the language of the policies, but also with its own prior claims payment practices as instituted by CAS.

## INTERROGATORY NO 8:

For each person identified in response to Interrogatory No. 4, identify all accounting documents that reflect the sums charged by you to that person.

## ANSWER:

Plaintiffs object to this request as vague as to the term "accounting documents." Plaintiffs are not vendors with accounting documents. Plaintiffs' services are identified by a document known as a HCF 1500, copies of which Legion already has in its possession. Consequently, Plaintiffs object on the grounds that the request is unreasonably duplicative and that the information can be obtained from another source that is more convenient, less burdensome, and less expensive. These documents set out the procedure and the amount billed. Where the procedure is set forth twice, the document reflects what is referred to in the industry as a "Modifier 85" and represents the assistant's fee for that procedure.

## INTERROGATORY NO 9:

Identify all contracts between you and any of the persons identified in response to Interrogatory No., 4 which relate to the claims you have asserted in this Lawsuit.

## ANSWER:

Plaintiffs object to this interrogatory as vague and unduly burdensome. Without waiving the foregoing objections, Plaintiffs state that Plaintiffs have no contracts per se with individual patients, nor do Plaintiffs have contracts with any of the school districts. Plaintiffs have a claim form and an insurance information form for each patient allowing Plaintiffs to file insurance claims on their behalf. Legion is aware of these arrangements and how they apply because Legion, through its claims administrator CAS, paid claims in the proper manner for a portion of the time that the 1998-1999 school year policies were in effect.

---

Plaintiffs' Response to Defendant Legion Insurance Company's First Set of Interrogatories

INTERROGATORY NO 10:

Identify all patients to whom you have provided services, and for which services you have submitted bills to insurance companies other than Legion which have not been paid in full sum originally submitted by you.

ANSWER:

Plaintiffs object to this interrogatory as not reasonably calculated to lead to the discovery of relevant and admissible evidence. In addition, it is overly burdensome, requiring Plaintiffs to provide information on hundreds of claims that have no relationship whatsoever to this lawsuit.

INTERROGATORY NO 11:

Identify the insurance companies to whom you submitted the bills for the patients identified in response to Interrogatory No. 10.

ANSWER:

Plaintiffs object to this interrogatory as not reasonably calculated to lead to the discovery of relevant and admissible evidence. In addition, it is overly burdensome, requiring Plaintiffs to provide information on hundreds of claims that have no relationship whatsoever to this lawsuit.

INTERROGATORY NO 12:

For each incident of nonpayment described in response to Interrogatory No. 10, describe the services rendered for which you were not paid in full.

ANSWER:

Plaintiffs object to this interrogatory as not reasonably calculated to lead to the discovery of relevant and admissible evidence. In addition, it is overly burdensome, requiring Plaintiffs to provide information on hundreds of claims that have no relationship whatsoever to this lawsuit.

INTERROGATORY NO 13:

Identify any communication between you and your patients and/or your patients' insurers regarding the payment or non-payment for services provided to those persons identified in response to Interrogatory No. 10.

---

Plaintiffs' Response to Defendant Legion Insurance Company's First Set of Interrogatories

ANSWER:

Plaintiffs object to this interrogatory as not reasonably calculated to lead to the discovery of relevant and admissible evidence. In addition, it is overly burdensome, requiring Plaintiffs to provide information on hundreds of claims that have no relationship whatsoever to this lawsuit.

INTERROGATORY NO 14:

For any services provided to those persons identified in response to Interrogatory No. 10 which gave rise to a claims dispute, state the amount Plaintiffs contend they should have been paid, as well as the amount actually paid, if any.

ANSWER:

Plaintiffs object to this interrogatory as not reasonably calculated to lead to the discovery of relevant and admissible evidence. In addition, it is overly burdensome, requiring Plaintiffs to provide information on hundreds of claims that have no relationship whatsoever to this lawsuit.

INTERROGATORY NO 15:

Identify all accounting documents reflecting the sums charged for any disputed claims provided to those persons identified in response to Interrogatory No. 10.

ANSWER:

Plaintiffs object to this interrogatory as not reasonably calculated to lead to the discovery of relevant and admissible evidence. In addition, it is overly burdensome, requiring Plaintiffs to provide information on hundreds of claims that have no relationship whatsoever to this lawsuit.

INTERROGATORY NO 16:

Identify all experts who you expect to call to testify at trial, and describe the substance of the opinions and/or conclusions you expect them to render.

ANSWER:

Plaintiffs have yet to designate either a testifying expert or a consulting expert upon whom its testifying expert will rely. Upon doing so, Plaintiffs will supplement this response as required.

---

## INTERROGATORY NO 17:

Identify all experts who you do not expect to testify, but whose opinions have been reviewed by an expert you expect to call to testify at trial, and describe the opinions and/or conclusions reached by them in relation to this Lawsuit.

## ANSWER:

Plaintiffs have yet to designate either a testifying expert or a consulting expert upon whom its testifying expert will rely. Upon doing so, Plaintiffs will supplement this response as required.

## INTERROGATORY NO 18:

Describe all facts that you contend entitle you to recover from each of the Defendants.

## ANSWER:

Plaintiff objects to this request as vague, overly broad, and overly burdensome. It is also information most easily adduced at deposition, and consequently, to seek such information through this interrogatory requiring a detailed written explanation of "all" facts creates an undue burden on Plaintiffs and is therefore objectionable. Subject to these objections Plaintiffs would state as follows:

Legion issued an insurance policy, or series of insurance policies, to school districts in the Rio Grande Valley which called for the reimbursement of medical services at 100% of usual and customary. The policies were sold, marketed or otherwise submitted to the school districts for their consideration by John Little, Arnulso Oliveras and/or Insurance Associates of the Valley either directly or by these people as employees/agents of Insurance Associates of the Valley. Acting in concert with Legion/CAS, these individuals/entities caused or helped to disseminate the claim forms, and copies of the insurance policies and/or certificates wherein the conditions and terms of the policies were contained. This material was disseminated for the sole purpose of inducing and or/securing the services of medical providers for the students of the subject policies. As medical providers this material was provided to Plaintiffs and they relied upon it in providing services to the students covered under the policies.

The students of these school districts came to the Plaintiffs seeking medical/surgical services. Claim forms were provided, completed and properly submitted by Plaintiffs for the services provided to these students. Until about August of 1999, Legion Insurance Company and/or CAS paid the claims submitted by Plaintiffs in accordance with the policy provisions. In some instances, Plaintiffs and CAS/Legion would agree to a

---

Plaintiffs' Response to Defendant Legion Insurance Company's First Set of Interrogatories

discount of the fee and then the discounted amount was promptly paid at 100% of the usual and customary amount.

In August of 1999, CAS/Legion ceased paying Plaintiffs' claims until November or December of 1999. The last payment Plaintiffs received until the claims resumption was in August and represented work done in June or July of 1999. Plaintiff RGOI-ASC had just finished negotiating five settlement agreements with A&G, a claims negotiator working for CAS/Legion. Those agreements were negotiated in the same manner as those negotiated and paid up until that point. Legion/CAS failed to honor any of those agreements as they had just several months before.

In direct contravention of the Legion policy, and the representations made by Little, Insurance Associates, Oliveras, CAS and Legion, not only did Legion/CAS stop paying claims, but Legion and CAS then began the construction of a rouse to buy time and somehow explain its total delinquency in paying claims. The rouse consisted of an allegation made to the Texas Department of Insurance that the Plaintiffs claims were somehow "fraudulent." Legion/CAS hired an investigator who contacted Plaintiffs and asked to come to the Plaintiffs premises. He was given permission subject to confirming his status as an investigator and his working relationship with CAS/Legion. He never provided the requested confirmations, and, after one brief contact, never contacted Plaintiffs again. This alleged fraud allegation followed shortly after the Plaintiffs filed complaints with the Texas Department of Insurance regarding the claims paying delinquency of CAS/Legion. Correspondence from CAS to third parties in November and December of 1999 revealed that the alleged internal fraud investigation conducted by CAS revealed no fraud and CAS/Legion resumed paying claims. However, upon the resumption of claims paying, CAS/Legion began adjusting and paying claims, not in accordance with their prior practice and the terms of the policy, but by applying inappropriate and non-contractual standards to the claims. The effect was to drastically and improperly reduce the amount of the claims paid to the Plaintiffs.

Plaintiffs have conducted discovery and still must make arrangements to go to the site in Florida where much of the documentation exists on these claims. However, they believe that the Defendants' conduct in wrongfully altering the claims paying on these policies arose from the claims experience realized under the policies. In essence, CAS/Legion began to compensate for their own failure and their agents' failure to properly underwrite this business by reducing claims payments. Although Plaintiffs have been unable to absolutely tie this conduct to any particular motive, they believe that this practice was motivated in whole or in part by CAS's and/or Little's and/or, Insurance Associates' and or Oliveras' desire to re-write this business through another insurance carrier for the school year 1999-2000 and in an effort to do so took steps to conceal the true nature of the claims experience for this block of business.

---

## VERIFICATION

STATE OF TEXAS

COUNTY OF HIDALGO

KNOW ALL MEN BY THESE PRESENCES:

ON THIS DAY, personally appeared before me the person known to me to be Dr. William Snyder, who after being duly sworn on his oath deposed and stated as follows: I am William Snyder, M.D.  I am the authorized representative of Rio Grande Orthopaedic Institute and Rio Grande Orthopaedic Institute ASC, Ltd. I have read the foregoing answers to Defendant Legion Insurance Company's First Set of Interrogatories and the information contained therein is true and correct to the best of my personal knowledge.  Further affiant sayeth not.


SIGNED THIS 18th DAY OF OCTOBER, 2000.

_____
Dr. William Snyder: Affiant


SWORN TO AND SUBSCRIBED BEFORE ME, a Notary Public on this the 18th Day of OCTOBER, 2000.



_____
NOTARY PUBLIC

PATRICIA SNYDER
MY COMMISSION EXPIRES
FEBRUARY 6, 2002

Patricia Snyder
_____
PRINTED NAME OF NOTARY

---

Plaintiffs' Response to Defendant Legion Insurance Company's First Set of Interrogatories

Page 10

Respectfully submitted,

Timothy E. Weitz
Attorney-in-Charge
SBN 21117500
Jeff B. McDonald
Of Counsel
SBN 13548560
McDonald, Mackay & Weitz, L.L.P.
1411 West Avenue, Suite 200
Austin, Texas 78701
(512) 322-9202  Main Number
(512) 323-5071  Fax Number

Mark A. Weitz
Of Counsel
SBN 21116500
Law Office of Mark A. Weitz
P.O. Box 9673
Austin, Texas  78766-9673
(512) 322-9202 Main Number
(512) 323-5071 Fax Number

Reynaldo Ortiz
Of Counsel
Law Office of Reynaldo Ortiz, P.C.
SBN 15324275
801 Nolana, Suite 202
McAllen, Texas  78504
(956) 687-4567  Phone
(956) 631-1384  Fax

ATTORNEYS FOR PLAINTIFFS

---

Plaintiffs' Response to Defendant Legion Insurance Company's First Set of Interrogatories

Page 11

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this the 30th day of October, 2000, a true and correct copy of the foregoing Plaintiffs' Response to Defendant Legion Insurance Company's First Set of Interrogatories has been served on the following parties and in the manner set forth below:

Greg Pierce/Julie A. Springer
Scott, Douglass & McConnico, L.L.P.
600 Congress Avenue, Suite 1500
Austin, Texas  78701-2589
(Hand Delivery)

Charles M. Jefferson
One Riverwalk Place, Suite 1000
700 North St. Mary's Street
San Antonio, Texas  78205-3585
(Certified Mail-Return Receipt Requested)

Elizabeth G. Neally/Michael Fisher
Roerig, Oliveira & Fisher, L.L.P.
855 West Price Road, Suite 9
Brownsville, Texas  78520
(Certified  Mail-Return Receipt Requested)

Timothy E. Weitz

---

# ATTACHMENT 1 TO PLAINTIFFS' RESPONSE TO DEFENDANT LEGION INSURANCE COMPANY'S FIRST SET OF INTERROGATORIES

ASCL_sgoort Data .xls

| CLAIM | PATIENT | PATIENT NAME | NAME | FILED | REFILED | SERVICE | ORIGINAL | LEGION | LEGION PMT | LEGION ADJ | LEGION BAL | Note |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 261 | 137 | CANTU | IRENE | 10/21/08 | | 10/21/08 | $3,300.00 | $3,300.00 | $3,300.00 | | $0.00 | |
| 62 | 153 | GONZALEZ | ROBERTO | 10/23/08 | 12/9/98 | 11/7/08 | $3,225.00 | $362.00 | $3,360.00 | | $4,663.00 | Cortus No - Out to PI |
| 311 | 128 | RALEIGH | CHRISTOPHER | 11/25/08 | 11/7/99 | 10/18/08 | $6,360.00 | $3,360.00 | $3,360.00 | | | |
| 631 | 130 | ALVARADO | ANTONIO | 11/27/08 | | 10/17/08 | $12,218.00 | $11,215.00 | $11,215.00 | | | |
| 108 | 108 | PEREZ | EDUARDO | 11/27/08 | | | $4,420.00 | $0.00 | | $1,000.00 | | |
| 132 | 132 | DIAZ | ERIK | 11/09/08 | | 10/20/08 | $4,370.00 | $4,370.00 | $4,370.00 | $1,000.00 | | |
| 84 | 168 | AVALOS | FRANCISCO | 11/27/08 | | 11/12/08 | $4,725.00 | $4,370.00 | $4,370.00 | $1,000.00 | | |
| 180 | 180 | GUZMAN | YOANA | 11/23/08 | | 11/21/08 | $8,725.00 | $8,725.00 | $8,725.00 | $1,000.00 | | |
| 1061 | 1061 | GABRIELA | GABRIELA | 11/03/09 | | 10/13/08 | $7,000.00 | $7,000.00 | $7,725.00 | $1,000.00 | | |
| 121 | 131 | GARZA | JUAN | 11/03/09 | | 9/20/08 | $5,720.00 | $4,720.00 | $4,720.00 | $1,000.00 | | |
| 1081 | 108 | FERNANDEZ | DONNE | 11/02/09 | | 10/13/08 | $7,000.00 | $7,000.00 | $5,620.00 | $970.00 | | |
| 1091 | 120 | QUINTALILLA | OSCAR | 12/23/08 | | 11/14/08 | $4,620.00 | $4,620.00 | $5,620.00 | $0.00 | $10,188.80 | Not Refiled - PI Balance |
| 201 | 215 | SANDOVAL | JUAN | 1/17/99 | | 12/17/08 | $3,785.00 | $3,785.00 | $3,785.00 | | $4,960.00 | Refiled |
| 1071 | 230 | GARZA | SUSIE | 1/17/99 | | 12/16/08 | $8,000.00 | $8,000.00 | $8,000.00 | $643.00 | | Balance is split |
| 1141 | 241 | MARROQUIN | OSCAR | 1/10/99 | | 1/16/99 | $7,680.00 | $7,680.00 | $7,680.00 | $643.00 | | |
| 2161 | 216 | SANDOVAL | ROSA | 1/24/99 | | 1/21/08 | $17,530.00 | $17,530.00 | $7,343.31 | | $9,852.00 | Not Refiled - PI Balance |
| 2141 | 244 | LOPEZ | HUGO | 2/5/99 | | 1/6/99 | $5,000.00 | $5,000.00 | $5,000.00 | | | Refiled |
| 2141 | 221 | MARTINEZ | CHRISTINA | 2/27/99 | 11/7/99 | 10/23/08 | $4,745.00 | $4,745.00 | $4,000.00 | $1,000.00 | | |
| 2141 | 221 | MARTINEZ | AMANDA | 2/27/99 | | 2/25/99 | $17,920.00 | $17,920.00 | $13,400.34 | $4,514.86 | | |
| 2181 | 265 | CANO | ARMANDO | 3/24/09 | | 3/9/09 | $7,080.00 | $7,080.00 | $8,095.00 | $1,000.00 | | |
| 3071 | 318 | DE LA GARZA | ADAN | 4/5/99 | | 3/20/08 | $3,765.00 | $3,765.00 | $3,745.00 | $1,000.00 | $2,738.00 | Not Refiled |
| 3021 | 214 | SALINAS | ERICA | 4/13/99 | | 3/20/08 | $7,080.00 | $3,135.00 | $3,057.00 | | | |
| 3481 | 337 | PEDRAZA | BRIANA | 5/13/99 | 12/18/08 | 4/25/99 | $10,185.00 | $13,135.00 | $1,057.70 | $0.00 | | Not Refiled |
| 3421 | 382 | CHAVEZ | RENE | 5/27/99 | | 5/19/99 | $6,580.00 | $0.00 | $0.00 | | | |
| 3371 | 364 | JIMENEZ | SARAH | 5/29/99 | | 5/19/99 | $8,580.00 | $8,580.00 | $7,985.00 | $1,000.00 | | |
| 3521 | 362 | CHAVEZ | JENNIFER | 5/19/99 | 11/7/99 | 5/19/99 | $12,970.00 | $12,970.00 | $1,453.00 | | | |
| 3521 | 362 | CHAVEZ | REBECCA | 5/19/99 | 11/7/99 | 6/19/99 | $7,180.00 | $7,180.00 | $150.00 | | | |
| 3821 | 364 | STOKES | MICHELLE | 6/02/99 | | 6/18/99 | $4,750.00 | $0.00 | $0.00 | $3,100.00 | | |
| 3841 | 342 | CHAVEZ | GENE | 7/2/99 | | 6/18/99 | $17,245.00 | $17,245.00 | $13,840.00 | $3,949.00 | | |
| 3411 | 339 | GARCIA | CHANEY | 7/2/99 | | 7/22/99 | $4,955.00 | $4,955.00 | $950.00 | | | Held During Appeal - not Legion W/O |
| 3391 | 339 | CARDENAS | TRISHA | 8/10/99 | | 7/18/99 | $3,780.00 | $3,780.00 | $150.00 | | | Held During Appeal - not Legion W/O |
| 3531 | 386 | RIOS | LUIS | 8/10/99 | | 7/18/99 | $13,370.00 | $13,370.00 | $1,009.31 | $0.00 | | |
| 3731 | 370 | SILVESTRE | SILVESTRE | 9/9/99 | 11/7/99 | 8/2/99 | $12,045.00 | $0.00 | $0.00 | | $2,736.00 | Not During Appeal - not Legion W/O |
| 3231 | 382 | GUTIERREZ | JOSE | 9/20/99 | 11/7/99 | 6/9/99 | $17,043.00 | $17,043.00 | $1,674.95 | | $15,470.05 | Not Refiled - PI Balance |
| 3232 | 382 | SANTA MARIA | JOSE | 9/20/99 | | 6/20/99 | $9,020.00 | $9,000.00 | $1,000.00 | $0.00 | | |
| 3700 | 113 | ESPARZA | ALDALBERTO | 9/30/99 | | 8/27/99 | $7,515.00 | $5,690.14 | $600.35 | $0.00 | | |
| 3701 | 302 | CANTU | BEN | 9/22/99 | | 9/27/99 | $7,315.00 | $3,488.35 | $608.35 | $0.00 | | |
| 401 | 135 | ALVARADO | SCARLET | 1/1/99 | | 1/1/99 | $4,320.00 | $3,485.00 | $3,485.00 | $185.00 | | |
| 1602 | 302 | CASTILLO | DANIEL | 11/1/99 | | 5/20/99 | $7,965.00 | $2,660.00 | $2,475.00 | | | |
| 1602 | 514 | VALDEZ | JULIANA | 11/11/99 | | 8/46.00 | $8,445.00 | $8,845.00 | | $8,645.00 | | Cortus Denied, Refiled, Adjusted off w/2005 - Account at 0.00, offset line/line bal |
| 3401 | 370 | GARZA | MICHELLE | 11/18/99 | | 6/17/99 | $13,470.00 | $13,470.00 | $2,759.00 | | | Weitzer Courtesy Adj. |
| 3601 | 427 | PENA | ISRAEL | 9/2/99 | | 9/795.00 | $9,795.00 | $495.05 | $495.05 | | | $28 out to BCBS of TX |
| 3621 | 413 | VILLALPANDO | JOEY | 12/15/99 | | 9/9/99 | $3,765.00 | $0.00 | $0.00 | | $11,311.00 | Pending - never refiled |
| 1231 | 427 | PENA | CLAUDIA | 11/11/99 | | 7/23/99 | $12,070.00 | $0.00 | $0.00 | | $3,785.00 | Not Refiled - PI Balance - Cortus Denied |
| 2621 | 488 | WATTS | CLAUDIA | 11/30/00 | | 7/24/99 | $12,070.00 | $0.00 | $0.00 | | | Legion was Tertiary |
| 3021 | 407 | RODRIGUEZ | MARIA | 1/2/00 | | 8/9/99 | $7,665.00 | $12,220.00 | $0.00 | | | Legion was Tertiary |
| TOTALS | 223 | SALDANA | JENNIE | 2/1/00 | | 1/5/99 | $395,310.00 | $265,806.85 | $151,516.45 | $25,144.60 | $90,125.74 | Pending to Prudential - Refiled 1/29/00 |
| | | | | | | | | $0.00 | $0.00 | $0.00 | $265,808.85 | Legion was Tertiary |

CONFIDENTIAL

| ASC CLAIM | Pat # | PATIENT | NAME | FILED | REFILED | SERVICE | ORIGINAL | LEGION | LEGION PAT | LEGION ADJ | LEGION BAL | # NOTES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 444302 | 7810 | SALINAS | JESSE | 10/1/98 | 2/5/00 | 9/2/98 | $8,140.00 | $1,300.00 | $1,075.00 | | $225.00 | Bad Primary Writeoff of $3,656.00 |
| 444431 | 8608 | FERNANDEZ | JUAN | 9/3/98 | | 9/29/98 | $3,300.00 | $3,300.00 | $2,488.00 | | $1,312.00 | |
| 454441 | 7834 | PEREZ | EDUARDO | 9/3/98 | | 8/20/98 | $3,800.00 | $3,800.00 | | | | |
| 454432 | 8007 | ESPARZA | ADALBERTO | 1/15/99 | | 10/3/98 | $7,355.00 | $4,207.22 | $125.91 | | $4,207.22 | BAD Writeoff on Primary |
| 523612 | 8007 | ESPARZA | ADALBERTO | 8/4/99 | | 10/9/98 | $7,355.00 | $8,651.36 | $1,156.10 | | $0,735.45 | Patient Balance |
| 457901 | 8066 | GARZA | GABRIELA | 10/23/98 | | 10/13/98 | $5,149.00 | $5,149.00 | $3,992.90 | | $350.31 | |
| 444431 | 7080 | RALEIGH | CHRISTOPHER | 10/19/98 | | 10/15/98 | $2,528.00 | $2,528.00 | $2,177.89 | | | |
| 444781 | 7887 | ALVARADO | ANTONIO | 10/23/98 | | 10/17/98 | $4,028.00 | $4,028.00 | $3,895.00 | | $4,418.80 | |
| 457721 | 8073 | CRUZ | ERIK | 1/23/99 | | 10/19/98 | $4,149.00 | $4,149.00 | $3,900.00 | | | |
| 472681 | 8207 | CANTU | IRENE | 9/19/99 | | 10/21/98 | $3,149.00 | $3,149.00 | $1,512.00 | | $1,538.50 | |
| 474651 | 8260 | RODRIGUEZ | ROSA | 10/1/98 | | 10/21/98 | $3,300.00 | $3,300.00 | $82.00 | | $9.00 | |
| 476921 | 8403 | GONZALEZ | ROBERTO | 11/6/98 | 8/1/26/00 | 11/6/98 | $2,060.00 | $82.00 | $82.00 | | $0.00 | |
| 480041 | 8121 | ALVARADO | ANNA | 12/4/98 | | 11/7/98 | $5,122.00 | $5,122.00 | | | | Pending Certus |
| 481081 | 8412 | QUINTANILLA | FRANCISCO | 7/2/99 | | 11/12/98 | $5,122.00 | $5,122.00 | $2,500.00 | | $2,218.00 | |
| 490022 | 3056 | CASTILLO | DONNIE | 1/23/99 | | 11/14/99 | $4,928.00 | $4,926.00 | $2,160.00 | | $2,748.00 | |
| 498651 | 5094 | GUZMAN | SCARLET | 11/9/99 | | 11/21/98 | $5,300.00 | $4,399.00 | | | $4,399.00 | |
| 468512 | 8501 | SALINAS | YOANA | 12/23/98 | | 11/23/98 | $10,934.00 | $10,934.00 | $7,084.36 | | $3,849.64 | Bad Primary Writeoff of $4,551.60 |
| 518279 | 8513 | SANDOVAL | ERICA | 12/27/98 | | 12/7/98 | $9,420.00 | $4,000.00 | $810.65 | | $256.15 | |
| 510821 | 8812 | SALDANA | OSCAR | 3/24/99 | | 12/22/99 | $6,184.00 | $5,122.00 | | | | |
| 518279 | 5650 | MARTINEZ | JEANIE | 2/7/99 | | 1/4/99 | $21,714.00 | $21,714.00 | $4,004.20 | | $0.00 | |
| 518279 | 5662 | GARCIA | CHRISTINA | 4/9/99 | | 1/14/99 | $18,060.00 | $18,060.00 | $26,707.89 | | $14,947.00 | |
| 518279 | 5562 | GARCIA | JUAN | 1/19/99 | | 1/18/99 | $21,714.00 | $21,714.00 | $3,982.09 | | $14,782.00 | |
| 520301 | 8439 | MARROQUIN | SUSIE | 1/19/99 | | 1/16/99 | $9,420.00 | $9,420.00 | $3,982.10 | | $5,427.11 | |
| 511871 | 8706 | SANDOVAL | OSCAR | 1/19/99 | | 1/21/99 | $13,778.00 | $13,778.00 | $10,734.00 | | $6,990.00 | Extra Writeoff of $3,358.00 posted in error |
| 520201 | 8803 | LOPEZ | HUGO | 2/2/99 | | 1/19/99 | $2,500.00 | $2,500.00 | $1,046.40 | | $1,456.00 | |
| 520201 | 8808 | MARIN | AMANDA | 2/16/99 | | 2/16/99 | $10,934.00 | $10,934.00 | $2,584.80 | | $8,350.00 | |
| 520081 | 8157 | CANO | ARMANDO | 4/5/99 | | 3/9/99 | $10,144.00 | $10,144.00 | $4,042.80 | | $6,101.50 | |
| 544362 | 7754 | CANTU | BEN | 4/9/99 | | 3/27/99 | $4,500.00 | $4,500.00 | $1,454.15 | | $3,154.00 | |
| 544361 | 8410 | DE LA GARZA | ADAM | 4/9/99 | | 3/2/00 | $5,300.00 | $5,300.00 | $94.10 | | $0.09 | |
| 540241 | 8851 | PEDRAZA | BRIANA | 8/4/99 | | 3/26/99 | $3,080.00 | $3,080.00 | $1,075.40 | | $13,745.94 | |
| 560241 | 8442 | GUTIERREZ | SILVESTRE | 5/13/99 | | 5/4/99 | $20,810.00 | $20,810.00 | $7,084.36 | | $16,081.43 | |
| 574841 | 8905 | VALDEZ | MICHELLE | 5/13/99 | | 5/15/99 | $24,758.00 | $24,758.00 | $6,186.55 | | | |
| 564701 | 8868 | JIMENEZ | SARAH | 8/1/99 | | 5/15/99 | $18,324.00 | $18,324.00 | $7,064.36 | | $9,259.64 | |
| 544712 | 8622 | CARDENAS | TRISHA | 7/2/99 | | 5/19/99 | $17,242.00 | $13,682.00 | | | | |
| 563001 | 8973 | CHAVEZ | RENE | 5/27/99 | 8/13/99 | 5/19/99 | $17,242.00 | $16,324.00 | | | $16,324.00 | Misposted 7084.36 Adj as Pmt |
| 564712 | 8663 | CHAVEZ | DANIEL | 7/2/99 | | 5/20/99 | $4,320.00 | | | | | Pending to BCBS |
| 564121 | 8085 | CASTILLO | JENNIFER | 6/1/99 | 2/29/00 | 5/26/99 | $14,710.00 | $14,710.00 | | | $14,710.00 | |
| 564042 | 8333 | STOKES | REBECCA | 7/2/99 | 2/29/00 | 5/26/99 | $3,122.00 | $3,421.50 | $1,780.00 | | $1,631.50 | Certus Pending - no action since 7/99 |
| 545012 | 8417 | RIOS | JULIANA | 8/2/99 | | 5/26/99 | $19,962.00 | $13,579.00 | $0.00 | | $13,579.00 | Courtesy Adjustment |
| 564611 | 8832 | SANTA MARIA | LUIS | 7/2/99 | | 6/30/99 | $18,324.00 | $18,324.00 | | | | |
| 564762 | 8373 | CHAVEZ | JOSE | 7/26/99 | 10/2/99 | 7/17/99 | $5,908.00 | $5,676.40 | $320.60 | | $6,355.80 | Bad Primary Writeoff of $6,859.00 - pending Legion claim |
| 566511 | 8915 | RODRIGUEZ | RENE | 4/4/00 | | 7/23/99 | $5,800.00 | $5,800.00 | $1,012.80 | | $4,377.20 | Pending to Second carrier |
| 600020 | 8307 | VILLALPANDO | JOEY | 2/29/00 | | 8/8/99 | $9,888.00 | $165.00 | | | $165.00 | Courtesy Adjustment |
| 600003 | 8036 | CHAVEZ | ISRAEL | 11/4/99 | | 8/24/99 | $10,600.00 | $226.60 | $226.60 | | $5,697.10 | Bad Primary Writeoff of $12,506.22 was posted |
| 631382 | 8904 | WATTS | CLAUDIA | 1/0/00 | 2/3/00 | 10/23/99 | $17,242.00 | $14,166.52 | $452.66 | | $13,312.84 | Error - Primary Writeoff |
| | | | | | | | $452,792.00 | $342,241.85 | $103,345.40 | | $173,447.10 | $64,849.35 |
| | | | | | | | | | $342,241.85 | | | $342,241.85 |

| ACC? | CLAIM | PMT | PATIENT | NAME | | FILED | REFILED | SERVICE | ORIGINAL | LEGION | LEGION PMT | LEGION ADJ | LEGION BAL | NOTES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 47262 | 7827 | LOZANO | JORGE | | | 2/2/00 | | 2/2/00 | $2,236.00 | $2,236.00 | $1,953.65 | $482.35 | | Pat Bal, Pending claim |
| 42863 | 7847 | LOZANO | JORGE | | | 4/5/99 | 3/18/00 | 8/2/99 | $3,300.00 | $3,300.00 | $0.00 | $0.00 | $3,300.00 | |
| 41962 | 7873 | HERNANDEZ | JOSE | | | 4/2/99 | | 8/3/99 | $1,066.00 | $481.99 | $461.99 | $0.00 | $0.00 | |
| 44337 | 7887 | ALVARADO | ANTONIO | | | 9/9/99 | | 9/3/99 | $1,186.00 | $1,186.00 | $823.80 | $262.20 | $0.00 | |
| 44431 | 7842 | REYNA | DANIEL | | | 9/13/99 | 1/5/99 | 9/11/99 | $2,340.00 | $2,340.00 | $1,390.00 | $960.00 | $0.00 | |
| 44541 | 7829 | MONROY | EDDIE | | | 9/13/99 | 1/5/99 | 9/12/99 | $1,138.00 | $1,138.00 | $1,003.88 | $138.12 | $0.00 | |
| 46942 | 7833 | HUERTA | ELOY | | | 12/14/99 | | 9/13/99 | $1,250.00 | $1,739.00 | $498.00 | $0.00 | $0.00 | |
| 46912 | 7842 | TREVINO | JONATHAN | | | 9/13/99 | | 9/13/99 | $1,250.00 | $498.00 | $0.00 | $708.00 | $0.00 | Extra $30.00 W/O Error |
| 41471 | 7971 | TREVINO | JORGE | | | 9/17/99 | | 9/16/99 | $1,533.00 | $778.42 | $73.42 | $705.00 | $0.00 | |
| 46942 | 8014 | BRISENO | ANTHONY | | | 9/22/99 | | 9/15/99 | $1,077.00 | $1,533.00 | $1,431.45 | $102.55 | $0.00 | Never Filed - bad DE |
| 45311 | 8001 | GOYA | VICTOR | | | 9/28/99 | | 9/21/99 | $1,462.00 | $472.97 | $318.24 | $452.93 | | |
| 43131 | 8026 | CARDENAS | ABLE | | | 10/14/99 | | 10/6/99 | $1,187.00 | $187.70 | $0.30 | $187.30 | $0.00 | |
| 46962 | 8226 | ORTIZ | EZ | | | 11/2/99 | | 10/9/99 | $1,748.00 | $1,740.00 | $1,400.49 | $344.40 | $0.00 | |
| 42882 | 8177 | LUCIO | ABLE | | | 10/14/99 | | 10/6/99 | $1,121.00 | $873.33 | $697.39 | $177.81 | $0.00 | |
| 46241 | 7874 | ROSALES | ELENO | | | 10/7/99 | | 10/11/99 | $1,186.00 | $1,186.00 | $1,153.65 | $35.35 | $0.00 | |
| 48721 | 7860 | RALEIGH | CHRISTOPHER | | | 10/14/99 | | 10/12/99 | $1,402.00 | $1,402.00 | $1,250.70 | $151.30 | $0.00 | |
| 49001 | 8249 | TREVINO | CYNTHIA | | | 10/14/99 | 1/5/99 | 10/5/99 | $1,040.00 | $1,040.00 | $960.50 | $49.50 | $0.00 | |
| 46361 | 8221 | RODRIGUEZ | WALLY | | | 10/22/99 | | 10/21/99 | $1,648.00 | $1,648.00 | $1,512.19 | $133.81 | $0.00 | |
| 47981 | 3678 | HERNANDEZ | PORFIRIO | | | 11/11/99 | | 10/24/99 | $1,186.00 | $823.20 | $923.90 | $285.20 | $0.00 | |
| 47161 | 8298 | VASQUEZ | RICARDO | | | 1/1/99 | | 11/4/99 | $1,188.00 | $1,188.00 | $879.00 | $444.94 | $750.44 | Patient Balance |
| 47291 | 8412 | QUINTANILLA | RONNIE | | | 1/14/99 | 1/5/99 | 11/4/99 | $1,130.00 | $1,130.00 | $887.30 | $257.00 | $0.00 | |
| 49371 | 8483 | RODRIGUEZ | JOEY | | | 11/4/99 | | 11/2/99 | $1,461.00 | $1,461.00 | $1,411.40 | $50.41 | $0.00 | |
| 49271 | 8633 | ROCELIO | ROCELIO | | | 11/24/99 | | 11/17/99 | $1,116.00 | $1,071.00 | $1,153.65 | $318.00 | $0.00 | |
| 50281 | 7768 | AVILA | FRANK | | | 1/1/99 | | 1/12/99 | $1,186.00 | $1,148.00 | $1,148.40 | $48.60 | $0.00 | |
| 50261 | 8187 | GONZALEZ | NIDIA | | | 1/1/99 | | 1/4/99 | $1,148.00 | $1,148.00 | $1,000.85 | $38.33 | $0.00 | |
| 50781 | 8888 | JIMENEZ | SARAH | | | 1/22/99 | | 1/20/99 | $1,354.00 | $1,354.00 | $1,000.15 | $0.35 | $0.00 | |
| 51081 | 8931 | BELTRAN | RICKY | | | 1/22/99 | | 1/20/99 | $1,127.00 | $1,127.00 | $1,046.10 | $80.80 | $0.00 | |
| 51281 | 7081 | MARTINEZ | LISA | | | 2/1/99 | | 2/5/99 | $1,008.00 | $1,000.00 | $925.20 | $83.80 | $0.00 | |
| 52641 | 9173 | PEREZ | HUGO | | | 3/3/99 | | 3/4/99 | $1,116.00 | $1,116.00 | $787.21 | $328.79 | $0.00 | |
| 52641 | 8013 | LOPEZ | JUAN | | | 3/3/99 | | 2/5/99 | $1,223.00 | $1,223.00 | $862.40 | $303.40 | $0.00 | |
| 54119 | 9443 | GUTIERREZ | ANGELA | | | 8/19/99 | 4/11/99 | 8/26/99 | $1,188.00 | $1,189.00 | $1,148.56 | $40.44 | $0.00 | ERROR $870.13 Credit Balance - Error |
| 57672 | 7097 | LUPA | CHRISTINA | | | 9/2/99 | | 9/7/99 | $1,042.00 | $182.53 | $182.53 | $0.00 | $0.00 | Pending |
| 61873 | 138 | GARCIA | STEPHANIE | | | 2/7/00 | | | $3,470.00 | $3,470.00 | | | $3,470.00 | Courtesy Adjustment |
| 64565 | 9003 | VALDEZ | MICHELLE | | | 11/17/99 | 2/2/00 | 11/6/99 | $2,803.00 | $57,569.91 | $29,026.14 | $16,057.99 | | |
| | | | | | | | | | $10,324.00 | $10,324.00 | $0.00 | $10,324.00 | | |
| | | | | | | | | | $62,893.00 | | | | $8,805.44 | |
| | | | | | | | | | | | | | $37,598.95 | |

35

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### -BROWNSVILLE DIVISION-

United States District Court
Southern District of Texas
ENTERED

DEC 21 2000

Michael N. Milby
By Deputy Clerk

| | | |
|---|---|---|
| RIO GRANDE ORTHOPAEDIC INSTITUTE, AND RIO GRANDE ORTHOPAEDIC INSTITUTE AMBULATORY SURGERY CENTER, LTD., | § § § § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. B-00-037 |
| LEGION INSURANCE COMPANY, CLAIMS ADMINISTRATION SERVICES, INC., AND JOHN LITTLE, D/B/A INSURANCE ASSOCIATES OF THE VALLEY, | § § § § § § § | |
| Defendants. | § | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Pending before the Court is Plaintiffs' Motion for Leave to File First Amended Petition (Docket No. 20) as well as Legion Insurance Company's Response in Opposition to Plaintiffs' Motion for Leave to File First Amended Petition (Docket No. 26).

## BACKGROUND

According to Plaintiffs' Original Petition (Docket No. 1), Rio Grande Orthopaedic Institute and Rio Grande Orthopaedic Institute Ambulatory Surgery Center, Ltd., are surgical clinics operating in McAllen, Texas. The defendants are Legion Insurance Company ("Legion"), Claims Administration Services, Inc. ("CAS") and John Little d/b/a Insurance Associates of the Valley

1

RECEIVED
DEC 27 2000
BY
USDC

("Little"). Legion and CAS are foreign corporations with permits to do business in Texas. Little is a Texas resident.

The gravamen of Plaintiffs' Petition is that Little sold Legion accident policies to school districts in the Rio Grande Valley. Legion stopped paying claims under these policies.

Legion removed the case to this Court on February 28, 2000. Legion asserted that this Court had diversity jurisdiction because Little, the only non-diverse defendant, had been fraudulently joined. On March 24, 2000, plaintiffs filed a Motion to Remand (Docket No. 2), arguing that Little had not been fraudulently joined. On June 28, 2000, this Court denied the motion to remand. The Court concluded that there was no possibility of a cause of action against Little because:

(1)     plaintiffs' claims for misrepresentation of the policy could not succeed because it's claim alleged only a failure to pay claims in accord with the policy, not misrepresentation of the terms of the policy;

(2)     no breach of contract claim could exist against Little because he was a disclosed agent; and

(3)     no misrepresentation claim could exist regarding the Castillo claim because plaintiffs were aware that the Castillo claim was not covered by the policy.

On September 25, 2000, plaintiffs filed their Motion for Leave to File First Amended Petition (Docket No. 20). That motion sought leave to file an amended petition adding two non-diverse parties – Insurance Associates of the Valley ("IAV") and Amulso Oliveras ("Oliveras") – as defendants. The two new parties are the corporate entity that employs John Little and the owner of that corporate entity. Other than adding the new parties, Plaintiffs' First Amended Petition does not substantively alter the plaintiffs' allegations.

2

## DISCUSSION

Plaintiffs assert that defendant Little acted as the agent of defendants CAS and Legion, or,

in the alternative, defendant Little acted as an employee of IAV and/or Oliveras, and one or both was

the agent of defendants CAS and Legion. However, with regard to plaintiffs' cause of action, any

distinction between Little as agent of CAS/Legion and IAV or Oliveras as agents of CAS/Legion is

purely artificial. The Court's finding that plaintiffs has no viable cause of action against Little holds

equally true for IAV and Oliveras. After applying the proper analysis for post-removal joinder of

nondiverse defendants as dictated by the Fifth Circuit in *Hensgens v. Deere &Co.*, 833 F.2d 1179

(5th Cir. 1987), the Court finds that the equities favor denying Plaintiffs' Motion for Leave to File

First Amended Petition. To deprive the existing defendants of their right to a federal forum by the

joinder of parties against whom plaintiffs have no viable claim for relief would not be equitable. *See*

*Cobb v. Delta Exports, Inc.*, 186 F.3d 675, 678 (5th Cir. 1999)("A request to join a party against

whom recovery is not really possible and whose joinder would destroy subject matter jurisdiction

... would never be granted."); *Williams v. Vincent Intern., Inc.*, 192 F.R.D. 544, 548 (S.D. Miss

2000). Accordingly, the Court should exercise its inherent power to recall its judgment and

withdraw its order permitting plaintiffs to file their first amended petition. *See Melancon v. Texaco,*

*Inc.*, 659 F.2d 551 (5th Cir. 1981)(The district court "possesses the inherent procedural power to

reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient.").

IT IS therefore **RECOMMENDED** that the Clerk of the Court be directed to **VACATE** the

Court's earlier Order Granting Plaintiffs' Motion for Leave to File First Amended Petition (Docket

No. 22). After careful consideration of said matter, it is **RECOMMENDED** that Plaintiffs' Motion

for Leave to File First Amended Petition (Docket No. 20) be **DENIED**.

3

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415 (5th Cir. 1996).

DONE at Brownsville, Texas, this 20th day of December, 2000.

John Wm. Black
United States Magistrate Judge

4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### -BROWNSVILLE DIVISION-

| | | |
|---|---|---|
| RIO GRANDE ORTHOPAEDIC INSTITUTE, AND RIO GRANDE ORTHOPAEDIC INSTITUTE AMBULATORY SURGERY CENTER, LTD., | § § § § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. B-00-037 |
| LEGION INSURANCE COMPANY, CLAIMS ADMINISTRATION SERVICES, INC., AND JOHN LITTLE, D/B/A INSURANCE ASSOCIATES OF THE VALLEY, | § § § § § § | |
| Defendants. | § § | |

## ORDER

Before the Court is Magistrate Judge's Report and Recommendation on the above-referenced cause of action. After a de novo review of the entire file, it is the opinion of this Court that the Magistrate Judge's Report and Recommendation of December 20, 2000 should be **ADOPTED**.

IT IS ORDERED that the Clerk of the Court **VACATE** the Court's earlier Order Granting Plaintiffs' Motion for Leave to File First Amended Petition (Docket No. 22). IT IS FURTHER ORDERED that Plaintiffs' Motion for Leave to File First Amended Petition (Docket No. 20) be **DENIED**.

DONE in Brownsville, Texas, on this _____ day of _____, 2001.

_____
Filemon B. Vela
United States District Court Judge



# UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS

**MICHAEL N. MILBY**
CLERK OF COURT
P O BOX 61010
HOUSTON, TEXAS 77208

www.txs.uscourts.gov

12/27/00

To:  **Gregory A Pierce (aty)**

Re:  Notice of Entry of Order or Judgment

---

Enclosed Order or Judgment entered in:

case number:  1:00-cv-00037

instrument number: 35

If after three attempts this fax fails, then we will print this notice and mail it to you.  For questions, please call (713) 250-5768.

Number of pages including cover sheet: 6