65

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

**OCT 0 9 2001**

Michael N. Milby
Clerk of Court

RIO GRANDE ORTHOPAEDIC
INSTITUTE, ET AL ,

§
§
§

Plaintiffs,

§
§

V

§
§

CIVIL ACTION NO  00-37

LEGION INSURANCE COMPANY,
ET AL ,

§
§
§

Defendants

§
§

## JOINT PRE-TRIAL ORDER

I.    **Appearance of Counsel**

   **Plaintiffs**

   Rio Grande Orthopaedic Institute
   Rio Grande Orthopaedic Institute Ambulatory Surgery Center, Ltd.

   **Plaintiffs' Counsel**

   Timothy Weitz, Attorney-in-Charge
   State Bar No. 21117500
   Jeff B  McDonald, Of Counsel
   State Bar No. 13548560
   McDonald, Mackay & Weitz, L.L.P.
   1411 West Avenue, Suite 200
   Austin, Texas 78701
   512-322-9202
   512-445-4995 (fax)

   Reynaldo Ortiz, Of Counsel
   State Bar No  15324275
   Federal ID No  3767
   Law Office of Reynaldo Ortiz
   1109 W  Nolana, Suite 204
   McAllen, Texas 78504
   956-687-4567
   956-631-1384 (fax)

Mark A Weitz, Of Counsel
State Bar No. 21116500
5520 North "C" Street
McAllen, Texas 78504
956-686-2663
956-686-5289 (fax)

## Defendants

Legion Insurance Company ("Legion")

Claims Administration Services, Inc ("CAS")

## Legion Insurance Company's Counsel

Greg Pierce, Attorney-in-Charge
State Bar No. 15994250
SDT Admission No. 13785
Scott, Douglass & McConnico, LLP
One American Center
600 Congress Avenue, 15th Floor
Austin, Texas 78701
512-495-6300
512-474-0731 (fax)

Julie Springer, Of Counsel
State Bar No. 18966770
Scott, Douglass & McConnico, LLP
One American Center
600 Congress Avenue, 15th Floor
Austin, Texas 78701
512-495-6300
512-474-0731 (fax)

In addition, Legion may associate other counsel before time of trial.

## Claims Administration Services, Inc.'s Counsel

Charles M Jefferson
State Bar No 10605500
Law Office of Charles M Jefferson
700 N St Mary's St, Suite 1000
San Antonio, Texas 78205
210-227-4182
210-227-5514 (fax)

2

315646

2.   **STATEMENT OF THE CASE**

**Position of Plaintiffs**

The Plaintiffs are an orthopaedic surgery clinic and an outpatient surgery center in McAllen, Texas  From August of 1998 through December of 1999, Plaintiff Rio Grande Orthopaedic Institute performed surgery and provided orthopaedic medical services to school children/athletes who were injured in athletic events playing for high schools in Hidalgo, Cameron and Starr Counties, Texas  When the injuries were severe and surgery was required, William Snyder, M D., the surgeon who owns Rio Grande Orthopaedic Institute (RGOI), performed surgery at the outpatient surgery center of the other Plaintiff, RGOI ASC.  Both the surgeon and the outpatient surgery center charged a fee for providing these services.  There is no complaint of any kind regarding the quality of care provided to the school children in the Rio Grande Valley, nor is there any question that the services and surgery performed were necessary.

The school athletes that received this medical care were covered under a school accident insurance policy that was provided by their school district.  The policy was provided by Defendant Legion Insurance Company (Legion) of Philadelphia, PA.  The policy purported to provide reimbursement for the surgical services at issue in this case at 100% of usual and customary  Usual and customary was defined in the policy.  Defendant Claims Administration Services, Inc (CAS) was responsible for processing the insurance claims for Legion, was hired by Legion for this purpose, and there is no dispute that CAS was acting for Legion in this case

Beginning in August 1998, school athletes covered under the Legion policy began coming to the Plaintiffs for medical advice and surgery  As was often the case, surgery was necessary, particularly during football and basketball seasons  As surgery was performed by the Plaintiffs, the claims were submitted to Legion through its claims administrator CAS, on forms provided by Legion and CAS  The forms were written, provided basic information that represented the existence of coverage, the name of the insurance company, the name of the claims administrator and the steps necessary to file a claim  The claim forms directed Legion and CAS to pay any and all insurance proceeds

3

directly to the Plaintiffs   Because of the large volume of student athletes, Plaintiffs requested and received a copy of the insurance policy from the school districts   The policy had been provided to the school district by Legion Insurance Company and it showed that the policy paid 100 % of usual and customary   Each student athlete that came to the Plaintiffs had claim forms provided by Defendants that provided written confirmation of coverage by Legion

For most of the 1998-99 school year, Legion, by and through its administrator, CAS, paid claims as set forth in the policy.  Plaintiffs received not only checks for the payments, but forms that explained how the claim was adjusted and paid. These explanation of benefits forms continued to confirm that Legion and CAS were honoring the insurance policy and paying claims as required under the policy. As the 1998-99 school year came to a close, there were still a substantial number of claims that had either been submitted and not paid, or students whose injury required further medical attention even though the policy period was coming to a close.  At this point claims payments from Legion and CAS stopped and would not resume until the late fall or early winter of 1999.  When Legion and CAS did resume the payments, they were no longer being made at 100% of usual and customary, but were being paid as if the school children were covered under a Medicare policy   Any unpaid amount was to be the responsibility of the school athlete or his family

In January 2000, the Plaintiffs sued Legion Insurance Company and CAS for misrepresentation, failure to pay claims, deceptive trade practices under the Texas Business and Commerce Code, and for Deceptive Trade Practices under the Texas Insurance Code for the failure to pay the claims   Thereafter, Legion terminated CAS as its claims administrator and hired another claims administrator, Brown & Brown, Inc   CAS is now out of business and will default in this case thereby giving Plaintiffs judgment and admitting as to CAS, the facts and allegations of the Plaintiffs' lawsuit Until August 2001, Legion never paid another claim under the policies at issue in this case   It claimed that the amounts paid were proper, it even alleged that the claims were fraudulent and filed a complaint with the Texas Department of Insurance   The complaint

4

was investigated and dismissed as groundless   In August of 2001, Legion's new administrator, Brown & Brown, Inc , paid one of the claims in dispute in this case   They paid that claim at 100%, just as CAS had done throughout most of the policy   The total actual damages from the unpaid insurance claims alone in this case are $190,000 00

### Position of Defendant Legion Insurance Company

Plaintiffs have no standing to bring any claims under any policies issued by Legion, or to make any extra-contractual claims for bad faith claims handling.  Plaintiffs are not insureds of Legion, are not beneficiaries under any Legion policies, and were not assigned any rights by any insureds or beneficiaries under Legion policies.

Legion has not failed to comply with its policy and its obligations to properly handle claims under Texas law.

With respect to the claims for fraud/negligent misrepresentation, Legion never made any representation to Plaintiffs.  Legion never made any misrepresentation to Plaintiffs. Plaintiffs never relied upon any alleged misrepresentation by Legion.  Legion never intended that Plaintiffs rely upon any alleged misrepresentation, and Legion never made a representation about its future performance with a present intent not to perform.

Legion contends that Plaintiffs knowingly and intentionally overcharged Legion for the services they allegedly provided to patients

### Position of Defendant Claims Administration Services

Claims Administration Services has declined to participate in the preparation of this Joint Pretrial Order and has indicated that it will not participate in the trial   See Attachment C

3.   ### JURISDICTION

Jurisdiction in this case is predicated upon 28 USC 1332, diversity of citizenship   There are no jurisdictional questions

5

CAMPDF - www.fenrir.com

**4.**   **MOTIONS**

The following motions are pending

1   Defendant's Motion to Amend Scheduling Order, or, Alternatively, for Leave to
File Motion for Summary Judgment

2   Defendant Legion Insurance Company's Motion for Summary Judgment

3   Defendant's First Motion to Compel

4.   Plaintiffs' First Motion to Compel Discovery by Defendant Legion Insurance
Company

In addition, Defendant Legion Insurance Company and Plaintiffs anticipate filing
motions in limine prior to trial.

**5.**   **CONTENTIONS OF THE PARTIES**

**In general, the Plaintiffs contend:**

Legion and CAS either negligently or intentionally misrepresented the claims paying
provisions of this policy   The representation is so great as to be a misrepresentation of
coverage in that the payments that form the basis of this suit are either so low, or have
never been paid, so as to create a situation where no coverage exists for the patients
whose claims form the basis of this lawsuit   The conduct gives rise to Deceptive Trade
Practices Claims under Texas Business and Commerce Code 17 46, et  seq , Texas
Insurance Code Article 21 21, 21 21-2 and 21 55 entitling the Plaintiffs to treble their
actual damages

**In general, Defendant Legion contends as follows:**

First, Plaintiffs have no standing to bring any claims under any policies issued by Legion,

6

or to make any extra-contractual claims for bad faith claims handling   Plaintiffs are not insureds of Legion, are not beneficiaries under any Legion policies, and were not assigned any rights by any insureds or beneficiaries under Legion policies

Second, Legion has not failed to comply with its policy and its obligations to properly handle claims under Texas law

Third, with respect to the claims for fraud/negligent misrepresentation, Legion never made any representation to Plaintiffs   Legion never made any misrepresentation to Plaintiffs.  Plaintiffs never relied upon any alleged misrepresentation by Legion  Legion never intended that Plaintiffs rely upon any alleged misrepresentation, and Legion never made a representation about its future performance with a present intent not to perform

Finally, Legion contends that Plaintiffs knowingly and intentionally overcharged Legion for the services they allegedly provided to patients.

**In general, Defendant CAS contends as follows:**
Claims Administration Services has declined to participate in the preparation of this Joint Pretrial Order and has indicated that it will not participate in the trial.  See Attachment C.

6.    **ADMISSIONS**

The following facts and issues not in genuine dispute are established by the pleadings or are established by the stipulations or admissions of counsel

**Admissions of Fact by Plaintiffs:**

1        Legion issued the policies that form the basis of the lawsuit and that they were constantly in force and had not been canceled or modified from July 31, 1998 through July 31, 1999

7

CMPDF - www.fesko.com

2      Claims Administration Services, Inc (CAS) of Boca Raton, Florida was Legion's claims administrator for purposes of administering the policies issued by Legion, to include adjustment, negotiation and payment of claims

3      That school athletes presented paper work on written, preprinted forms to the Plaintiffs representing that Legion was providing insurance coverage and that CAS was the administrator for the claims

4      That the surgical services that form the basis of this lawsuit were provided and/or performed

5.     That the claims were properly submitted by the Plaintiffs to CAS for payment

6      That from August 1998 through August 1999, CAS adjusted and paid claims under the Legion policy at 100% of usual and customary.

7.     That in the spring, 2000, Legion terminated the services of CAS as its claims administrator for the policies that form the basis of this lawsuit.

8      That upon terminating CAS, Legion retained Brown & Brown, Inc of Daytona Beach Florida as its claims administrator for the policies that form the basis of this suit.

9      That Brown & Brown, Inc also adjusted and paid claims under the Legion policies that form the basis of this suit at 100% of usual and customary

10     That if the insurance company does not pay, the patient or the insured is responsible for payment

8

11      At no time, prior to the issuing of the policies that form the basis of this suit, or at anytime thereafter, did Legion Insurance Company issue any notice, in any form, to any insured, patient or service provider that CAS was not authorized to represent it with regard to the adjustment and payment of claims

12      As Legion's claims administrator CAS had data and information that it used to determine what was usual and customary payment for the services that form the basis of this suit

13.      Legion relied upon the data that CAS used to determine what was usual and customary payment for the claims that form the basis of this suit

14.      That the present claims paying administrator Brown & Brown, Inc. has data and information that it uses to determine what is a usual and customary payment for the claims that form the basis of this lawsuit

15      That the information provided by Plaintiffs when it filed its claims, and the other information gathered by CAS in paying the claims was put into a file and kept by CAS

16      That the files created by CAS for every claim which forms the basis of this suit were transferred by CAS to Brown & Brown when CAS was terminated by Legion and Brown & Brown was retained by Legion

17      That Brown & Brown used information in the claims file of Daniel Lopez to pay the related claim of Plaintiffs on July 31, 2001

18      That Brown & Brown paid 100% of the charges on the Daniel Lopez claim

9

19      That Legion charged a set amount of premium to be paid by each school district for the policies that form the basis of this suit

20      That the premium paid by the school districts was calculated to provide enough money to pay expected claims, administrative expenses of administrating the claims and to provide Legion with a margin of profit on the policy

21      That when an insurance company pays an amount of claims on a particular policy that exceeds the amount of premium paid, the insurance company loses money on the policy

22      Legion Insurance Company lost money on the policies that form the basis of this suit.

23      Legion Insurance Company filed a fraud complaint against the Plaintiffs in September 1999 alleging Plaintiffs' claims were fraudulent.

24      The Texas Department of Insurance investigated the fraud allegations.

25      As part of that investigation, Legion provided the Texas Department of Insurance with information from the claims files of the claims it alleged were fraudulent

26      Sgt  Glenn Maddox, an investigator with the Texas Department of Insurance traveled to the Rio Grande Valley and interviewed Plaintiffs, insureds and patients with regard to the fraud complaint

27      After investigating Legion's allegations, the Texas Department of Insurance dismissed the fraud complaint of Legion

10

28    That throughout the course of the policy period from July 31, 1998 to the present, CAS and Legion have dealt almost exclusively with the Plaintiffs, in adjusting, negotiating and paying/denying the claims under the policies that form the basis of this lawsuit

29    That the majority, if not all, of the patients in this case have assigned all legal rights to pursue Legion for failure to properly pay the claims which form the basis of this suit

**Admissions of Fact by Defendant Legion:**

As detailed in Legion Insurance Company's ("Legion") Motion to Amend Scheduling Order, or, Alternatively, for Leave to File Motion for Summary Judgment (the "Motion"), the parties attempted to resolve this matter without incurring the expense of formal discovery  Since that effort has been unsuccessful, all of the issues that should be developed prior to trial, and prior to submission of a Pre-Trial Order, have not been. Accordingly, Defendant Legion submits the following list of facts not in dispute subject to its Motion and reserves the right to seek to supplement or withdraw its designation of any of these facts as being not in dispute.

In light of the circumstances of this case, Legion is unable to provide a full description of all propositions that are to be uncontested.  However, Legion believes that at least the following propositions are likely to be uncontested·

1    Legion issued accident only policies (the "Policies") to various school districts in Texas

2    The Policies, with the exception of the named insureds, were identical

3    Legion retained Claims Administration Services, Inc ("CAS") to act as third party administrator for claims received under the Policies

11

31 Scale

4    The Policies were never amended.

5    Neither Plaintiff was a named insured under the Policies

6    Neither Plaintiff was a "Covered Person" under the Policies

7    Plaintiffs charged full price for each surgical procedure performed even when two or more such procedures were conducted through the same incision.

8    Plaintiffs charged full price for each surgical procedure performed even when two or more such procedures were conducted during the same surgical session

9    Plaintiffs were aware that the services they provided to Jennifer Castillo were for an injury that had been incurred over 90 days prior to the date such services were provided

10. Plaintiffs were aware, prior to providing services to Ms. Castillo, that the Policies did not cover payment for medical services provided over 90 days after the insured's injury.

## Admissions of Fact by Defendant CAS:

Claims Administration Services has declined to participate in the preparation of this Joint Pretrial Order and has indicated that it will not participate in the trial   See Attachment C

7.    ## CONTESTED ISSUES OF FACT

### Contested Issues of Fact by Plaintiffs:

Plaintiffs are unaware of any contested issues of fact other than those asserted by Defendants' set forth herein below, and, the insistence that despite evidence to the

12

contrary, the payments made by Defendants after August 1999 were consistent with the usual and customary standard in the policy

**Contested Issues of Fact by Defendant Legion:**

To the extent not disposed of by the Court on Legion Insurance Company's Motion for Summary Judgment, the contested issues of fact as seen by Defendant Legion will be

As detailed in Legion Insurance Company's ("Legion") Motion to Amend Scheduling Order, or, Alternatively, for Leave to File Motion for Summary Judgment (the "Motion"), the parties attempted to resolve this matter without incurring the expense of formal discovery.  Since that effort has been unsuccessful, all of the issues that should be developed prior to trial, and prior to submission of a Pre-Trial Order, have not been. Accordingly, Defendant Legion submits the following list of contested issues of fact subject to its Motion and reserves the right to seek to supplement these contested issues of fact

In light of the circumstances of this case, Legion is unable to provide a full description of all issues of fact that are likely to be contested.  However, Legion believes that at least the following issues of fact are likely to be contested.

1    Whether the claims for which Plaintiffs seek to recover were timely submitted to Legion.

2    Whether Plaintiffs responded to all reasonable requests for information regarding the claims allegedly submitted by Plaintiffs

3    Whether Plaintiffs provided all information required for payment of claims under any insurance policy issued by Legion

4    Whether the claims for which Plaintiffs seek to recover were covered by any policy issued by Legion

5    Whether Plaintiffs actually supplied any medical services or supplies to any person covered by any policy issued by Legion

6    What services were provided by Plaintiffs to persons covered by any

13

CMPDF - www.fwsta.com

policy issued by Legion

7      Whether the services or supplies allegedly provided by Plaintiffs to Legion insureds were medically necessary

8      Whether the fees charged by Plaintiffs for the services or supplies allegedly provided by Plaintiffs were the usual fee charged by Plaintiffs for the service or supply given

9      Whether the fees charged by Plaintiffs for the services or supplies allegedly provided by Plaintiffs to Legion's insureds were the average fee charged for the service or supply in the locality in which such service/supply was received

10     Whether the fees charged by Plaintiffs for the services or supplies allegedly provided by Plaintiffs to Legion's insureds were reasonable in relationship to the service or supply given and the severity of the condition.

11     Whether Plaintiffs are third party beneficiaries of any policy issued by Legion.

12     Whether Plaintiffs were entitled to be paid directly by Legion for any fees charged for services provided to persons insured under any policy issued by Legion.

13     Whether Plaintiffs received any assignment of causes of action owned by any Legion insured.

14     Whether Legion made any representations to Plaintiffs

15     Whether Legion made any misrepresentation to Plaintiffs

16     Whether Plaintiffs relied upon any representation allegedly made by Legion

17     Whether Plaintiffs alleged reliance upon any alleged misrepresentation by Legion was reasonable

18     Whether Plaintiffs were damaged by any alleged misrepresentation by Legion

19     Whether Plaintiffs recovered sums for the alleged medical services at issue in the case from third parties

14

20      Whether Plaintiffs attempted to recover sums for the alleged medical services at issue in this case from third parties

21      Whether Plaintiffs failed to mitigate damages

22      Whether Plaintiffs overcharged Legion

23      Whether Legion made any representation regarding its future performance under the Policies without any present intent to perform

24      Whether Legion agreed to the submission of any claims allegedly made by Plaintiffs to A&G Health Plans

25      Whether A&G Health Plans was Legion's agent

26      Whether Legion agreed to any settlement or other resolution any claim allegedly suggested by A&G Health Plans

27      Whether John Little was an agent of Legion.

28      Whether John Little held himself out to be an agent of Legion.

29      Whether John Little assured Plaintiffs that, as Legion's local representative, Plaintiffs could rely upon Little's statements for purposes of resolving coverage issues and other matters pertaining to the policies of insurance he sold and Legion issued.

30      Whether Insurance Associates of the Valley was an agent of Legion

31      Whether Insurance Associates of the Valley held itself out as an agent of Legion.

32      Whether Arnulso Oliveras was an agent of Legion

33      Whether Arnulso Oliveras held himself out as an agent of Legion.

34      Whether John Little, Insurance Associates of the Valley, or Arnulso Oliveras were ever authorized to speak and/or act on behalf of Legion

35      Whether Legion retained any investigator to investigate Plaintiffs

36      Whether Legion complied with the Policies

37      Whether Legion used Medicare "grouper" rates to adjust claims

38      Whether Legion investigated the fees charged by Plaintiffs

39      Whether Debra James Vance was "in-house" counsel for Legion

40      Whether any insured of Legion ever signed a form which assigns to Plaintiffs all rights to proceeds from Legion

41      Whether signing any such form entitles Plaintiffs to payment of any benefits owed to a Legion insured

42      Whether Plaintiffs submitted any "bill for charges" to Legion

43      Whether Plaintiffs performed the services allegedly performed on any such "bill for charges "

44      Whether Plaintiffs submitted all requested information as required by the Policies, or otherwise performed all conditions precedent to the payment of insurance proceeds under the Policies

45      Whether Plaintiffs have suffered any damages

46      Whether Legion's actions are "outrageous "

47      Whether Legion's actions constitute "bad faith payment of claims."

48      Whether Legion misrepresented the terms of coverage of the Policies.

49.     Whether Legion took any actions in violation of Tex. Ins. Code art. 21.21

50      Whether any alleged violation of Tex. Ins. Code art. 21.21 was done intentionally

51      The amount, if any, of reasonable and necessary attorney's fees incurred by Plaintiffs in pursuing this action.

52.     Whether Legion took any actions that violated Tex. Ins. Code art 21 21-2.

53      Whether any alleged action violating Tex Ins Code art. 21.21-2 was taken intentionally.

54      Whether Legion took any actions that violated Tex. Ins. Code art. 21 55

55      Whether Legion intentionally violated Tex Ins Code art 21 55.

56.     The amount of fees allegedly claimed by Plaintiffs that have not been paid

57      The dates on which Plaintiffs allegedly filed any claim at issue in this case

58      The information allegedly submitted by Plaintiffs in support of any claim at issue in this case

16

**Contested Issues of Fact by Defendant CAS:**

Claims Administration Services has declined to participate in the preparation of this Joint Pretrial Order and has indicated that it will not participate in the trial   See Attachment C

8.   **AGREED PROPOSITIONS OF LAW**

**Agreed Propositions of Law by Plaintiffs:**

1   That CAS was Legion's agent for purposes of the adjustment, negotiation and payment of claims

2   That as the principal, as a matter of law Legion is bound by the knowledge, actions and representations of CAS that occurred within the actual or apparent scope of CAS's authority

3.   That representations can be oral, written or conveyed via conduct or omission of conduct where conduct or silence would otherwise be appropriate

4   That Brown & Brown, Inc. is Legion's agent as a matter of law for purposes of the adjustment, negotiation and payment of claims on the insurance policies that form the basis of this suit.

5.   That as the principal, as a matter of law Legion is bound by the knowledge, actions and representations of Brown & Brown, Inc. that occurred within the actual or apparent scope of Brown & Brown, Inc.'s authority.

6.   That CAS and Legion are persons as defined by Texas Insurance Code 21 21 §(2) (a)

7   That Tex  Ins  Code art 21 21  incorporates the provisions of the Texas Deceptive Trade Practices Act

**Agreed Propositions of Law by Defendant Legion:**

As detailed in Legion Insurance Company's ("Legion") Motion to Amend Scheduling Order, or, Alternatively, for Leave to File Motion for Summary Judgment (the "Motion"), the parties attempted to resolve this matter without incurring the expense of formal discovery   Since that effort has been unsuccessful, all of the issues that should be developed prior to trial, and prior to submission of a Pre-Trial Order, have not been   Accordingly, Defendant Legion

17

CMzPDF - www.tezita.com

submits the following list of agreed propositions of law subject to its Motion, and reserves the right to seek to supplement this list of agreed propositions of law

In light of the circumstances of this case, Legion is unable to provide a full description of all propositions of law that are agreed   However, Legion Insurance Company believes that at least the following propositions of law are likely to be agreed

1   In order to recover under a common law claim of fraud, a plaintiff must establish. (1) that the defendant made a material misrepresentation; (2) that the misrepresentation was false, (3) that the speaker, at the time that the representation was made, knew that it was false; (4) that the representation was made with the intention that the other party act on it; and (5) that the other party did, in fact, rely upon the representation.

2   To prove a claim for negligent misrepresentation a plaintiff must show. (1) a representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the representation was false; (3) the representation was made for the guidance of others in their business, (4) the defendant did not exercise reasonable care or competence in obtaining or communicating the false representation, and (5) the plaintiff suffers pecuniary loss by justifiably relying on the false representation.

3   To prove a claim for claim for breach of contract the plaintiff must show  (1) the existence of a contract, (2) plaintiff's compliance with the contract, (3) defendant's breach of the terms of the contract, and (4) damages

**Agreed Propositions of Law by Defendant CAS**:

Claims Administration Services has declined to participate in the preparation of this Joint Pretrial Order and has indicated that it will not participate in the trial   See Attachment C

9.   **CONTESTED PROPOSITIONS OF LAW**

**Contested Propositions of Law by Plaintiffs**:

1.   Legion contests that its conduct, either by its own actions or that of its agents constitutes misrepresentations that are actionable under Texas common law

2.   Legion contests that its conduct, either by its own actions or that of its agents constitutes conduct that is in violation of Tex.Ins. Code, art 21.21 §10.

3.   Legion contests that its conduct, either by its own actions or that of its agents constitutes conduct that is in violation of Tex Ins  Code, art 21.21-2 §2 (b)

4   Legion contests that Plaintiffs can legally pursue a cause of action for misrepresentation and or Deceptive Trade because Plaintiffs are not the insured under this policy or the patient   Plaintiffs deny that Legion's argument has any merit   Plaintiffs maintain that Texas case law is clear that a medical service provider may pursue a cause of action for misrepresentation and Deceptive Trade Practices even though it is not the insured or the patient   See Herman Hospital v  National Standard Insurance Company, 776 S W  2d 249 (Tex  App--Houston. [1st Dist]   See also case law used by the Court in Herman Hospital to establish the basis of its argument in an insurance context . Blue Bell, Inc  v  Peat Marwick,

19

Mitchell & Co., 715 S W 2d 408. (Tex App --Dallas, 1986, writ ref'd n.r.e ), Cook Consultants, Inc v Larson, 700 S W 2d, 231, (Tex App --Dallas, 1985, writ ref'd. n r e )

5       Legion contests that Plaintiffs can pursue a cause of action under misrepresentation, breach of contract and or Deceptive Trade if it has an assignment from the insured, patient, contracting party Plaintiffs invite the Court to the foregoing case law that supports Plaintiffs' right to proceed

**Contested Propositions of Law by Defendant Legion:**

As detailed in Legion Insurance Company's ("Legion") Motion to Amend Scheduling Order, or, Alternatively, for Leave to File Motion for Summary Judgment (the "Motion"), the parties attempted to resolve this matter without incurring the expense of formal discovery. Since that effort has been unsuccessful, all of the issues that should be developed prior to trial, and prior to submission of a Pre-Trial Order, have not been. Accordingly, Defendant Legion submits the following list of contested propositions of law subject to its Motion, and reserves the right to seek to supplement this list of contested propositions of law

In light of the circumstances of this case, Legion is unable to provide a full description of all propositions of law that are likely to be contested. However, Legion believes that at least the following propositions of law are likely to be contested

1   Medical services providers are not third party beneficiaries to insurance contracts providing for payment of fees incurred by insureds for medical services  See Herman Hospital v Liberty Life Assur Co.,

20

696 S W 2d 37, 40 (Tex App —Houston [14th Dist ] 1985, writ ref n r e )

2    Only an insured may make a claim for unfair claims settlement practices under Tex Ins Code art 21 21 and/or the DTPA   See Allstate Ins Co v Watson, 876 S W 2d 145, 149-150 (Tex 1994), see also Tamez v Certain Underwriters at Lloyd's, London, Internat'l Accident Facilities, Inc., 999 S W 2d 12, 21 (Tex App.--Houston [14th Dist ] 1998, writ den'd) (holding that third party claimants lacked standing to assert claims under Tex Ins Code art 21 21)

3    There is no private right of action for violation of Tex Ins Code art 21.21-2.   See Allstate Ins. Co. v. Watson, 876 S.W.2d 145, 148-149 (Tex 1994)

4.   Only insureds have standing to sue under Tex. Ins Code art. 21.55 See Tex Ins. Code art. 21 55.

5    Tex. Ins. Code art. 21.55 provides only an additional remedy for breach of the insurance policy, not an additional cause of action.   See Hartman v St. Paul Fire and Marine Ins Company, 55 F.Supp.2d 600, 603 n 2 (N.D Tex. 1998); Lusk v Puryear, 896 S W 2d 377, 380 (Tex.App.--Amarillo 1995, no writ)

6    Absent a specific misrepresentation of the terms of coverage, the mistaken belief that a policy provides coverage under certain contingencies which are not covered cannot give rise to a claim for misrepresentation   See e g Burton v State Farm Mutual Automotive Insurance Company, 869 F Supp 480, 486 (S D Tex 1994), aff'd, 66 F 2d 319 (5th Cir 1995), Parkins v Texas Farmers Ins Co, 645 S W 2d 775, 777 (Tex 1983), State Farm County Mutual Ins

21

Company of Texas v. Moran, 809 S.W.2d 613, 620-621 (Tex. App.--
Corpus Christi 1991, writ denied)

7   A claim for intentional misrepresentation exists only where the
    defendant made representations directly to the plaintiff   Kanon v.
    Methodist Hospital, 9 S.W.3d 365, 372 (Tex. App.—Houston [1st
    Dist.] 1999, no writ)(where "after diligently search[ing] Texas case
    law," the court was "unable to find any cases in which a person was
    held liable for fraud or intentional misrepresentation when there was
    no privity between the plaintiff and the defendant").

8   One cannot recover on a misrepresentation claim where he knew the
    true facts all along.  See e.g. Haralson v. E.F. Hutton Group, Inc., 919
    F.2d 1014, 1026 (5th Cir. 1990); Chitsey v. Nat'l Lloyds Ins. Co., 698
    S.W.2d 766, 769 (Tex. App.--Austin 1985), aff'd, 738 S.W.2d 641
    (Tex. 1987).

9   Misrepresentations as to the legal effect of a contract cannot constitute
    fraud  See Fina Supply, Inc. v. Abilene Nat'l Bank, 726 S.W.2d 537,
    540 (Tex. 1998)

10  Mere failure to perform a contract does not constitute fraud. See
    Formosa Plastics v. Presidio Engineers, 960 S.W.2d 41, 46 (Tex.
    1998)

11  In order to recover, Plaintiffs are required to prove the precise amount
    of damage from each specific claim they allege has been improperly
    denied   See John E. Green Plumbing & Heating v. Turner Contr.
    Company, 742 F.2d 965, 968 (6th Cir. 1984) (contractor who merely
    estimated additional work rather than providing an accounting could not
    recover for additional work), Hindman v. Texas Lime Company, 305

22

S W 2d 947, 953 (Tex 1957) (auto dealer could not sustain burden of proof on claims without proving specific damages to each car he alleged was harmed)

**Contested Propositions of Law by Defendant CAS**:

Claims Administration Services has declined to participate in the preparation of this Joint Pretrial Order and has indicated that it will not participate in the trial.  See Attachment C

10.   **EXHIBITS**

**Plaintiffs' Exhibits**:

See Attachment A-1. Plaintiffs' Exhibit List

**Defendant Legion's Exhibits**:

See Attachment B-1: Defendant Legion's Exhibit List

**Defendant CAS's Exhibits**:

None   Claims Administration Services has declined to participate in the preparation of this Joint Pretrial Order and has indicated that it will not participate in the trial   See Attachment C.

11.   **WITNESSES**

**Plaintiffs' Witnesses**:

See Attachment A-2  Plaintiffs' Witness List

**Defendant Legion's Witness List**:

See Attachment B-2  Defendant Legion's Witness List

**Defendant CAS's Witness List**:

None   Claims Administration Services has declined to participate in the preparation of this Joint Pretrial Order and has indicated that it will not participate in the trial   See Attachment C

23

If other witnesses to be called at the trial become known, their names, addresses, and subject of their testimony will be reported to opposing counsel in writing as soon as they are known, this does not apply to rebuttal or impeachment witnesses

12. **SETTLEMENT**

By the time of presentment of this order to the Court, all settlement efforts will have been exhausted, the case will not be susceptible to settlement, and it will have to be tried

13. **TRIAL**

A.   Plaintiffs believe that the trial will last 5 days   Defendant Legion Insurance Company believes that the trial will last 3 days   Claims Administration Services has declined to participate in the preparation of this Joint Pretrial Order and has indicated that it will not participate in the trial.  See Attachment C.

B   Defendant Legion Insurance Company is based in Philadelphia, Pennsylvania, and has witnesses who will need to travel from the Philadelphia area to attend trial.  Legion Insurance Company is unaware of any other logistical problems   Plaintiffs are unaware of any bulky exhibits, demonstrations, or other cumbersome evidence.  In addition to the witnesses to be called from Legion Insurance Company, witnesses are anticipated to also be called from CAS and are expected to be traveling from Florida

14. **ATTACHMENTS**

**Proposed Voir Dire Questions:**

Plaintiffs proposed voir dire questions are attached hereto as Attachment A-3  Plaintiffs' Voir Dire Questions

24

CWPDF - www.fwoio.com

Defendant Legion's voir dire questions are attached hereto as Attachment B-3  Defendant Legion's Voir Dire Questions

Defendant CAS has provided no voir dire questions   Claims Administration Services has declined to participate in the preparation of this Joint Pretrial Order and has indicated that it will not participate in the trial   See Attachment C

**Proposed Jury Charges:**

Plaintiffs proposed jury charge is attached hereto as Attachment A-4  Plaintiffs' Jury Charge

Defendant Legion's proposed jury charge is attached hereto as Attachment B-4 Defendant Legion's Jury Charge.

Claims Administration Services has declined to participate in the preparation of this Joint Pretrial Order and has indicated that it will not participate in the trial.  See Attachment C Consequently, CAS has not provided a proposed jury charge.

SIGNED THIS _____ DAY OF _____, 200___

_____
UNITED STATES DISTRICT JUDGE

25

APPROVED

Date 10/5/01

Timothy E  Weitz
State Bar No  21117500
McDonald, Mackay & Weitz, L L P
1400 West Avenue, Suite 200
Austin, Texas 78701
512-322-9202
512-445-4995 Fax

Attorney-in-Charge, Plaintiffs

Date 10/5/01

Greg Pierce
State Bar No  15994250
SDT Admission No. 13785
Scott, Douglas & McConnico, L.L.P
600 Congress Avenue, 15th Floor
Austin, Texas 78701-2589
512-495-6300
512-474-0731 Fax

Attorney-in-Charge, Defendant Legion Insurance Company[1]

Date: _____

Charles M. Jefferson
State Bar No  10605500
One Riverwalk Place
700 N  St  Mary Street, Suite 1000
San Antonio, Texas 78205

Attorney-in-Charge, Defendant Claims Administration Services, Inc

---

As detailed Legion Insurance Company's ("Legion") Motion to Amend Scheduling Order, or, Alternatively, for Leave to File Motion for Summary Judgment (the "Motion"), the parties attempted to resolve this matter without incurring the expense of formal discovery  Since that effort has been unsuccessful, all of the issues that should be developed prior to trial, and prior to submission of a Pre-Trial Order, have not been  Accordingly, Defendant Legion submits this Pre-Trial Order subject to its Motion and reserves the right to seek to supplement this Pre-Trial Order

26

# ATTACHMENT A-1: PLAINTIFFS' EXHIBIT LIST

Exhibit 1  Legion Student Accident Insurance Policy AH2-133461

Exhibit 2  Legion Student Accident Insurance Policy AH2-133485

Exhibit 3  Legion Student Accident Insurance Policy AH3-917285

Exhibit 4  Sample Legion Insurance Company proof of claim form

Exhibit 5  Contract between Legion Insurance Company and CAS

Exhibit 6  RGOI/RGOI ASC claim file for Roberto Gonzalez

Exhibit 7  RGOI/RGOI ASC claim file for Susie Marroquin

Exhibit 8  RGOI/RGOI ASC claim file for Oscar Sandoval

Exhibit 9  RGOI/RGOI ASC claim file for Rosa Rodriquez

Exhibit 10  RGOI/RGOI ASC claim file for Juanita De la Garza

Exhibit 11  RGOI/RGOI ASC claim file for Jennifer Castillo

Exhibit 12  RGOI/RGOI ASC claim file for Silbestre Gutierrez

Exhibit 13  RGOI/RGOI ASC claim file for Anna Alvarado

Exhibit 14  RGOI/RGOI ASC claim file for Daniel Lopez

Exhibit 15  RGOI/RGOI ASC claim file for Michelle Valdez

Exhibit 16  RGOI/RGOI ASC claim file for Adalberto Esparza

Exhibit 17  RGOI/RGOI ASC claim file for Scarlett Castillo

Exhibit 18  RGOI/RGOI ASC claim file for Erica Salinas

Exhibit 19  RGOI/RGOI ASC claim file for Dianey Garcia

Exhibit 20  RGOI/RGOI ASC claim file for Maria Rodriquez

Exhibit 21   RGOI/RGOI ASC claim file for Claudia Watts

Exhibit 22   RGOI/RGOI ASC claim file for Stephanie Garza

Exhibit 23   RGOI/RGOI ASC claim file for Jorge Lozano

Exhibit 24   RGOI/RGOI ASC claim file for Jonathan Trevino

Exhibit 25   RGOI/RGOI ASC claim file for Nathan Coy

Exhibit 26   RGOI/RGOI ASC claim file for Christina Luna

Exhibit 27   RGOI/RGOI ASC claim file for Stephanie Garcia

Exhibit 28   RGOI/RGOI ASC claim file for Rene Chavez

Exhibit 29   CAS EOB for Amanda Marin

Exhibit 30   CAS EOB for Trisha Cardenas (2)

Exhibit 31   CAS EOB for Cristina Martinez

Exhibit 32   CAS EOB for Delia Raleigh

Exhibit 33   CAS EOB for Antonio Alvarado

Exhibit 34   CAS EOB for Esparaza Quintailla

Exhibit 35   CAS EOB for Erik Diaz

Exhibit 36   CAS EOB for Juan Fernandez

Exhibit 37   CAS EOB for Oscar Sandoval

Exhibit 38   CAS EOB for Rosalinda Guzman

Exhibit 39   CAS EOB for Gabriella Garcia

Exhibit 40   CAS EOB for Susie Marroquin

Exhibit 41   CAS EOB for Silbestre Gutierrez

Exhibit 42   CAS EOB for Juanita De la Garza

Exhibit 43   CAS EOB for Rene Chavez (2)

Exhibit 44   CAS EOB for Sarah Jimenez

Exhibit 45   CAS EOB for Hugo Lopez

Exhibit 46   CAS EOB for Armando Cano

Exhibit 47   CAS EOB for Eduardo Perez

Exhibit 48   CAS EOB for Francisco Alvalos

Exhibit 49   CAS EOB for Irene Trujillo

Exhibit 50   CAS EOB for Ben Cantu

Exhibit 51   CAS EOB for Jose Issac Santa Maria

Exhibit 52   CAS EOB for Rosa Rodriquez

Exhibit 53   A&G agreement Jennifer Castillo

Exhibit 54   A&G agreement Antonio Alvarado

Exhibit 55   A&G agreement Susie Marroquin

Exhibit 56   A&G agreement Silbestre Gutierrez

Exhibit 57   A&G agreement Sarah Jimenez

Exhibit 58   Fraud investigation file submitted by Legion/CAS to Texas Department of Insurance

Exhibit 59   Brown & Brown EOB for Daniel Lopez

Exhibit 60   American National Student Accident Insurance Policy FLD-3003-SA

Exhibit 61   Brown & Brown EOBs for school year 1999-2000 student accident claims

Exhibit 62   St Anthony's Guide

Exhibit 63    Legion premium information for 1998-1999 Student Accident policies

Exhibit 64    Legion loss run data for 1998-1999 Student Accident policies

Exhibit 65    Legion answers to Plaintiffs' Interrogatories

Exhibit 66    CAS answers to Plaintiffs' Interrogatories

CWPDF - www.fasiio.com

# ATTACHMENT A-2: PLAINTIFFS' WITNESS LIST

William D Snyder, M D
400 E  Dove Avenue
McAllen, Texas 78504
956-686-2663

Cecilia Quiroz, R.N
400 E. Dove Avenue
McAllen, Texas 78504
956-686-2663

Dr  Snyder and Ms. Quiroz are corporate representatives of the Plaintiffs.  They will testify as to the entire factual history of how the claims were filed, adjusted and paid from August 1998 to the present  They will offer testimony as to how coverage was verified, why the claims forms were important, and the reliance of Plaintiffs on the representations of coverage made over the course of the 1998-1999 school year.  The will also testify regarding the administrative inconvenience and costs associated with Legion Insurance Company's underpayment or nonpayment of claims.

John Little
Arnulso Oliveras
Insurance Associates of the Valley
521 South 77 Sunshine Strip
Harlingen, Texas 78550

Both of these witnesses work for the agency responsible for writing the policy.  They will testify as to what product was purchased by the school districts and how the policy was supposed to pay  They will also offer testimony as to their surprise with Legion Insurance Company's and Claims Administration Services, Inc.'s (CAS) unwillingness to properly pay the claims that form the subject matter of this suit

June Short
Claims Manager
Brown & Brown, Inc
P O  Box 2480
220 S  Ridgewood Avenue, Ste 410
Daytona beach, Florida 32115-2480

Ms  Short will testify as to how the only claim of Plaintiffs made upon Legion that Brown & Brown has paid was adjusted  She will also offer testimony as to how other policies, virtually identical to Legion's, have been adjusted and paid on claims incurred from the exact same school districts and for the exact same surgeon and outpatient surgery center

Peter Holt
Claims Administration Services, Inc
P O Box 3968
Boca Raton, Florida 33427-3968

Because Mr Holt is a party representative, he can be reached and brought to trial by contacting Mr Charles Jefferson, the attorney of record for Defendant Claims Administration Services, Inc (CAS), at One Riverwalk Place, Suite 1000, 700 North St Mary's Street, San Antonio, Texas 78205-5385

Mr Holt is the President of Claims Administration Services, Inc (CAS)  Mr Holt will provide personal knowledge of how the claims were adjusted from August 1998 to August of 1999  He will explain the purpose of A&G Health Plans and offer testimony as to why the payment practices of CAS/Legion changed after August 20, 1999.  He will also be able to offer testimony on the representations made when the policies were sold.  He will also offer testimony as to the availability of the claims files in this case and their transfer to Brown & Brown, Inc

Gil Garza
Athletic Director Pharr-San Juan-Alamo ISD
700 E. Gore
Pharr, Texas 787577

As the athletic director for the largest school district covered under the Legion policies, Mr. Garza will be able to testify as to what the policy was to cover, the representations made to him and by the Defendants, and passed on to medical service providers in the Rio Grande Valley, including the Plaintiffs.

Roberto Gonzalez
104 E Bano Dr
San Juan, Texas 78589

Jennifer Castillo
P O Box 221
Alamo, Texas 78516

Silbestre Guttierez
103 Dove Street
San Juan, Texas 78589

Susie Marroquin
420 S Canna
Pharr, Texas 78577

Anna Alvarado
P O Box 883
Edcouch Elsa, Texas 78538

Oscar Sandoval
P O Box 673
Edcouch Elsa, Texas 78538

Michelle Valdez
Route 1, Box 149
Edcouch, Texas 78538

Rene Chavez
1015 E Villegas
Pharr, Texas 78577

Adan De la Garza
1346 First Street
Alamo, Texas 78516

All of these witnesses are claimants whose claims have either not been paid at all by Legion or have been paid in a manner that is grossly inconsistent with the language of the policy   They will be able to testify that their children are not significantly different than those of the claimants whose claims were paid according to the policy.  They will also testify that they have very little or no means to pay these claims, and that without the insurance they would not have allowed their children to play or participate in the athletic events that led to their children's injuries.  They will also be able to offer testimony as to what representations of coverage were made to them, and what they passed on to the Plaintiffs when their children sought medical care.

Sgt  Glenn Maddox
Texas Dept  of Insurance
333 Guadalupe
P O Box 149104
Austin, Texas 78714-9104

Sgt  Maddox is an investigator for the Texas Department of Insurance   He will testify as to the fraud complaint filed by Legion with the Texas Department of Insurance, his investigation of that complaint, and the dismissal of that complaint as groundless

Debra James Vance
1 Logan Square
Suite 1400
Philadelphia, Pennsylvania 19103

Debra James Vance is a former counsel for Legion Insurance Company  Debra James Vance will offer testimony as to the lack of oversight and supervision maintained by Legion over its claims administrator, CAS  She will also testify to efforts to try and contact CAS in October, November and December of 1999 and the inability to do so

Rob Montoya
P O Box 769
Pharr, Texas 78577

Mr Montoya is an athletic trainer for Pharr-San Juan-Alamo School District, a district covered under the policy.  Mr. Montoya will testify as to the representations that were made to the school trainers and the school districts as to how the Legion policies would pay  He will also testify as to those representations being passed on to the Plaintiffs and Plaintiffs' reliance thereon

Chad Hilburn
P O Box 127
Edcouch, Texas 78538

Mr Hilburn is an athletic trainer for Edcouch-Elsa High School, a school covered under the policy.  Mr Hilburn will testify as to the representations that were made to the school trainers and the school districts as to how the Legion policies would pay.  He will also testify as to those representations being passed on to the Plaintiffs and Plaintiffs' reliance thereon.

Timothy E  Weitz
Jeff B  McDonald
McDonald, Mackay & Weitz, L.L P
1411 West Avenue, Suite 200
Austin, Texas  78701
512-322-9202  Main Number
512-445-4995  Fax Number

Mark A  Weitz
5520 North "C" Street
McAllen, Texas 78504
956-686-2663  Main Number
956-686-5289  Fax Number

Reynaldo Ortiz, Of Counsel
Law Office of Reynaldo Ortiz, P C
1109 W  Nolana, Suite 204
McAllen, Texas  78504
956-687-4567  Main Number
956-631-1384  Fax Number

These witnesses, as counsel for Plaintiffs, will testify to the legal fees and expenses incurred by
Plaintiffs to litigate this matter.

CutePDF - www.teslou.com

## ATTACHMENT A-3: PLAINTIFFS' VOIR DIRE QUESTIONS

1   Do any of you know the attorneys or parties to this litigation?

2   Are any of you now or have you ever been covered by an insurance policy issued by Legion Insurance Company?

3   Are any of you personally acquainted or otherwise have knowledge of anyone who has been or is covered by a Legion Insurance policy?  If yes, who, what was your experience or that of your acquaintance?

4  Have any of you worked for an insurance company or insurance agency either now or at any time in the past?  If so what company?  When?

5   Is there anyone here that does not believe they could hold an insurance company responsible under any circumstances?

6   Is there anyone on the panel with no children?

7   Is there anyone on the panel with children that currently participate in junior high or high school athletic programs?

8   Is there anyone on the panel that currently works for a school district?

9   Is anyone on the panel an attorney or works for an attorney either now or in the past?

10   Is anyone on the panel now attending college, attended college in the past, or has any kind of college degree?

11   Has anyone had surgery or known someone who has had surgery and who would have had difficulty getting and paying for the surgery without insurance coverage?

CIMPDF - www.fastio.com

## ATTACHMENT A-4: PLAINTIFFS' JURY CHARGE

INSTRUCTIONS AND DEFINITIONS

LADIES AND GENTLEMEN OF THE JURY

     The case is submitted to you by asking questions about the facts, which you must decide from the evidence you have heard in this trial.  You are the sole judges of the credibility of the witnesses and the weight to be given their testimony, but in matters of law you must be governed by the instructions in this charge  In discharging your responsibility on this jury you will observe all the instructions which have previously been given you  I shall now give you additional instructions which you should carefully and strictly follow during your deliberations

1  Do not let bias, prejudice or sympathy play any part in your deliberations.

2  In arriving at your answers, consider only the evidence introduced here under oath and such exhibits if any, as have been introduced for your consideration under the rulings of the court, that is, what you have seen and heard in this courtroom, together with the law as given you by the court  In your deliberations, you will not consider or discuss anything that is not represented by the evidence in this case.

3  Since every answer that is required by the charge is important, no juror should state or consider any required answer is not important.

4  You must not decide who you think should win and then try to answer the questions accordingly  Simply answer the questions, and do not discuss nor concern yourself with the effect of your answers

5  You will not decide the answer to a question by lot or by drawing straws, or by any other method of chance.  Do not return a quotient verdict  A quotient verdict means that the jurors agree to abide by the results to be reached by adding together each juror's figures and dividing by the number of jurors to get an average.  Do not do any trading on your answers; that is, one juror should not agree to answer a certain question one way if others will agree to answer another way

6  You may render your verdict upon the vote of ten or more members of the jury  The same tenor more of you must agree upon all answers made and to the entire verdict  You will not, therefore, enter into an agreement to be bound by a majority or any other vote of less than ten jurors  If the verdict and all the answers therein are reached by unanimous agreement, the presiding juror shall sign the verdict for the entire jury  If any juror disagrees as to any answer made by the verdict, those jurors who agree to all findings shall each sign the verdict

     These instructions are given to you because your conduct is subject to review the same as

CBMPDF - www.faxlol.com

the witnesses, parties, attorneys and the judge   If it should be found that you have disregarded any of these instructions, it will be jury misconduct and it may require another trial by another jury, then all of our time will have been wasted

The presiding juror or any other who observes a violation of the court's instructions shall immediately warn the one who is violating the same and cause the juror to not do so again

When words are used in this charge in a sense that varies from the meaning commonly understood, you are given a proper legal definition, which you are bound to accept in place of any other meaning.

Answer "Yes" or "No" to all questions unless otherwise instructed.  A "Yes" answer must be based on the preponderance of the evidence unless otherwise instructed.  If you do not find a preponderance of the evidence supports a "Yes" answer, then answer "No."  The term preponderance of the evidence means the greater weight and degree of credible testimony or evidence introduced before you and admitted in this case.  Whenever a question requires an answer other than "Yes" or "No" your answer must be based on a preponderance of the evidence unless otherwise instructed.

After you retire to the jury room, you will select your own presiding juror.  The first thing the presiding juror will do is to have this complete charge read aloud and then you will deliberate your answers to the questions asked

It is the duty of the presiding juror---

1   To preside during your deliberations,

2   To see that deliberations are conducted in an orderly manner and in accordance with the instructions in this charge,

3   To write out and hand the bailiff any communications concerning the case that your desire to have delivered to the judge,

4   To vote on the questions

5   To write your answers to the questions in the spaces provided, and

6   To certify your verdict in the spaces provided for the presiding juror's signature or to obtain the signatures of all jurors who agree with the verdict if your verdict is less than unanimous

You should not discuss the case with anyone, not even with other members of the jury.

unless all of you are present and assembled in the jury room   Should anyone attempt to talk to you about the case before the verdict is returned, whether at the courthouse, at your home, or elsewhere, please inform the judge of this fact

When you have answered all the questions you are required to answer under the instructions of the judge and your presiding juror has placed your answers in the spaces provided and signed the verdict as presiding juror or obtained the signatures, you will inform the bailiff at the door of the jury room that you have reached a verdict, and then you will return into the court with your verdict

_____

JUDGE PRESIDING

Certificate

We, the jury, have returned the above and foregoing questions as herein indicated, and herewith return same into court as our verdict

_____

PRESIDING JUROR

(To be signed by those rendering the verdict if not unanimous)

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____

[Texas PJC 100 3]

**I. Texas Deceptive Trade Practices Act:** [All instructions/ questions are from Texas pattern Jury charges]

**Question #_____**

Did Legion Insurance Company either directly or through the conduct of any of its agents and/or employees engage in any false, misleading, or deceptive act of practice that RGOI and/or RGOI ASC relied on to its detriment and that was the producing cause of damages to RGOI and/or RGOI ASC?

"Producing cause" means an efficient, or contributing cause that in a natural sequence, produced the damages if any   There may be more than one producing cause.  Rourke v  Garza 530 S W  2d 794, 801 (Tex  1975).

"False, misleading or deceptive act or practice" means any of the following.

Representing that goods or services, in this case a student accident insurance policy, had or would have benefits that it did not have, Brown v  American Transfer & Storage Co., 601 S.W  2d 931, 937 (Tex. 1980), or

Representing that an agreement confers rights or benefits that it did not have or involve

Yes_____                        No_____

If your answer to Question #_____ is yes, then answer the following questions.  Otherwise do not answer the following questions

**Question #_____**

Did Legion engage in any unconscionable action or course of action that was a producing cause of damages to RGOI and/or RGOI ASC?

"Producing cause" means an efficient, or contributing cause that in a natural sequence, produced the damages if any.   There may be more than one producing cause   Rourke v  Garza 530 S W  2d 794, 801 (Tex  1975)

An unconscionable action or course of action is an act or practice that, to a consumer's detriment takes advantage of the lack of knowledge, ability, experience or capacity of the consumer to a grossly unfair degree

Yes_____                        No_____

Attachment A-4  Plaintiffs' Jury Charge  - Page 4

**Question #_____**

Did Legion Insurance Company engage in any such conduct knowingly or intentionally?

"Knowingly" means actual awareness, at the time of the conduct, of the falsity, deception or unfairness of the conduct in question or actual awareness of the conduct in question   Actual awareness may be inferred where objective actions indicate the person or entity acted with actual awareness   You are instructed that as the principal, Legion is charged or bound by the knowledge of its agents, in this case CAS

"Intent" means actual awareness of the falsity, deception, or unfairness of the conduct in question

Yes_____              No_____


**Question #_____**

What damages if any do you find that RGOI and RGOI ASC suffered as a result of Legion's false, misleading or deceptive conduct?

The Deceptive Trade Practices Act permits the injured party to recover the greatest amount of actual damages caused by the wrongful conduct.  Thus you may consider alternate measures for damages  Kish v. Van Note, 692 S W  2nd 463, 466-67 (Tex  1985)

Damages should be calculated as the amount owed on the unpaid claims that are the subject of this suit at 100% of the charge that was billed, or

Damages should be calculated at the amount paid by CAS on the claims it paid prior to August 1999 and the amount paid by Brown & Brown, Inc  on the Daniel Lopez claim


RGOI $_____

RGOI ASC $_____

Attachment A-4  Plaintiffs' Jury Charge  - Page 5

**Question #_____**

If you answered yes to Question #_____, what sum of money, if any, in addition to actual damages, should be awarded to RGOI and or RGOI ASC against Legion Insurance Company because Legion's conduct was committed knowingly or intentionally and/or Legion's unconscionable conduct?

RGOI $_____

RGOI ASC $_____

**Question #_____**

Attorney's fees are mandatory if the Plaintiff prevails, <u>Satellite Earth Stations East, Inc. v. Davis</u>, 756 S.W. 2d 385 (Tex. App.--Eastland 1988, writ denied). What amount of reasonable and necessary attorney's fees do you find that RGOI and/or RGOI ASC are entitled to recover for prosecuting this action?

RGOI $_____

RGOI ASC $_____

## II. Texas Insurance Code 21.21

**Question #_____**

Did Legion Insurance Company, either directly or through the actions of its agent and/or agents engage in any unfair or deceptive act or practice that caused damages to RGOI and/or RGOI ASC?

"Unfair or Deceptive act or practice" means

Making or causing to be made any statement misrepresenting the terms, benefits, or advantages of an insurance policy, <u>Royal Globe Insurance Co. v. Bar Consultants, Inc.</u>, 577 S.W. 2d 688 (Tex. 1977), or

Making directly or indirectly causing to be made, an assertion, representation, or statement with respect to insurance that was untrue, deceptive or misleading, or

Misrepresenting to a claimant a material fact or policy provision relating to a coverage

issue, or

Failing to attempt in good faith to effectuate a prompt, fair and equitable settlement of a claim when the insurance company's liability has become reasonably clear, or

Making any representation relating to an insurance policy by

    a  Making any untrue statement of a material fact, or

    b  Failing to state a material fact that is necessary to make other statements not misleading, considering the circumstances under which the statements are made, or

    c  Making any statement in such a manner as to mislead a reasonably prudent person to a false conclusion of a material fact
    You are instructed that a statement may be oral, in writing, through conduct or by way of inaction when action or conduct would be reasonably required to prevent from misleading another.

Yes_____                    No_____

    If your answer to Question #_____ is yes, the answer the following questions.  Otherwise do not answer the following questions

## Question #_____

Did Legion Insurance Company engage in any such conduct knowingly or intentionally?

    "Knowingly" means actual awareness, at the time of the conduct, of the falsity, deception or unfairness of the conduct in question or actual awareness of the conduct in question.  Actual awareness may be inferred where objective actions indicate the person or entity acted with actual awareness   You are instructed that as the principal, Legion is charged or bound by the knowledge of its agents, in this case CAS

    "Intent" means actual awareness of the falsity, deception, or unfairness of the conduct in question

**Question #_____**

      If you answered yes to Question #_____, what amount of damages do you find RGOI and/or RGOI ASC suffered as a result of Legion's conduct

The Deceptive Trade Practices Act permits the injured party to recover the greatest amount of actual damages caused by the wrongful conduct    Thus you may consider alternate measures for damages   Kish v. Van Note, 692 S.W. 2nd 463, 466-67 (Tex  1985)

      Damages should be calculated as the amount owed on the unpaid claims that are the subject of this suit at 100% of the charge that was billed, or

      Damages should be calculated at the amount paid by CAS on the claims it paid prior to August 1999 and the amount paid by Brown & Brown, Inc  on the Daniel Lopez claim.

RGOI $_____

RGOI ASC $_____


**Question#_____**

      If you answered yes to Question #_____, what sum of money, if any, in addition to actual damages, should be awarded to RGOI and or RGOI ASC against Legion Insurance Company because Legion's conduct was committed knowingly or intentionally?

RGOI $_____

RGOI ASC $_____


**Question #_____**

      Attorney's fees are mandatory if the Plaintiff prevails, Satellite Earth Stations East, Inc. v  Davis, 756 S W  2d 385 (Tex  App --Eastland 1988, writ denied)   What amount of reasonable and necessary attorney's fees do you find that RGOI and/or RGOI ASC are entitled to recover for prosecuting this action?

RGOI $_____

RGOI ASC $_____

## III. Common Law Fraud--Intentional Misrepresentation

**Question #_____**

Did Legion Insurance Company acting directly or through the actions of its authorized agent (s) commit fraud against RGOI and/or RGOI ASC?

You are instructed that fraud occurs when--

a        There is a false representation,

b        The misrepresentation is made with knowledge of its falsity or made with reckless disregard of any knowledge of its truth and as a positive assertion,

c.       The misrepresentation is made with the intention that it should be acted on by the other party; and

d        The other party acts in reliance on the misrepresentation and thereby suffers injury See <u>Eagle Properties, Ltd. V. Scharbauer,</u> 807 S.W. 2d 714, 723 (Tex. 1990).

"Misrepresentation" is a false statement of fact

Yes_____                    No_____

If you answered yes to Question #_____, then answer the following questions   If you answered no, then do not answer the following questions.

**Question#_____**

Did Legion have actual knowledge of the falsity of the representation or promise you for to be fraud in Question #_____

Actual Awareness may be inferred where objective actions of a person indicate a person acted with actual awareness

Yes_____                    No_____

**Question #_____**

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate RGOI and/or RGOI ASC for their actual or direct damages that resulted from such fraud?

Direct damages are those damages that are the necessary and usual result of the fraud   In this case they would be the damages that resulted directly from Legions failure to pay the claims in question and would the payment of the claim itself   In determining what should be paid you are to consider the evidence submitted as to what Legion paid on the other claims that were paid under this policy by either CAS or Brown & Brown, Inc

RGOI $_____

RGOI ASC $_____

**Question #_____**

What sum of money, if any, in exemplary damages is RGOI and/or RGOI ASC entitled to recover to compensate it for the fraud of Legion?

Exemplary damages are those damages beyond direct or actual damages.  They are designed to punish the offending party for the intentional nature of its conduct.  Exemplary or punitive damages are specifically limited by Texas Law.

RGOI $_____

RGOI $_____

**IV.  Negligent Misrepresentation**

**Question #_____**

Did Legion Insurance Company make a negligent misrepresentation on which RGOI and/or RGOI ASC justifiably relied?

Negligent misrepresentation occurs when---

a       A party makes a representation in the course of its business or in a transaction in which it has a pecuniary interest.

  b  The representation provides false information for the guidance of others in the business, and

  c  The party making the representation did not exercise reasonable care or competence in obtaining or communicating the information

Yes_____    No_____

   If you answered Yes to Question #_____, then answer the following question  If you answered no, then do not answer the following question

**Question #_____**

   What sum of money if any, if paid in cash now, would fairly and reasonably compensate RGOI and RGOI ASC for their damages that were proximately caused by such negligent misrepresentation of Legion Insurance Company?

   "Proximate cause" is defined as that cause, which in a natural and continuous sequence, unbroken by any efficient intervening cause, produces injury, and without which the result would not have occurred.
   Consider the following elements of damages, if any, and none other.

   The pecuniary loss, if any, otherwise suffered as a consequence of RGOI and/or RGOI ASC's reliance on Legion's misrepresentation  Federal Land Bank Ass'n of Tyler v. Sloane, 825 S W  2d 439 (Tex. 1991).

   Do not add any amount for interest or past damages

RGOI $_____

RGOI ASC $_____

# ATTACHMENT B-1: DEFENDANT LEGION INSURANCE COMPANY'S EXHIBIT LIST

As detailed in Legion Insurance Company's ("Legion") Motion to Amend Scheduling Order, or, Alternatively, for Leave to File Motion for Summary Judgment (the "Motion"), the parties attempted to resolve this matter without incurring the expense of formal discovery. Since that effort has been unsuccessful, all of the issues that should be developed prior to trial, and prior to submission of a Pre-Trial Order, have not been -- particularly with respect to documents. Accordingly, Defendant Legion submits the following Exhibit List subject to its Motion and reserves the right to seek to supplement this Exhibit List.

1. Plaintiffs' Response to Defendant Legion Insurance Company's First Set of Interrogatories.

2. Legion Insurance Company Policy No. AH2-133461 and AH2-133485

3. Summaries of sums paid to Plaintiffs.

Attachment B-1 Defendant Legion Insurance Company's
Exhibit List - Page 1

315721

## ATTACHMENT B-2: DEFENDANT LEGION INSURANCE COMPANY'S WITNESS LIST

As detailed Legion Insurance Company's ("Legion") Motion to Amend Scheduling Order, or, Alternatively, for Leave to File Motion for Summary Judgment (the "Motion"), the parties attempted to resolve this matter without incurring the expense of formal discovery  Since that effort has been unsuccessful, all of the issues that should be developed prior to trial, and prior to submission of a Pre-Trial Order, have not been   Accordingly, Defendant, Legion submits the following Witness List subject to its Motion and reserves the right to seek to supplement this Witness List

Dr  William Snyder
Ms  Patricia Snyder
Rio Grande Orthopaedic Institute
400 East Dove Avenue
McAllen, Texas 78504
956/686-2663

Peter Holt
Claims Adminisrative Services, Inc
P O  Box 3968
Boca Raton, Forida 33427-3968
561/241-9500

John Little
Insurance Associates of the Valley
521 South 77 Sunshine Strip
Harlingen, Texas 78550
956/423-0490

Jennifer Castillo
P O  Box 221
Alamo, Tx 78516

Jorge Lozano
P O  Box 52

CAMPDF - www.fasiko.com

Elsa, Tx 78543

Benjamin Mendez
1101 Valley View Dr
Weslaco, Tx 78596

Jesus Rivera
P O Box 235
Alamo, Tx 78516

Luz Moya
2nd 3rd Trimble
Edcouch, TX 78538

Jorge Trujillo
413 Fleetwood Dr.
Alamo, Tx 78516

Leroy Ortiz
500 E. Sioux Rd.
Pharr, Tx 78577

Connie Uribe
c/o Maria Longoria
117 Salazar Street
San Juan, Tx 78589

Oscar Sandoval

Jorge Lozano

Erica Salinas

Silbestre Gutierrez

Sarah Jiminez

Michelle Valdez

Rene Chavez

Attachment B-2 Defendant Legion Insurance Company's
Witness List - Page 2

Joe Rodriguez

Kristina Gutierrez

Antonio Alvarado

Donnie Quintanilla

Lisa Martinez

Ekrizel Cavazos

Susie Marroquin

Oscar Sandoval

Rosa Rodriguez

Adan De La Garza

Jesse Salinas

Christina Luna

Saul Exparza

Haydee Cordova

Scarlet Castillo

Ben Cantu

Fermin Mancha

Johnny O'Mata

Dianey Garcia

Nathan Coy

Attachment B-2 Defendant Legion Insurance Company's
Witness List - Page 3

Jennie Saldana

Roberto Gonzalez

Maria Rodriguez

Luis Rios

Eugenio Reyna

Ben Cantu

Raul Vallejo III

Steven Cameron

Tamra Gomez

Rebecca Stokes

Israel Pena
Claudia Watts

Trisha Cardenas

Alberto Exparza

Nicole Blanche Guerin
Legion Insurance Company
One Logan Square, Suite 1400
Philadelphia, PA  19103
215/963-1200
215/963-1210 (fax)

Attachment  B-2   Defendant  Legion  Insurance  Company's
Witness List  - Page 4

115725

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| RIO GRANDE ORTHOPAEDIC INSTITUTE, ET AL., | § § § | |
| Plaintiffs, | § § | |
| V. | § § | CIVIL ACTION NO. 00-37 |
| LEGION INSURANCE COMPANY, ET AL., | § § § | |
| Defendants. | § § § | |

## DEFENDANT LEGION INSURANCE COMPANY'S
## PROPOSED VOIR DIRE QUESTIONS

As detailed Legion Insurance Company's ("Legion") Motion to Amend Scheduling Order, or, Alternatively, for Leave to File Motion for Summary Judgment (the "Motion"), the parties attempted to resolve this matter without incurring the expense of formal discovery. Since that effort has been unsuccessful, all of the issues that should be developed prior to trial, and prior to submission of a Pre-Trial Order, have not been. Accordingly, Defendant Legion submits the following Proposed Voir Dire Questions subject to its Motion and reserves the right to seek to supplement these Proposed Voir Dire Questions.

Attachment B-3  Defendant Legion Insurance Company's
Voir Dire Questions

315837

<u>QUESTIONS RELATED TO ISSUES IN CASE</u>:

1. Have you or has your spouse ever had a dispute about money you owe to another? If yes, when and where?

2. Have you ever been treated unfairly by an insurance company? If so, please describe what happened and what, if anything, resulted from the unfair treatment.

3. Have you or any of your close friends or relatives ever been treated unfairly by an insurance company?

4. Have you or any of your close friends or relatives ever been accused of not paying a debt you owed?

5. Have you taken any course, received any instruction or training, or attended any lectures or seminars on the subject of insurance?

6. Have you ever filed a lawsuit against an insurance company? If so, please describe the lawsuit, including the company involved, and the results of the suit.

7. If the evidence shows that Plaintiffs were not insured by Legion, would you be willing and able to find for Legion, even if you believe Legion treated Plaintiffs unfairly in other ways?

8. If the evidence shows that Legion had an honest and good faith belief that Plaintiffs overcharged it, would you be willing and able to find for Legion, even if you believe that Plaintiffs did not actually overcharge it?

<u>QUESTIONS RELATED TO PARTIES</u>:

9. Do you understand that Legion Insurance Company is a corporation? If so, do you feel that Legion Insurance Company not entitled to the same consideration as any other party because it is a corporation?

10. Have you ever heard of Legion Insurance Company? If so, how have you heard of it and what is your opinion of the company?

11. Do you know anyone who has been insured by Legion Insurance Company? If so, please identify those persons and describe your relationship with them.

12. Have you ever heard of Rio Grande Orthopaedic Institute or Rio Grande Orthopaedic Institute Ambulatory Surgery Center Ltd.? If so, how have you heard of them and what is your opinion of these companies?

13. Do you know anyone who has been treated at Rio Grande Orthopaedic Institute or Rio Grande Orthopaedic Institute Ambulatory Surgery Center Ltd.? If so, please identify those persons and describe your relationship with them.

14. Please describe your experience with, if any, and your opinion of insurance companies?

15. Do you know or have you heard of any of the attorneys and proposed witnesses in this case? If so, for each one you know or have heard of, please describe how and what you know about that person.

16. Do any of the members of the panel know one another? If so, how do you know one another? Do either of you believe that your acquaintance with another potential jury member might compromise your independence as a juror?

<u>QUESTIONS RELATED TO CONDUCT OF TRIAL</u>:

17. Do any of you believe that simply because a plaintiff files a lawsuit that a defendant necessarily did anything wrong? Do all of you understand that the Court does not review a plaintiff's lawsuit prior to it proceeding to trial to determine if the lawsuit has merit or is frivolous? Do each of you understand that anybody can file a lawsuit regardless of whether or not it has merit?

18. Do each of you understand that the defendant is not required to prove anything in this case? To the contrary, do each of you understand that the plaintiff has the burden of proof and must prove his case by a preponderance of the credible evidence, that is, the majority of the believable evidence, that the defendant is guilty of those allegations being asserted by the plaintiff?

19. Do each of you understand the concept of burden of proof and how the plaintiff must prove his case by a preponderance of the credible evidence?

20. If Plaintiff fails to prove his claims by a preponderance of the evidence, would you be willing and able to find for Defendant, even if you feel sympathetic to the Plaintiff or even if you believe Plaintiff was treated unfairly in other ways?

21. Will each of you agree to decide the case on the evidence, and not on any personal experiences, preconceived notions or biases and simply render a verdict based upon the facts presented to you and upon the credibility of the witnesses?

22. Is there anything about the nature of this case or about the parties involved that would make you hesitate to sit on this jury?

23. Is there any reason that you think you could not be a fair and impartial juror, or otherwise would not be a good candidate to serve on the jury in this case? If so, please explain.

## QUESTIONS THAT ARE PROBABLY STANDARD QUESTIONS OR ARE CONTAINED ON QUESTIONNAIRE:

24. Please state whether you are married and have any children. If so, please provide the age and occupation of your spouse and children.

25. Where are you/your spouse employed, what position, and how long?   If retired, how long, and what was last occupation and employer?

26. Please describe your educational background, including any degrees, licenses or certificates received and all education and training received since high school.

27. Have you ever been a party to a lawsuit? If so, please describe the lawsuit, including the parties, the court, the type of claim, and the resolution of the suit.

28. Have you ever sat on a jury? If so, civil or criminal? If so, did you serve as the foreperson of the jury?

29. Do you have a lawyer in the family or a close friend who is a lawyer? If so, who and what relationship is that person to you? Does that person talk about their cases with you? Can you set aside what you have heard about those other cases and decide this case based on what you hear in the courtroom?

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| RIO GRANDE ORTHOPAEDIC INSTITUTE, AND RIO GRANDE ORTHOPAEDIC INSTITUTE AMBULATORY SURGERY CENTER, LTD., | § § § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 00-37 |
| V. | § § | |
| LEGION INSURANCE COMPANY, ET AL., | § § § | |
| Defendants. | § | |

## **DEFENDANT LEGION INSURANCE COMPANY'S PROPOSED JURY CHARGE**

As detailed Legion Insurance Company's ("Legion") Motion to Amend Scheduling Order, or, Alternatively, for Leave to File Motion for Summary Judgment (the "Motion"), the parties attempted to resolve this matter without incurring the expense of formal discovery. Since that effort has been unsuccessful, all of the issues that should be developed prior to trial, and prior to submission of a Pre-Trial Order, have not been. Accordingly, Defendant Legion submits the following Proposed Jury Charge subject to its Motion and reserves the right to seek to supplement this Proposed Jury Charge.

Attachment B-4  Defendant Legion Insurance Company's Jury Charge

115728

# INSTRUCTION (ORAL)

MEMBERS OF THE JURY:

You have now been sworn as the jury to try this case. As the jury you will decide the disputed questions of fact.

As the Judge, I will decide all questions of law and procedure. From time to time during the trial and at the end of the trial, I will instruction you on the rules of law that you must follow in making your decision.

Soon, the lawyers for each of the parties will make what is called an opening statement. Opening statements are intended to assist you in understanding the evidence. What the lawyers say is not evidence.

After the opening statements, the plaintiff will call witnesses and present evidence. Then, the defendant will have an opportunity to call witnesses and present evidence. After the parties' main case is completed, the plaintiff may be permitted to present rebuttal evidence. After all the evidence is completed, the lawyers will again address you to make final arguments. Then I will instruct you on the applicable law. You will then retire to deliberate on a verdict.

Keep an open mind during the trial. Do not decide any fact until you have heard all of the evidence, the closing arguments, and my instructions.

Pay close attention to the testimony and evidence. [Do not take notes.]

[Alternate 1: You will need to rely on your memories.]

[Alternate 2: If you would like to take notes during the trial, you may do so. If you do take notes, be careful not to get so involved in note taking that you become distracted and miss part of the testimony. Your notes are to be used only as aids to your memory, and if your memory should later be different from your notes, you should rely on your memory and not on your notes. If you do not take notes, rely on your own independent memory of the testimony. Do not be unduly influenced by the notes of other jurors. A juror's notes are not entitled to any greater weight than the recollection of each juror concerning the testimony.] Even though the court reporter is making stenographic notes of everything that is said, a typewritten copy of the testimony will not be available for your use during deliberations. On the other hand, any exhibits [may] [will] be available to you during your deliberations.

Until this trial is over, do not discuss this case with anyone and do not permit anyone to discuss this case in your presence. Do not discuss the case even with the other

CitePDF - www.fastio.com

jurors until all of the jurors are in the jury room actually deliberating at the end of the case. If anyone should attempt to discuss this case or to approach you concerning the case, you should inform the Court immediately. Hold yourself completely apart from the people involved in the case – the parties, the witnesses, the attorneys and persons associated with them. It is important not only that you be fair and impartial but that you also appear to be fair and impartial.

Do not make any independent investigation of any fact or matter in this case. You are to be guided solely by what you see and hear in this trial. Do not learn anything about the case from any other source. [In particular, do not read any newspaper account of this trial or listen to any radio or television newscast concerning it.] [Do not listen to any local radio or television newscasts until this trial is over, or read any local newspaper unless someone else first removes any possible reference to this trial]

During the trial, it may be necessary for me to confer with the lawyers out of your hearing or to conduct a part of the trial out of your presence. I will handle these matters as briefly and as conveniently for you as I can, but you should remember that they are a necessary part of any trial.

It is now time for the opening statements.

(Fifth Circuit Pattern Jury Instructions 1.1)

GIVEN                                              _____

REFUSED                                            _____

MODIFIED AS INDICATED ABOVE                        _____


Signed _____, 2001.


                              _____
                              JUDGE PRESIDING

# DUTY TO DELIBERATE

MEMBERS OF THE JURY:

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong. However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.

Remember that in a very real way you are the judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

(Fifth Circuit Pattern Jury Instructions 2.11)

GIVEN                                          _____

REFUSED                                        _____

MODIFIED AS INDICATED ABOVE                    _____


Signed _____, 2001.


_____
JUDGE PRESIDING

# CLEAR AND CONVINCING EVIDENCE

MEMBERS OF THE JURY:

Clear and convincing evidence is evidence that produces in your mind a firm belief or conviction as to the matter at issue.  This involves a greater degree of persuasion than is necessary to meet the preponderance of the evidence standard; however, proof to an absolute certainty is not required.

(Fifth Circuit Pattern Jury Instructions 2 14)

GIVEN                                   _____

REFUSED                                 _____

MODIFIED AS INDICATED ABOVE             _____


Signed _____, 2001.



_____
JUDGE PRESIDING

# EXPERT WITNESSES

MEMBERS OF THE JURY:

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field – he is called an expert witness – is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

(Fifth Circuit Pattern Jury Instructions 2.19)

GIVEN                                              _____

REFUSED                                          _____

MODIFIED AS INDICATED ABOVE          _____

Signed _____, 2001.

_____
JUDGE PRESIDING

# DEPOSITION TESTIMONY

MEMBERS OF THE JURY:

Certain testimony will now be presented to you through a deposition. A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness' testimony may be presented, under oath, in the form of a deposition. Some time before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers will be read (shown) to you today. This deposition testimony is entitled to the same consideration [and is to be judged by you as to credibility] [and weighed and otherwise considered by you insofar as possible in the same way] as if the witness had been present and had testified from the witness stand in court.

(Fifth Circuit Pattern Jury Instructions 2.23)

GIVEN          _____

REFUSED       _____

MODIFIED AS INDICATED ABOVE      _____

Signed _____, 2001.

_____
JUDGE PRESIDING

# GENERAL INSTRUCTIONS FOR CHARGE

MEMBERS OF THE JURY:

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

[After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments.] [You have heard the closing arguments of the attorneys.] Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them. [Do not decide who you think should win and then answer the questions accordingly.] Your answers and your verdict must be unanimous.

You must answer all questions from a preponderance of the evidence. By this is meant the greater weight and degree of credible evidence before you. In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so. In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

[You will recall that during the course of this trial I instructed you that certain testimony and certain exhibits were admitted into evidence for a limited purpose and I instructed you that you may consider some documents as evidence against one party but not against another. You may consider such evidence only for the specific limited purposes for which it was admitted. (Specific limiting instructions may be repeated as appropriate.)

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence – such as testimony of an eyewitness. The other is indirect or circumstantial evidence – the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field – he is called an expert witness – is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.

[Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by

the notes of other jurors.  Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.]

When you retire to the jury room to deliberate on your verdict, you may take [this charge with you as well as] exhibits which the Court has admitted into evidence.  Select your Foreperson and conduct your deliberations.  If you recess during your deliberations, follow all of the instructions that the Court has given you about/on your conduct during the trial.  After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions.  Do not reveal your answers until such time as you are discharged, unless otherwise directed by me.  You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me.  I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally.  I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.  [You may now retire to the jury room to conduct your deliberations.]

(Fifth Circuit Pattern Jury Instructions 3.1)

GIVEN                                            _____

REFUSED                                         _____

MODIFIED AS INDICATED ABOVE                     _____


Signed _____, 2001.




_____
JUDGE PRESIDING

## QUESTION NO. ___

Did Legion Insurance Company agree to insure Plaintiffs?

In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties' unexpressed thoughts or intentions.

Answer "yes" or "no":

_____

(TPJC 101.1, 101.3)

GIVEN _____

REFUSED _____

MODIFIED AS INDICATED ABOVE _____

Signed _____, 2001.

_____
JUDGE PRESIDING

315728

If your answer to Question __ is "Yes," then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. ___

Did Legion Insurance Company fail to comply with the agreement?

Answer "yes" or "no":

_____

(TPJC 101.2)

GIVEN                                    _____

REFUSED                                  _____

MODIFIED AS INDICATED ABOVE              _____

Signed _____, 2001.


_____
JUDGE PRESIDING

315728

If your answer to Question __ and __ is "Yes", then answer the following question. Otherwise, do not answer the following question.

### QUESTION NO. ____

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Plaintiffs for their damages, if any, that resulted from such failure to comply?

Consider the following elements of damages, if any, and none other:

> The difference between the amount Legion Insurance Company agreed to pay and the amount it did pay.

Do not include in your answer any amount that you find Plaintiffs could have avoided by the exercise of reasonable care.

Do not add any amount for interest on damages, if any.

Answer in dollars and cents, if any:

_____

(TPJC 110.2, 110.3, 110.7)

GIVEN                                            _____

REFUSED                                        _____

MODIFIED AS INDICATED ABOVE        _____

Signed _____, 2001.

_____
JUDGE PRESIDING

315728

## QUESTION NO. ___

Did Plaintiffs agree with Legion Insurance Company that Legion Insurance Company would pay $47,830.00 to Plaintiffs on account of its claims for services to Jennifer Castillo, Roberto Gonzalez, Susie Marroquin, Sarah Jiminez, and Silbestie Gutierrez?

In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties' unexpressed thoughts or intentions.

Answer "yes" or "no":

_____

(TPJC 101.1, 101.3)


GIVEN                                        _____

REFUSED                                      _____

MODIFIED AS INDICATED ABOVE                  _____


Signed _____, 2001.



_____
JUDGE PRESIDING

315728

If your answer to Question ___ is "Yes," then answer the following question   Otherwise, do not answer the following question.

## **QUESTION NO. ___**

Did Legion Insurance Company fail to comply with the agreement?

Answer "yes" or "no":

_____

(TPJC 101.2)

GIVEN                                                _____

REFUSED                                          _____

MODIFIED AS INDICATED ABOVE     _____

Signed _____, 2001.

_____

JUDGE PRESIDING

If your answer to Question __ and __ is "Yes", then answer the following question. Otherwise, do not answer the following question.

### QUESTION NO. ____

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Plaintiffs for their damages, if any, that resulted from such failure to comply?

Consider the following elements of damages, if any, and none other:

> The difference between the amount Legion Insurance Company agreed to pay and the amount it did pay.

Do not include in your answer any amount that you find Plaintiffs could have avoided by the exercise of reasonable care.

Do not add any amount for interest on damages, if any.

Answer in dollars and cents, if any:

_____

(TPJC 110.2, 110.3, 110.7)

GIVEN                                           _____

REFUSED                                         _____

MODIFIED AS INDICATED ABOVE                     _____

Signed _____, 2001.

_____
JUDGE PRESIDING

If your answer to Questions __, ___, ___, or __ is "Yes," then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. __

What is a reasonable fee for the necessary services of the Plaintiffs' attorney in this case, stated in dollars and cents?

You must consider the following factors in determining the reasonableness of attorneys' fees:

- The time and labor involved, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly;

- The likelihood that the acceptance of the particular employment would preclude other employment by the lawyer;

- The fee customarily charged in the locality for similar legal services;

- The amount involved and the results obtained;

- The time limitations imposed by the client or the circumstances;

- The nature and length of the professional relationship with the client;

- The experience, reputation and ability of the lawyer or lawyers performing the services; and

- Whether the fee is fixed or contingent on results obtained or uncertain of collection before the legal services have been rendered.[1]

Answer with an amount for each of the following:

      a.    For preparation and trial.

          Answer: _____

---

[1] Texas P J C 110 43 ("comment" "one or more of these factors may be included as additional jury instruction"). Arthur Andersen & Co v Perry Equipment Co, 945 S W 2d 812, 817-18 (Tex 1997)

b.      For an appeal to the Court of Appeals

Answer: _____

GIVEN                                                    _____

REFUSED                                               _____

MODIFIED AS INDICATED ABOVE          _____

Signed _____, 2001.


_____
JUDGE PRESIDING

41572x

CitiPDF – www.fineloo.com,

If you have found damages under Question No. ___, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. ____

Do you find by clear and convincing evidence that the harm to Plaintiffs resulted from fraud on the part of Legion Insurance Company?

You are instructed as follows:

(1)     "Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established;

(2)     "Fraud" occurs when:

        a.     a party makes a material misrepresentation,

        b.     the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion,

        c.     the misrepresentation is made with the intetion that it should be acted on by the other party, and

        d.     the other party acts in reliance on the misrepresentation and thereby suffers injury.

"Misrepresentation" means a false statement of fact.

Misrepresentations as to the legal effect of a contract cannot constitute fraud.

Misrepresentations made by Legion Insurance Company to anyone other than Plaintiffs cannot constitute fraud.

Mere failure to perform a contract does not constitute fraud.

Answer "Yes" or "No":

_____

(TPJC 110.33; *Formosa Plastics v. Presidio Engineers*, 960 S.W.2d 41, 46 (Tex. 1998); *Fina Supply, Inc. v. Abilene Nat'l Bank*, 726 S.W.2d 537, 540 (Tex. 1987); *Kanon v. Methodist Hospital*, 9 S.W.3d 365, 372 (Tex. App.—Houston [1ˢᵗ Dist.] 1999, no writ))

GIVEN                                        _____

REFUSED                                      _____

MODIFIED AS INDICATED ABOVE                  _____


Signed _____, 2001.



                              _____
                              JUDGE PRESIDING


Source:      PJC 110.33

If you have answered "Yes" to Question No. __, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. __

What sum of money, if any, if paid now in cash, should be assessed against Legion Insurance Company and awarded to Plaintiffs as exemplary damages, if any, for the conduct found in response to Question No. __?

"Exemplary damages" means an amount that you may in your discretion award as a penalty or by way of punishment.

Factors to consider in awarding exemplary damages, if any, are –

  (a)   The nature of the wrong.
  (b)   The character of the conduct involved.
  (c)   The degree of culpability of the conspirators.
  (d)   The situation and sensibilities of the parties concerned.
  (e)   The extent to which such conduct offends a public sense of justice and propriety.

Answer in dollars and cents, if any:

_____

(PJC 110.34)

GIVEN                                          _____

REFUSED                                        _____

MODIFIED AS INDICATED ABOVE                    _____

Signed _____, 2001.


_____
JUDGE PRESIDING

## QUESTION NO. ___

Did Legion Insurance Company engage in any unfair or deceptive act or practice that caused damages to Plaintiffs?

"Unfair or deceptive act or practice" means the following:

misrepresenting to a claimant a material fact or policy provision relating to coverage at issue; or

failing to attempt, in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear; or

failing to provide promptly to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or for the offer of a compromise settlement of claim; or

refusing to pay a claim without conducting a reasonable investigation with respect to the claim.

Answer "yes" or "no":

_____

(PJC 102.18)

GIVEN                                         _____

REFUSED                                     _____

MODIFIED AS INDICATED ABOVE      _____

Signed _____, 2001.

_____
JUDGE PRESIDING

115728

If your answer to Question No. ___ is "Yes," then answer the following question Otherwise, do not answer the following question.

## QUESTION NO. ____

Did Legion Insurance Company engage in any such conduct knowingly?

"Knowingly" means actual awareness, at the time of the conduct, of the falsity, deception, or unfairness of the conduct in question. Actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.

Answer "yes" or "no":

_____

(PJC 102.21)


GIVEN                                              _____

REFUSED                                            _____

MODIFIED AS INDICATED ABOVE                        _____


Signed _____, 2001.



_____
JUDGE PRESIDING

If your answer to Question ___ is "yes," then answer the following question. Otherwise, do not answer the following question.

### QUESTION NO. ___

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Plaintiffs for their damages, if any, that were caused by such unfair or deceptive act or practice?

Answer in dollars and cents, if any:

_____

(PJC 110.14)

GIVEN                                        _____

REFUSED                                    _____

MODIFIED AS INDICATED ABOVE      _____

Signed _____, 2001.


_____

JUDGE PRESIDING

115728

## QUESTION NO. ____

Did Legion Insurance Company make a negligent misrepresentation on which Plaintiffs justifiably relied?

Negligent misrepresentation occurs when

a.   a party makes a representation in the course of his business or in a transaction in which he has a pecuniary interest,

b.   the representation supplies false inforamtion for the guidance of others in their business, and

c.   the party making the representation did not exercise reasonable care or competence in obtaining or communicating the information.

Answer "yes" or "no":

_____

(PJC 105.16)

GIVEN                                          _____

REFUSED                                      _____

MODIFIED AS INDICATED ABOVE    _____

Signed _____, 2001.


_____
JUDGE PRESIDING

If you have answered "yes" to Question No. ___, then answer the following question.  Otherwise, do not answer the following question

### QUESTION NO. ___

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Plaintiffs for their damages, if any, that were proximately caused by such negligent misrepresentation?

"Proximate case" means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred.  In order to be a proximate cause, the act or omission complained of must be such that a person using the degree of care required of him would have foreseen that the event, or some similar event, might reasonably result therefrom.  There may be more than one proximate cause of an event.

Answer in dollars and cents, if any:

_____

(PJC 110.21)


GIVEN                                                    _____

REFUSED                                                _____

MODIFIED AS INDICATED ABOVE               _____


Signed _____, 2001.


_____
JUDGE PRESIDING

## QUESTION NO.

Did Legion Insurance Company commit fraud against Plaintiffs?

Fraud occurs when

      a.    a party makes a material misrepresentation,

      b.    the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion,

      c.    the misrepresentation is made with the intetion that it should be acted on by the other party, and

      d.    the other party acts in reliance on the misrepresentation and thereby suffers injury.

"Misrepresentation" means a false statement of fact.

Misrepresentations as to the legal effect of a contract cannot constitute fraud.

Misrepresentations made by Legion Insurance Company to anyone other than Plaintiffs cannot constitute fraud.

Mere failure to perform a contract does not constitute fraud.

Answer "Yes" or "No":

_____

(TPJC 105.2; 105.3A; *Formosa Plastics v. Presidio Engineers*, 960 S.W.2d 41, 46 (Tex. 1998); *Fina Supply, Inc. v. Abilene Nat'l Bank*, 726 S.W.2d 537, 540 (Tex. 1987); *Kanon v. Methodist Hospital*, 9 S.W.3d 365, 372 (Tex. App.—Houston [1st Dist.] 1999, no writ))

GIVEN                    _____

REFUSED              _____

115728

MODIFIED AS INDICATED ABOVE _____

Signed _____, 2001.


_____
JUDGE PRESIDING

315728

If you have answered Question No. __ "yes," than answer this questions. Otherwise, do not answer this question.

### QUESTION NO. ____

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Plaintiffs for their damages, if any, that resulted from such fraud?

Consider the following elements of damages, if any, and none other.

Answer separately in dollars and cents, if any, for each of the following:

The difference, if any, in the value of what Plaintiffs received and the value it would have had if it had been as represented.

_____

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment. Do not add any amount for interest on damages, if any.

(TPJC 110.19; 110.9)

GIVEN                                             _____

REFUSED                                        _____

MODIFIED AS INDICATED ABOVE       _____

Signed _____, 2001.

_____
JUDGE PRESIDING

LAW OFFICES

# CHARLES M. JEFFERSON

ONE RIVERWALK PLACE SUITE 1000
700 NORTH ST MARY'S STREET
SAN ANTONIO TEXAS 78205 3585
TELEPHONE (210) 227 4182      TELECOPIER (210) 227 5514

October 2, 2001

Mr. Timothy E. Weitz
McDonald, Mackay & Weitz
1411 West Ave., Suite 200
Austin, Texas 78701

Re:   Civil Action No. B-00-037; Rio Grande Orthopaedic Institute, et al. vs.
Legion Insurance Company, et al.

Dear Mr. Weitz:

The purpose of this letter is to confirm to you that Claims Administration Services, Inc. does not intend to participate in the trial and does not intend to be involved in the submission of a pretrial order.  Nevertheless, please continue sending me copies of all pleadings filed in this lawsuit.

Sincerely.

Charles M. Jefferson

Charles M. Jefferson

C:\DATA\CM\CLAIMSADMIN\WEITZ3 LTR

cc:   Mr. Greg Pierce
Scott, Douglas & McConnico, LLP
600 Congress Ave., Suite 1500
Austin, Texas 78701-2589

Mr. Peter Holt
P.O. Box 3968
Boca Raton, Florida 33427-3968

ATTACHMENT C